UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| FRITZ EMMANUEL LESLY MIOT, et al., <br><br>    Plaintiff, <br><br>  v. <br><br> DONALD J. TRUMP, <br> President of the United States, et al., <br><br>    Defendants. | Civil Action No. 25-2471 (ACR) |

**DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION**
**FOR CLASS CERTIFICATION**

# TABLE OF CONTENTS

Table of Contents ................................................................................................................. i

Table of Authorities ........................................................................................................... ii

Introduction ......................................................................................................................... 1

Background ........................................................................................................................... 2

    I.     The Temporary Protected Status Statute .................................................... 2

    II.    Haiti's Designation Under the Statute ...................................................... 3

    III.   Plaintiffs' Complaint and Procedural History ........................................ 4

Legal Standards .................................................................................................................... 5

Argument .............................................................................................................................. 6

    I.     The Court Should Hold this Motion in Abeyance Pending the Secretary's New Determination. .................................................................................... 6

    II.    Section 1252(f)(1) Prevents Plaintiffs from Satisfying Class Certification under Rule 23(b)(2) ........................................................................................... 7

    III.   Plaintiffs Have Not Satisfied the Rigorous Requirements for Class Certification. ....................................................................................................... 15

           A.    The Proposed Class Lacks Commonality. ................................ 15

           B.    The Proposed Class Lacks Typicality. ...................................... 23

           C.    The Named Plaintiffs are Inadequate Class Representatives .................. 25

    IV.   The Court Should Not Certify a Nationwide Class. ............................. 28

Conclusion .......................................................................................................................... 30

# TABLE OF AUTHORITIES

**Page(s)**

<u>**Cases**</u>

*Alhabra v. Rubio*, Civ. A.,
No. 24-0854 (SLS), 2025 WL 985457 (D.D.C. Apr. 2, 2025) ................................ 21

*Alli v. Decker*,
650 F.3d 1007 (3d Cir. 2011)................................................... 12

*AmChem Prods., Inc. v. Windsor*,
521 U.S. 591 (1997)................................................ 6, 26, 27

*Arizona v. Biden*,
40 F.4th 375 (6th Cir. 2022) ..................................................... 10

*Bova v. Cox Commc'ns, Inc.*,
Civ. A. No. 01-0090, 2001 WL 1654708 (W.D. Va. Dec. 12, 2001) ...................................... 29

*Brown v. District of Columbia*,
928 F.3d 1070 (D.C. Cir. 2019) ..................................................... 19

*C.G.B. v. Wolf*,
464 F. Supp. 3d 174 (D.D.C. 2020) ........................................... 26

*Califano v. Yamasaki*,
442 U.S. 682 (1979)................................................ 5, 28

*California v. Grace Brethren Church*,
457 U.S. 393 (1982)......................................... 12, 14

*Chao v. Russell P. Le Frois Builder, Inc.*,
291 F.3d 219 (2d Cir. 2002)........................................... 8

*Citizens Against Ruining Our Env't v. Haaland*,
59 F.4th 1016 (10th Cir. 2023) ..................................................... 10

*Coca-Cola Bottling Co. of Elizabethtown v. Coca-Cola Co.*,
98 F.R.D. 254 (D. Del. 1983) ........................................... 14

*Cohen v. Chilcott*,
522 F. Supp. 2d 105 (D.D.C. 2007) ........................................ 24, 25

*Colindres v. Dep't of State*,
575 F. Supp. 3d 121 (D.D.C. 2021) ................................... 20, 21

*Dep't of Homeland Sec. v. Thuraissigiam,*
    591 U.S. 103 (2020) .................................................................................... 22

*Direct Mktg. Ass'n v. Brohl,*
    575 U.S. 1 (2015) ....................................................................................... 12

*DL v. District of Columbia,*
    713 F.3d 120 (D.C. Cir. 2013) .................................................................... 16

*E.F.L. v. Prim,*
    986 F.3d 959 (7th Cir. 2021) ...................................................................... 11

*Elec. Priv. Info. Ctr. v. Presidential Advisory Comm'n on Election Integrity,*
    878 F.3d 371 (D.C. Cir. 2017) .................................................................... 25

*El-Shifa Pharm. Indus. Co. v. United States,*
    607 F.3d 836 (D.C. Cir. 2010) .................................................................... 20

*Garland v. Aleman Gonzalez,*
    596 U.S. 543 (2022) ..................................................................... 8, 9, 10, 11

*Gen. Tel. Co. of Sw. v. Falcon,*
    457 U.S. 147 (1982) ...................................................................................... 5

*Gun South, Inc. v. Brady,*
    877 F.2d 858 (11th Cir. 1989) ...................................................................... 8

*Haitian Evangelical Clergy Ass'n v. Trump,*
    789 F. Supp. 3d 255 (E.D.N.Y. 2025) ...................................................... 4, 7

*Hamama v. Adducci,*
    912 F.3d 869 (6th Cir. 2018) ...................................................................... 12

*Hartman v. Duffey,*
    19 F.3d 1459 (D.C. Cir. 1994) .................................................................... 16

*Hernandez-Carrera v. Carlson,*
    547 F.3d 1237 (10th Cir. 2008) .................................................................. 23

*Huisha-Huisha v. Mayorkas,*
    27 F.4th 718 (D.C. Cir. 2022) ............................................................... 20, 21

*In re Rail Freight Fuel Surcharge Antitrust Litig.,*
    287 F.R.D. 1 (D.D.C. 2012) ................................................................. 23, 25

*In re Vitamins Antitrust Litig.*,
    209 F.R.D. 251 (D.D.C. 2002) .................................................................... 23

*In re White*,
    64 F.4th 302 (D.C. Cir. 2023) .................................................................... 17

*Institutional S'holder Servs., Inc. v. Sec. & Exch. Comm'n*,
    142 F.4th 757 (D.C. Cir. 2025) .................................................................. 11

*J.D. v. Azar*,
    925 F.3d 1291 (D.C. Cir. 2019) ................................................... 15, 17, 25, 27

*Jama v. ICE*,
    543 U.S. 335 (2005) ................................................................................... 20

*Jennings v. Rodriguez*,
    583 U.S. 281 (2018) .............................................................................. 15, 23

*Jifry v. F.A.A.*,
    370 F.3d 1174 (D.C. Cir. 2004) .............................................................. 21, 22

*Jones v. Rossides*,
    256 F.R.D. 274 (D.D.C. 2009) ..................................................................... 6

*Kennedy v. Mendoza-Martinez*,
    372 U.S. 144 (1963) .............................................................................. 12, 13

*Kohen v. Pac. Inv. Mgmt. Co. LLC*,
    571 F.3d 672 (7th Cir. 2009) ................................................................. 16, 18

*Las Americas Immigrant Advoc. Ctr. v. Wolf*,
    507 F. Supp. 3d 1 (D.D.C. 2020) ............................................................ 22, 23

*Lewis v. Nat'l Football League*,
    146 F.R.D. 5 (D.D.C. 1992) ....................................................................... 16

*Lewis v. U.S. Parole Comm'n*,
    743 F. Supp. 3d 181 (D.D.C. 2024) ............................................................ 18

*Little v. Washington Metro. Area Transit Auth.*,
    249 F. Supp. 3d 394 (D.D.C. 2017) ............................................................ 28

*Make the Rd. N.Y. v. Wolf*,
    962 F.3d 612 (D.C. Cir. 2020) .................................................................... 13

*Mathews v. Diaz,*
    426 U.S. 67 (1976) ................................................................................................ 20

*McCarthy v. Kleindienst,*
    741 F.2d 1406 (D.C. Cir. 1984) .......................................................................... 5, 6

*Morgan v. District of Columbia,*
    Civ. A. No. 10-1511 (RJL), 2025 WL 255228 (D.D.C. Aug. 7, 2025) .................... 17

*Narenji v. Civiletti,*
    617 F.2d 745 (D.C. Cir. 1979) ............................................................................... 20

*Nat'l TPS Alliance v. Noem,*
    150 F.4th 1000 (9th Cir. 2025) ................................................................................ 8

*Nguyen Da Yen v. Kissinger,*
    70 F.R.D. 656 (N.D. Cal. 1976) ............................................................................. 20

*Nken v. Holder,*
    556 U.S. 418 (2009) ......................................................................................... 10, 11

*N.S. v. Dixon,*
    141 F.4th 279 (D.C. Cir. 2025) ..................................................................... 9, 10, 11

*Parker v. Bank of Am., N.A.,*
    99 F. Supp. 3d 69 (D.D.C. 2015) .................................................................... 22, 23

*Pigford v. Glickman,*
    182 F.R.D. 341 (D.D.C. 1998) ............................................................................... 16

*President v. Vance,*
    627 F.2d 353 (D.C. Cir. 1980) ............................................................................... 12

*Ramos v. Wolf,*
    975 F.3d 872 (9th Cir. 2020) ................................................................................... 8

*Reno v. American-Arab Anti-Discrim. Comm.,*
    525 U.S. 471 (1999) ............................................................................................... 20

*Ross v. Lockheed Martin Corp.,*
    267 F. Supp. 3d 174 (D.D.C. 2017) ................................................................ 16, 18

*Sanchez v. Mayorkas,*
    593 U.S. 409 (2021) ................................................................................................. 2

*Sibley v. Diversified Collection Servs., Inc.*, Civ. A.,
  No. 396-cv-0816, 1998 WL 355492 (N.D. Tex. June 30, 1998) ............................ 14

*Steffel v. Thompson*,
  415 U.S. 452 (1974) ...................................................................................... 13

*Stewart v. Rubin*,
  948 F. Supp. 1077 (D.D.C. 1996) ................................................................ 24

*Tazu v. Att'y Gen.*,
  975 F.3d 292 (3d Cir. 2020) ......................................................................... 11

*Thomas v. Albright*,
  139 F.3d 227 (D.C. Cir. 1998) ...................................................................... 23

*Thorpe v. District of Columbia*,
  303 F.R.D. 120 (D.D.C. 2014) ........................................................... 16, 17, 26

*Trump v. CASA, Inc.*,
  606 U.S. 831 (2025) ...................................................................................... 28

*Turnbull v. Berryhill*,
  490 F. Supp. 3d 132 (D.D.C. 2020) ............................................................. 29

*Turnbull v. Kijakazi*,
  No. 20-5365, 2021 WL 5993232 (D.C. Cir. Dec. 10, 2021) ......................... 29

*Twelve John Does v. District of Columbia*,
  117 F.3d 571 (D C. Cir. 1997) ...................................................................... 26

*United States v. Texas*,
  599 U.S. 670 (2023) ...................................................................................... 14

*Wal-Mart Stores, Inc. v. Dukes*,
  564 U.S. 338 (2011) ............................................................................. passim

*Zadvydas v. Davis*,
  533 U.S. 678 (2001) ...................................................................................... 23

## **Statutes**

5 U.S.C. § 705 ...................................................................................... 1, 5, 26

6 U.S.C. § 557 ............................................................................................... 2

8 U.S.C. § 1101(a)(15)(F) ............................................................................. 24

8 U.S.C. § 1103(a) ................................................................................................... 2

8 U.S.C. § 1158 ...................................................................................................... 19

8 U.S.C. § 1229a ............................................................................................... 19, 25

8 U.S.C. § 1229a(c)(7) ........................................................................................... 19

8 U.S.C. § 1229c .................................................................................................... 19

8 U.S.C. § 1231(a)(6) .............................................................................................. 9

8 U.S.C. § 1231(b) ................................................................................................. 18

8 U.S.C. § 1252(a)(5) ............................................................................................. 21

8 U.S.C. § 1252(b)(9) ............................................................................................. 21

8 U.S.C. § 1252(f)(1) ....................................................................................... passim

8 U.S.C. § 1254a .................................................................................................. 1, 16

8 U.S.C. § 1254a(b)(1) ............................................................................................. 2

8 U.S.C. § 1254a(b)(1)(C) ........................................................................................ 2

8 U.S.C. § 1254a(b)(2) ............................................................................................. 2

8 U.S.C. § 1254a(b)(3)(A)-(C) ................................................................................. 8

8 U.S.C. § 1254a(b)(3)(B) ........................................................................................ 3

8 U.S.C. § 1254a(b)(3)(C) ........................................................................................ 3

8 U.S.C. § 1254a(b)(5)(A) ........................................................................................ 3

28 U.S.C. § 1341 .................................................................................................... 14

28 U.S.C. § 2201(a) ............................................................................................... 12

Pub. L. No. 101-649 ................................................................................................. 2

Pub. L. No. 104-208 ................................................................................................. 8

Pub. L. No. 107-296 ................................................................................................. 2

**Rules**

Fed. R. Civ. P. 23(a) ........................................................................................... 6, 17

Fed. R. Civ. P. 23(a)(3) ............................................................................................ 23

Fed. R. Civ. P. 23(b)(2).................................................................................... passim

Fed. R. Civ. P. 23(c)(1)(A) ...................................................................................... 17

## **Regulations**

8 C.F.R. § 214.1(a) ................................................................................................... 24

8 C.F.R. § 244.2 .................................................................................................. 1, 16

8 C.F.R. § 208.7 ....................................................................................................... 19

8 C.F.R. § 1208.16 ................................................................................................... 19

8 C.F.R. § 1208.17 ................................................................................................... 19

Designation of Haiti for Temporary Protected Status,
  86 Fed. Reg. 41863 (Aug. 3, 2021)......................................................................... 3

Extension and Redesignation of Haiti for Temporary Protected Status,
  88 Fed. Reg. 5022 (Jan. 26, 2023) .......................................................................... 3

## **Other Authorities**

75 Fed. Reg. 3476 (Jan. 21, 2010) ........................................................................... 18

89 Fed. Reg. 54484 (July 1, 2024)............................................................................. 3

90 Fed. Reg. 10511 (Feb. 24, 2025) .......................................................................... 3

## INTRODUCTION

Defendants President Donald Trump, Secretary Kristi Noem, and the Department of Homeland Security ("Defendants") respectfully submit this opposition to Plaintiffs' motion seeking to certify a universal class of "[a]ll persons in the United States who have been granted, or have applied for, Temporary Protected Status pursuant to 8 U.S.C. § 1254a and 8 C.F.R. § 244.2 and named Haiti as the designated TPS country under which they applied." Pls' Mot. (ECF No. 67) at 4. The Court should hold this motion in abeyance pending the Secretary of Homeland Security's (the "Secretary's") new determination on Haiti's designation under the Temporary Protected Status ("TPS") statute. The determination is still being deliberated, and it is possible that the Secretary's new determination will impact the proposed class definition and indeed this entire lawsuit. Moreover, Defendants believe that the parties and the Court would be better served by deciding threshold jurisdictional issues before deciding class certification. There is a strong likelihood that the claims will be narrowed, or the case will be resolved and dismissed consistent with Federal Rule of Civil Procedure ("Rule") 12. The Court's resolution of the scope and nature of the viable claims is essential to the class certification process because the commonality assessment requires "rigorous analysis" of the merits of the class claims. *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 353 (2011). To the extent that this lawsuit proceeds after the Secretary's new determination, Defendants plan to submit their Rule 12 motion in conjunction with their opposition to Plaintiffs' motion for a stay under 5 U.S.C. § 705.

Should the Court, however, proceed at this time to the merits of the class certification issue, it should deny Plaintiffs' motion. Plaintiffs cannot satisfy their burden and establish under Rule 23(b)(2) that the Court could grant the appropriate relief, so entertaining Plaintiffs' motion is an exercise in futility. And even if they could, Plaintiffs cannot satisfy the stringent Rule 23(a)

requirements.  Finally, Plaintiffs' request for a nationwide class is contrary to Congress's explicit contemplation of allowing these questions to percolate in the lower courts.

## BACKGROUND

### I.    The Temporary Protected Status Statute

The Immigration Act of 1990 established a program that provided temporary and discretionary protection in the United States for aliens from designated countries experiencing ongoing armed conflict, environmental disaster, or "extraordinary and temporary conditions" that temporarily rendered the country unable to adequately handle the return of its nationals.  Pub. L. No. 101-649, 104 Stat. 4978 (1990).  As relevant here, the statute authorizes the Secretary,[1] "after consultation with appropriate agencies of the Government," to designate countries for TPS if there are:

> extraordinary and temporary conditions in the foreign state that prevent aliens who are nationals of the state from returning to the state in safety, unless the [Secretary] finds that permitting the aliens to remain temporarily in the United States is contrary to the national interest of the United States.

8 U.S.C. § 1254a(b)(1)(C).

Aliens who are granted TPS based on a country designation are eligible for work authorization and may not be removed.  8 U.S.C. § 1254a(a)(1)(A)-(B); *see Sanchez v. Mayorkas*, 593 U.S. 409, 412 (2021).  Initial TPS designations are discretionary, 8 U.S.C. § 1254a(b)(1), and the Secretary must conduct periodic reviews to determine whether the conditions underlying a country's TPS designation continue to be met, 8 U.S.C. § 1254a(b)(2), (b)(3)(A).  If the Secretary "does not determine" that the foreign state "no longer meets the conditions for designation," then

---

[1]    Congress transferred the Attorney General's TPS authority to the Secretary. *See* Homeland Security Act of 2002, Pub. L. No. 107-296, § 1517, 116 Stat. 2135, 2311 (2002) (codified at 6 U.S.C. § 557); 8 U.S.C. § 1103(a).

the TPS designation is extended.  8 U.S.C. § 1254a(b)(3)(C).  If the foreign state "no longer continues to meet the conditions for designation," however, the Secretary "shall terminate the designation[.]"  8 U.S.C. § 1254a(b)(3)(B).  "There is no judicial review of any determination of the [Secretary] with respect to the designation, or termination or extension of a designation, of a foreign state under this subsection."  8 U.S.C. § 1254a(b)(5)(A).

## II.    Haiti's Designation Under the Statute

Haiti was most recently designated for TPS in 2021 because of "extraordinary and temporary conditions" following a presidential assassination and based on "deteriorating political crisis, violence, and a staggering increase in human rights abuses."  Designation of Haiti for TPS, 86 Fed. Reg. 41863, 41864 (Aug. 3, 2021).  In 2023, then-Secretary Mayorkas extended and redesignated Haiti for TPS.  Extension and Redesignation of Haiti for TPS, 88 Fed. Reg. 5022 (Jan. 26, 2023).  In 2024, he again redesignated Haiti for TPS and extended the designation for eighteen months until February 3, 2026.  Extension and Redesignation of Haiti for TPS, 89 Fed. Reg. 54484 (July 1, 2024).

On February 24, 2025, the Secretary partially vacated the 2024 Extension, shortening the TPS designation from eighteen months to twelve months ending on August 3, 2025.  Partial Vacatur of 2024 TPS Decision for Haiti, 90 Fed. Reg. 10511 (Feb. 24, 2025).  In doing so, she cited several reasons, including that there was no discussion in the July 1, 2024 Federal Register notice of why the eighteen-month period was selected in lieu of a six- or twelve-month period or why permitting the ever-increasing population of Haitian TPS recipients, particularly those who entered the country unlawfully, to remain temporarily in the United States was not contrary to the U.S. national interest.  *See id.* at 10513.  On July 1, she terminated Haiti's TPS designation, effective September 2, explaining that "permitting Haitian nationals to remain temporarily . . . is

contrary to the national interest of the United States."  Termination of the Designation of Haiti for TPS, 90 Fed. Reg. 28760, 28762-64 (July 1, 2025).[2]

### III.  Plaintiffs' Complaint[3] and Procedural History

On July 30, 2025, Plaintiffs filed a class action complaint challenging the Secretary's determination to terminate TPS for Haiti, alleging that it violated the Administrative Procedure Act ("APA") and the Fifth Amendment of the United States Constitution.  *See generally* Compl. (ECF No. 1).  Plaintiffs allege that the Secretary did not have the statutory authority to terminate Haiti's designation as of August 3, 2025, shortening the TPS designation.  *See* Compl. (ECF No. 1)

¶¶ 193-95.  Plaintiffs contend that the Secretary did not perform the necessary review before making a termination determination, and her failure to do so was arbitrary and capricious.  *See id*. ¶¶ 196-99.  Plaintiffs also allege that the Secretary's termination determination violated the Fifth Amendment's equal protection guarantee because the decision allegedly was motivated by discriminatory animus.  *See id*. ¶¶ 207-10.  As a result of these alleged violations, Plaintiffs seek three forms of relief: (1) a declaration that the termination of Haiti's TPS designation violates the APA and the Fifth Amendment; (2) vacatur of the Secretary's determination as it pertains to Haiti's

---

[2]    Haiti's TPS designation did not terminate on September 2, 2025.  On July 15, 2025, the United States District Court for the Eastern District of New York entered final judgment against the government in a case challenging the same action that Plaintiffs challenge here.  *See Haitian Evangelical Clergy Ass'n v. Trump*, Civ. A. No. 25-1464 (E.D.N.Y. July 15, 2015).  That judgment came after the district court determined that the Secretary did not have the statutory or inherent authority to partially vacate Haiti's TPS designation and decided to postpone the Secretary's action.  *See Haitian Evangelical Clergy Ass'n v. Trump*, 789 F. Supp. 3d 255, 273, 276 (E.D.N.Y. 2025).  The government has appealed that decision to the Second Circuit.  *See Haitian Evangelical Clergy Ass'n v. Trump*, No. 25-2372 (2d Cir.).

[3]    Defendants rely on the operative complaint to discuss the allegations and develop arguments.  But the operative complaint will require amendment once the Secretary issues a new decision about Haiti's TPS designation.

TPS designation; and (3) reinstitution of Haiti's TPS designation.  *See* Compl. (ECF No. 1) at Prayer for Relief.

Plaintiffs then moved to stay the Secretary's termination, invoking 5 U.S.C. § 705.  *See* ECF No. 26 (filed Aug. 20, 2025).  The Court denied the motion without prejudice as moot, given that the parties had agreed that: (1) the Secretary's partial vacatur had been set aside; (2) the government represented as much by way of updating its website and indicating that Haiti's current TPS designation would last through February 3, 2026; and (3) the Secretary would be publishing a new notice as it pertains to Haiti's TPS designation by December 5, 2025.  *See* Min. Order (Sept. 22, 2025).  When the parties appeared for a status conference on September 29, 2025, the Court indicated that it was inclined to hold this matter in abeyance pending a new determination by the Secretary assuming that there was no imminent risk that Haitian TPS holders would lose their status.  In response to the Court's inquiry, Defendants noted that putative class members were not facing immediate risk of loss of their TPS protections.  *See* ECF No. 65 (Sept. 30, 2025).

On October 28, 2025, Plaintiffs filed their motion for class certification.  *See* ECF No. 67.

## LEGAL STANDARDS

The class action "is an exception to the usual rule that litigation is conducted by and on behalf of the individual named parties only."  *Wal-Mart*, 564 U.S. at 348 (quoting *Califano v. Yamasaki*, 442 U.S. 682, 700-01 (1979)).  To fall within this narrow exception, Plaintiffs must "affirmatively demonstrate" compliance with each element of Rule 23—"that is, [they] must be prepared to prove that there are in fact sufficiently numerous parties, common questions of law or fact, etc."  *Id*. at 350; *see also McCarthy v. Kleindienst*, 741 F.2d 1406, 1414 n.9 (D.C. Cir. 1984) ("It is the party seeking class certification that bears the burden of establishing the class action requirements.").  This is not just a "mere pleading standard."  *Wal-Mart*, 564 U.S. at 350.  "[A]ctual, not presumed, conformance" with Rule 23 is "indispensable," *Gen. Tel. Co. of Sw. v.*

*Falcon,* 457 U.S. 147, 161 (1982), and certification is proper only if the Court is satisfied "after a rigorous analysis" that Plaintiffs have shown that each requirement of the rules has been met, *Wal-Mart,* 564 U.S. at 350-51.  In determining whether class certification is appropriate, courts may consider evidence outside of the pleadings to determine whether claims or defenses are prone to resolution on a class-wide basis.  *See Jones v. Rossides,* 256 F.R.D. 274, 276 (D.D.C. 2009) (citing *McCarthy,* 741 F.2d at 1413 n.8).

To merit class certification, Plaintiffs must show that each element of Rule 23(a) is met, namely: (1) the class is so numerous that joinder is impractical ("numerosity"); (2) there are questions of law or fact common to the class ("commonality"); (3) the claims or defenses of the named Plaintiffs are typical of claims or defenses of the class ("typicality"); and (4) the named Plaintiffs and counsel will fairly and adequately protect the interests of the class ("adequacy of representation").  Fed. R. Civ. P. 23(a).

In addition to meeting the Rule 23(a) requirements, the proposed class must also qualify under one of the subsets of Rule 23(b).  *AmChem Prods., Inc. v. Windsor,* 521 U.S. 591, 614 (1997).  Relevant to Plaintiffs' motion, Rule 23(b)(2) permits certification where "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole."  Fed. R. Civ. P. 23(b)(2).

## ARGUMENT

## I.    The Court Should Hold this Motion in Abeyance Pending the Secretary's New <u>Determination.</u>

As Defendants have acknowledged, the Secretary is planning to revisit her determination regarding Haiti's TPS designation.  *See* Defs' Resp. (ECF No. 65).  Should Haiti's TPS designation be extended, this lawsuit is likely moot.  If the Secretary issues a new determination terminating

Haiti's TPS designation, Plaintiffs' current challenge would be moot and would require the filing

of an amended complaint with potentially new class representatives and new class allegations. The

Court seemed to recognize as much during the parties' September 29 status conference.

To preserve judicial and party resources, the Court should not rule on Plaintiffs' motion

and should postpone the November 17 hearing. Should the Secretary decide to terminate Haiti's

TPS designation, Defendants will confer with Plaintiffs soon after a determination is made and

jointly propose a briefing schedule and include a date for a hearing on class certification. This will

ensure that the Court can consider arguments accounting for any intervening developments.

Moreover, this approach avoids standing issues linked to the fact that the Secretary's current

determination as it relates to Haiti is set aside. *See Haitian Evangelical*, 789 F. Supp. 3d at 273,

276.

## II.    Section 1252(f)(1) Prevents Plaintiffs from Satisfying Class Certification under Rule 23(b)(2).

Plaintiffs are seeking certification under Rule 23(b)(2). *See* Pls' Mot. (ECF No. 67) at 9.

The rule permits certification if "the party opposing the class has acted or refused to act on grounds

that apply generally to the class so that final injunctive relief or corresponding declaratory relief is

appropriate respecting the class as a whole[.]" Fed. R. Civ. P. 23(b)(2). Plaintiffs are not seeking

simple declaratory relief but are also seeking to set aside the Secretary's "partial vacatur" and

"termination" of Haiti's TPS designation. Congress divested federal district courts from granting

such relief, so Plaintiffs cannot meet the definition of Rule 23(b)(2).

Congress spoke clearly: no court but the Supreme Court may issue relief that "enjoin[s] or

restrain[s] the operation of" certain provisions of the Immigration and Nationality Act ("INA").

8 U.S.C. § 1252(f)(1). Such relief is impermissible "[r]egardless of the nature of the action or the

claim or of the identity of the party or parties bringing the action." *Id.* The statute thus "generally

prohibits lower courts from entering injunctions that order federal officials to take or refrain from taking actions to enforce, implement, or otherwise carry out the specified statutory provisions." *Garland v. Aleman Gonzalez*, 596 U.S. 543, 550 (2022).  The TPS statute is a covered provision because Congress placed it in Chapter 4 of Title II of the INA—the chapter that § 1252(f)(1) shields.  IIRIRA, div. C, Pub. L. No. 104-208, §§ 306, 308, 110 Stat. 3009-546 (1996); *see also Nat'l TPS All. v. Noem*, 150 F.4th 1000, 1018 & n.8 (9th Cir. 2025).

Congress has given the Secretary "broad authority" over TPS determinations, *Ramos v. Wolf*, 975 F.3d 872, 890 (9th Cir. 2020), *reh'g en banc granted, opinion vacated*, 59 F.4th 1010 (9th Cir. 2023), including discretion over both the length of the TPS designation and timing of periodic review, 8 U.S.C. § 1254a(b)(3)(A)-(C).  That broad authority in making TPS determinations carries with it authority to revisit and reconsider a prior determination.  *Chao v. Russell P. Le Frois Builder*, *Inc.,* 291 F.3d 219, 229 n.9 (2d Cir. 2002) (agency's power to reconsider "applies regardless of whether the applicable statute and agency regulations expressly provide for such review, but not where there is contrary legislative intent or other affirmative evidence" (citation modified)); *Gun S. Inc. v. Brady*, 877 F.2d 858, 862 (11th Cir. 1989) ("[T]he Supreme Court and other courts have recognized an implied authority in other agencies to reconsider and rectify errors even though the applicable statute and regulations do not expressly provide for such reconsideration.").

Here, Plaintiffs ask this Court to declare unlawful the Secretary's TPS designation as it pertains to Haiti and to vacate her determination.  *See* Compl. (ECF No. 1) at Prayer for Relief. They seek that relief because it would have the same practical effect as an injunction requiring the government to extend TPS benefits to the class.  And even if the relief Plaintiffs request were not impermissible as an injunction, it certainly "restrain[s]" the operation of the TPS statute.  8 U.S.C.

§ 1252(f)(1).  Plaintiffs' requested relief would "hold back" or "prevent" the government from terminating Haiti's TPS designation, thereby squarely falling under the definition set forth by the Supreme Court. *See Aleman Gonzalez*, 596 U.S. at 549 ("restrain" means to "check, hold back, or prevent (a person or thing) from some course of action").

The Supreme Court and the D.C. Circuit have decisively weighed in on the issue of classwide relief in the immigration context, such that there can be no doubt that § 1252(f)(1)'s remedial bar applies here.  In *Aleman Gonzalez*, the Supreme Court overturned injunctions entered by two district courts that had, as a matter of statutory interpretation, required the government to provide bond hearings for aliens detained under 8 U.S.C. § 1231(a)(6).  596 U.S. at 550.  The Court held that "[t]hose orders 'enjoin or restrain the operation' of § 1231(a)(6) because they require officials to take actions that (in the Government's view) are not required by § 1231(a)(6) and to refrain from actions that (again in the Government's view) are allowed by § 1231(a)(6)." *Id.* at 551.  Because "[t]hose injunctions thus interfere with the Government's efforts to operate § 1231(a)(6)" in the Government's chosen manner, they were barred by § 1252(f)(1).  *Id.*

In *N.S. v. Dixon*, the D.C. Circuit overturned an injunction entered by the district court restraining the U.S. Marshals from carrying out immigration arrests and detentions pursuant to Forms I-200 Warrants of Arrest issued by the Department of Homeland Security.  141 F.4th 279, 289 (D.C. Cir. 2025).  Despite finding that the U.S. Marshals lacked authority to execute the Form I-200s, the Court held that the injunction "directly and substantially restricts the ability of federal officials to 'carry out' provisions covered by § 1252(f)(1)." *Id.*

Both *Aleman Gonzalez* and *N.S.* confirm that this Court lacks authority under § 1252(f)(1) to enjoin the Secretary's ultimate determination for Haiti's TPS designation.  Rule 23(b)(2) only permits a class action if the court could issue final injunctive relief or corresponding declaratory

relief that is appropriate respecting the class a whole.  Fed. R. Civ. P. 23(b)(2).  Since the Court cannot enter that form of relief, certifying this class would be an exercise in futility.

It matters not that Plaintiffs argue that the Secretary's determination is unlawful, for § 1252(f)'s remedial bar is not limited to the enumerated provisions "as *properly* interpreted." *N.S.*, 141 F.4th at 289 (emphasis in original; citing *Aleman Gonzalez*, 596 U.S. at 552-54).  Any other reading would "make the effect of § 1252(f)(1) contingent upon the merits of the claim that the Government acted unlawfully." *Id.*  Put another way, even if this Court ultimately were to find that the Secretary's determination was contrary to law, § 1252(f)(1) precludes the Court from enjoining on a classwide basis Defendants' operation of TPS under § 1254a. *See id.* ("§ 1252(f)(1) has the same force even when the National Government allegedly enforces the relevant statutes unlawfully." (quoting *Arizona v. Biden*, 40 F.4th 375, 394 (6th Cir. 2022) (Sutton, C.J., concurring))).

Plaintiffs may argue that the relief sought is not the equivalent of an injunction and the Court accordingly may still afford classwide relief. *See* Pls' Mot. (ECF No. 67) at 5 n.3.  That argument is fundamentally wrong.  By requesting that this Court declare the Secretary's determination unlawful and vacate the determination, Plaintiffs seek a coercive order from this Court.  As the Supreme Court has recognized, injunctions are the "means by which a court tells someone what to do or not to do," "direct[ing] the conduct of a party . . . with the backing of its full coercive powers." *Nken v. Holder*, 556 U.S. 418, 428 (2009).  The definition makes sense, for an injunctive order operates "'*in personam*.'"  *Id.*  (quoting *Black's Law Dictionary* 800 (6th ed.1990)).  An order that sets aside the Secretary's determination would "command[] [her] to undo some wrong injury." *Id.*  (citation omitted).  Plaintiffs fundamentally seek vacatur of the Secretary's determination, Pls' Mot. (ECF No. 67) at 6, which is a form of relief that operates upon

§ 1254a like an injunction.  *See, e.g.*, *Diné Citizens Against Ruining Our Env't v. Haaland*, 59 F.4th 1016, 1048 (10th Cir. 2023) (vacatur of agency action is a "form of injunctive relief granted by district courts" (citation modified)).  Indeed, "[i]n a general sense, every order of a court which commands or forbids is an injunction."  *Nken*, 556 U.S. at 428.  That is precisely the type of relief that § 1252(f)(1) prohibits.

Even if the Court concludes that its order would not necessarily "enjoin" the Government, there can be no reasonable dispute that any order from this Court would impermissibly "restrain" the Secretary from exercising her authority under the TPS statute.  A corresponding order would compel expenditure of finite governmental resources implementing TPS designations that are contrary to the national interest, and preclude Executive officials from enforcing immigration laws in the way the Executive Branch deems appropriate.  *See Aleman Gonzalez*, 596 U.S. at 549; *see also Restrain*, Black's Law Dictionary (12th ed. 2014) (defining "[r]estrain" as meaning to "limit" or "put compulsion upon").  Certainly, "restrains" must be read to mean something different from "enjoins," and the logical conclusion must be that Congress intended a broader meaning.  *Cf. Institutional S'holder Servs., Inc. v. SEC*, 142 F.4th 757, 767 (D.C. Cir. 2025) (using contextual clues to determine that regulating "different conduct using broader language" indicates that "Congress meant something different in its choice of the term").

Although the D.C. Circuit has not yet decided whether § 1252(f)(1) bars APA vacatur, *see N.S.*, 141 F.4th at 290 n.7, the statutory text certainly supports such a reading.  The provision's prefatory clause is clear: "Regardless of the nature of the action or claim."  8 U.S.C. § 1252(f)(1).  To deem APA vacatur to somehow not be covered by the reach of § 1252(f)(1) would render the provision's prefatory clause a "paper tiger" or "toothless," allowing parties to circumvent clear jurisdictional bars by creative pleading.  *See E.F.L. v. Prim*, 986 F.3d 959, 965 (7th Cir. 2021)

- 11 -

(applying principle when affirming a neighboring jurisdictional bar); *see also Tazu v. Att'y Gen.*, 975 F.3d 292, 298 (3d Cir. 2020) (same).  As vacatur "restrict[s] or stop[s] official action," *Direct Mktg. Ass'n v. Brohl*, 575 U.S. 1, 13 (2015), Congress plainly foreclosed any such order by this Court by declaring in § 1252(f)(1) that "no court (other than the Supreme Court) shall have jurisdiction or authority to enjoin or restrain the operation of" the covered provisions.

Finally, that Plaintiffs seek separate declaratory relief is of no moment.  The Declaratory Judgment Act only permits a court to "declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." 28 U.S.C. § 2201(a).  Courts can enter declaratory judgment if it will either (1) "serve a useful purpose in clarifying the legal relations in issue" or (2) "terminate and afford relief from the uncertainty, insecurity, and controversy giving rise to the proceeding."  *President v. Vance*, 627 F.2d 353, 364 n.76 (D.C. Cir. 1980) (citation omitted).  Plaintiffs by their own admission are seeking more than a simple declaration that would fall into either of the two buckets.  *See* Compl. (ECF No. 1) at Prayer for Relief (b)(i), (ii).  Plaintiffs' proposed declaration would "interdict[]" "the operation at large of the [TPS] statute," thereby prohibiting Defendants from continuing to apply it.  *Kennedy v. Mendoza-Martinez*, 372 U.S. 144, 155 (1963).  Defendants would face the threat of contempt if there were a violation of the Court's order.  Thus, as a practical matter, such an order would fail to differentiate "between injunctive and declaratory relief."  *California v. Grace Brethren Church*, 457 U.S. 393, 408 (1982).  This is especially true given that "every single member of the class can, and will, immediately seek an injunction grounded on the authority of the declaratory judgment."  *Alli v. Decker*, 650 F.3d 1007, 1020 n.2 (3d Cir. 2011) (Fuentes, J., dissenting); *see also Hamama v. Adducci*, 912 F.3d 869, 880 n.8 (6th Cir. 2018) (while

"declaratory relief will not always be the functional equivalent of injunctive relief . . . in this case it is the functional equivalent").

Defendants acknowledge that the D.C. Circuit has indicated that § 1252(f)(1) does not bar the granting of declaratory relief.  *See Make the Rd. N.Y. v. Wolf*, 962 F.3d 612, 635 (D.C. Cir. 2020).  But that holding contemplates a properly crafted declaratory judgment.  And Defendants do not dispute that an ordinary declaratory judgment pronouncing an agency action unlawful does not, by itself, "enjoin or restrain" the operation of the statute that authorized the agency action. 8 U.S.C. § 1252(f)(1).  But that is because such remedy is "totally noncoercive."  *Kennedy*, 372 U.S. at 155; *see also Steffel v. Thompson*, 415 U.S. 452, 471 (1974) ("Though [a declaratory judgment] may be persuasive, it is not ultimately coercive." (citation omitted)).  This is precisely why declaratory judgments and injunctions are two different remedies requiring "different considerations" and why there are times when a declaratory judgment may be appropriate even if an injunction is not.  *Steffel*, 415 U.S. at 469.

Under *Make the Road*, this Court could issue a declaratory judgment, but "the Government [remains] free to continue to apply" the challenged action pending further proceedings, including appellate review.  *Kennedy*, 372 U.S. at 155.  That would follow Congress's plan for § 1252(f)(1), which was enacted not to entirely "preclude challenges" to covered immigration procedures, but to ensure that "the procedures will remain in force while such lawsuits are pending.  H.R. Rep. No. 469, 104th Cong., 2d Sess. Pt. 1 at 161 (1996).  The relief that Plaintiffs seek goes beyond this contemplation, and they would likely seek to have Defendants held in contempt if Defendants continued forward with TPS termination for Haiti following their requested declaratory judgment. Any such classwide relief would go beyond the permissible reach of § 1252(f)(1).  *Cf. Calderon*

*Jimenez v. McAleenan*, No. 18-cv-10225, D. Ct. Doc. 295, at 1 (D. Mass. June 28, 2019) ("any

violation of" the court's construction of the law "could constitute civil and/or criminal contempt").

 *Grace Brethren Church* is particularly instructive.  There, the Supreme Court held that the

Tax Injunction Act, 28 U.S.C. § 1341, which barred orders that "suspend or restrain" tax collection,

stripped courts of jurisdiction to enter not just injunctive relief, but also declaratory relief.  *Grace*

*Brethren Church*, 457 U.S. at 408.  The Court should extend the same reasoning here, even though

Plaintiffs seek a declaration and accompanying vacatur under § 706.  *See United States v. Texas*,

599 U.S. 670, 690-701 (2023) (Gorsuch, J., concurring) (agreeing that a district court cannot use

vacatur under 5 U.S.C. § 706 to "sidestep" § 1252(f)(1)).

 Thus, even if standalone declaratory relief is not barred by § 1252(f)(1) in this instance,

the putative class cannot be sustained based solely upon the request for declaratory relief because

class certification is permitted only where a court can grant "*corresponding* declaratory relief."

Fed. R. Civ. P. 23(b)(2) (emphasis added).  The Advisory Committee defines "corresponding

declaratory relief" as any remedy that "as a practical matter . . . affords injunctive relief or serves

as a basis for later injunctive relief."  Fed. R. Civ. P. 23(b)(2) Advisory Committee Note to 1996

Amendment; *see also* 7AA Fed. Prac. & Proc. Civ. § 1775 (3d ed.).  This definition makes clear

that the purpose of the Rule 23(b)(2) class was to enjoin certain action or inaction on a classwide

basis and that any anticipated declaratory relief issued under this provision should be equivalent

to an injunction to satisfy the requirements of class certification.  *See id.*; *see also Coca-Cola*

*Bottling Co. of Elizabethtown v. Coca-Cola Co.*, 98 F.R.D. 254, 271 (D. Del. 1983) (refusing to

certify a Rule 23(b)(2) class where "[d]etermination of the [] issues would not result in

corresponding declaratory relief that would have the effect of enjoining the defendant from acting

in the future"); *Sibley v. Diversified Collection Servs., Inc.*, Civ. A. No. 396-cv-0816, 1998 WL

355492, at *4 (N.D. Tex. June 30, 1998) (opining that, under Rule 23(b)(2), "the declaratory judgment should be the equivalent of an injunction").

Accordingly, Rule 23(b)(2) allows only declaratory relief that has the same practical effect as an injunction, but § 1252(f)(1) prevents Plaintiffs from obtaining any relief that has the same effect as an injunction.  The Supreme Court in *Jennings v. Rodriguez* echoed this point when it suggested that if § 1252(f)(1) prohibits classwide injunctive relief, then it may equally prohibit corresponding declaratory relief.  583 U.S. 281, 313 (2018) ("[I]f the Court of Appeals concludes that it may issue only declaratory relief, then the Court of Appeals should decide whether that remedy can sustain the class on its own" in light of Rule 23(b)(2)'s language concerning "corresponding" relief).  Thus, any declaratory judgment here would be limited to stand-alone declaratory relief, which is not contemplated by Rule 23(b)(2).

In short, Plaintiffs cannot meet the requirements for certification under Rule 23(b)(2).  That alone warrants denial of Plaintiffs' motion before the Court even reaches the Rule 23(a) considerations.

## III.    **Plaintiffs Have Not Satisfied the Rigorous Requirements for Class Certification.**

### A.    **The Proposed Class Lacks Commonality.**

Plaintiffs cannot establish commonality under Rule 23(a)(2).  *See* Pls' Mot. (ECF No. 67) at 7-8.  Plaintiffs must "affirmatively demonstrate" their compliance with the commonality requirement, which demands not only "common questions . . . but, rather the capacity of a classwide proceeding to generate common *answers* apt to drive the resolution of the litigation." *Wal-Mart*, 564 U.S. at 350.  The commonality requirement is uniquely rigorous when applied to a proposed class, like the one here, seeking certification under Rule 23(b)(2).  To meet their burden, Plaintiffs must show that Defendants have "acted or refused to act on grounds that apply generally to the class" so that "relief is appropriate respecting the class as a whole." Fed. R. Civ. P. 23(b)(2);

*J.D. v. Azar*, 925 F.3d 1291, 1321 (D.C. Cir. 2019) ("[I]f any person in the class has a meritorious claim, they all do.").  In that way, satisfaction of Rule 23(a)(2) for a class under Rule 23(b)(2) requires a common legal problem wherein the "determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Wal-Mart*, 564 U.S. at 350; *DL v. District of Columbia*, 713 F.3d 120, 127 (D.C. Cir. 2013) ("The circuit courts of appeals to address the question have hewed faithfully to *Wal-Mart*'s 'one stroke' requirement.").

Plaintiffs seek to certify a class defined as "All persons in the United States who have been granted, or have applied for, Temporary Protected Status pursuant to 8 U.S.C. § 1254a and 8 C.F.R. § 244.2 and named Haiti as the designated TPS country under which they applied."  Pls' Mot. (ECF No. 67) at 4.  That class definition is overbroad, and its application would encompass individuals who are not injured by the alleged unlawful conduct.

Courts in this District interpret Rule 23 as imposing a "requirement that a class be clearly defined." *Pigford v. Glickman*, 182 F.R.D. 341, 346 (D.D.C. 1998) (citing *Hartman v. Duffey*, 19 F.3d 1459, 1471 (D.C. Cir. 1994)).  This requirement ensures that a class is "neither amorphous, nor imprecise." *Lewis v. Nat'l Football League*, 146 F.R.D. 5, 8 (D.D.C. 1992) (internal quotation and citation omitted).  For example, a class sought to be certified under Rule 23(b)(2) must "accurately articulate[] the general demarcations of the class of individuals who are being harmed." *Thorpe v. District of Columbia*, 303 F.R.D. 120, 139 (D.D.C. 2014) (citation modified). A class definition may be fatally overbroad if it "sweeps within it persons who could not have been injured by the defendant's conduct." *Ross v. Lockheed Martin Corp.*, 267 F. Supp. 3d 174, 191 (D.D.C. 2017) (quoting *Kohen v. Pac. Inv. Mgmt. Co. LLC*, 571 F.3d 672, 677 (7th Cir. 2009)). Having an inadequately defined or overbroad class also often implicates multiple Rule 23

requirements, including typicality, commonality, and the standards for certifying an injunctive-relief class under Rule 23(b)(2).

In short, a putative class must be "definite" or "ascertainable." *J.D.*, 925 F.3d at 1319-20 (citing 1 William B. Rubenstein, Newman & Rubenstein on Class Actions § 3:3 (6th ed.)). It arises from Rule 23's "express[] direct[ion] that the definition of a class be determined and that its members be identified or identifiable early in the litigation, not at its end." *In re White*, 64 F.4th 302, 313 (D.C. Cir. 2023). Although absolute precision is not necessary before certifying a (b)(2) class, class membership must still be determinable "with reference to 'objective criteria.'" *Thorpe*, 303 F.R.D. at 139 (quoting 1 Rubenstein § 3:3); *see also* Manual for Complex Litigation § 21.222 (4th ed.) (defining class "is of critical importance because," among other things, "it identifies the persons [who are] entitled to relief"); *id.* (noting that although a court need not "identify every individual member at the time of certification of a Rule 23(b)(2) class action for injunctive relief," it must be able to "determine at any given time whether a particular individual is a member of the class").

Plaintiffs' all-encompassing class definition lacks the demarcations necessary to make the class ascertainable.[4] For example, Plaintiffs' class definition problematically fails to set forth any

---

[4] The Court should consider this threshold question of ascertainability before conducting a Rule 23(a) analysis. Defendants acknowledge that there is at least one court that has determined that the D.C. Circuit has rejected this argument and held otherwise. *See Morgan v. District of Columbia*, Civ. A. No. 10-1511 (RJL), 2025 WL 255228, at *7 (D.D.C. Aug. 7, 2025) (citing *White*, 64 F.4th at 314)). Defendants respectfully disagree with this reading of *White*. The *White* court reviewed whether Rule 23 prohibits a "fail-safe" class, or a class definition that could only be ascertained through a merits determination. 64 F.4th at 303. The D.C. Circuit did not reject outright the requirement that a class must be ascertainable before conducting a Rule 23 analysis. *See id.* at 310 (noting an intra-district divide on the "fail-safe" class issue). To be clear, Defendants are not arguing that Plaintiffs' proposed class definition is a "fail-safe" class. In all events, should the Court join *Morgan* and conclude that *White* forecloses this threshold argument, Defendants hereby preserve it for further review. Moreover, the arguments remain pertinent to determining whether Plaintiffs can establish commonality and typicality.

temporal limitations.  Haiti was initially designated for TPS on January 21, 2010. *See* Designation of Haiti for Temporary Protected Status, 75 Fed. Reg. 3476 (Jan. 21, 2010).  With the various renewals and extensions, the class definition includes aliens who have had TPS since the original designation but would no longer be injured by the Secretary's determination.  Individuals may have originally held TPS from Haiti but have since received alternative forms of immigration relief.  Some of these individuals have received asylum, have obtained U or T visas, or another form of relief from removal.  Also, others have utilized available pathways to adjust status through a U.S. citizen, a lawful permanent resident relative, Special Immigrant Juvenile Status, or a Violence Against Women Act of 1994 self-petition while another group may be able to utilize these options.  And others may no longer be in the United States, as they have decided to return to Haiti or traveled to another country.  This group of aliens would lack standing to challenge the Secretary's action because they would not suffer any cognizable injury.  *See Ross*, 267 F. Supp. 3d at 191 ("[I]f the definition is so broad that it sweeps within it persons who could not have been injured by the defendant's conduct, it is too broad." (quoting *Kohen*, 571 F.3d at 677)); *see also Lewis v. U.S. Parole Comm'n*, 743 F. Supp. 3d 181, 204 (D.D.C. 2024) ("Plaintiffs' overly broad class definition runs afoul of Rule 23's commonality requirement, because the Court cannot determine by a preponderance of the evidence that [the alleged unlawful conduct] gives rise to a common injury affecting all or nearly all class members.").

Plaintiffs cast a wide net, attempting to argue that the threat of removal and loss of employment authorization are sufficient to establish both commonality and typicality.  Pls' Mot. (ECF No. 67) at 7-8.  But that exhibits a fundamental misunderstanding of immigration law and immigration proceedings.  Certainly, there may be some aliens who have final orders of removal with no forms of immigration relief available to them and may be removed to Haiti if its TPS

designation is terminated.  *See* 8 U.S.C. §§ 1231(b), 1254a(a)(1) (establishing that aliens with final

orders of removal can be removed once TPS is no longer in effect). But there also are aliens who

may have grounds to file a motion to reopen their removal proceedings and seeking other forms

of relief or protection from removal.  *See* 8 U.S.C. § 1229a(c)(7); *see also* 8 U.S.C. §§ 1158

(asylum), 1231(b)(3)(A) (withholding of removal); 1229b (cancellation of removal);

8 C.F.R. §§ 1208.16–1208.17 (governing withholding and deferral of removal under Convention

Against Torture and Other Cruel, Inhuman or Degrading Treatment or Punishment (CAT), Dec.

10, 1984, S. Treaty Doc. No. 100–20, 1465 U.N.T.S. 113).  Some aliens may seek voluntary

departure or have already been granted voluntary departure.  *See* 8 U.S.C. § 1229c.  But then there

may also be a subset of aliens who have not yet been subject to removal proceedings, and if placed

in removal proceedings before an immigration judge, would generally be able to apply for relief

or protection from removal.  *See* 8 U.S.C. § 1229a.  Aliens who are applying for or have been

granted most forms of relief from removal, including asylum, may be eligible for work

authorization. *See, e.g.*, 8 C.F.R. §§ 208.7, 274a.12.  These aliens would fall under Plaintiffs' class

definition but not be subject to the harms that they claim.

The proposed class representatives are common but only to one group of aliens: those who

have not been subject to removal proceedings.  *See generally* Miot Decl. (no mention of

immigration proceedings); Civil Decl. (same); Noble Decl. (same); Laguerre Decl. (same);

Dorsainvil Decl. (same); *see also* Declaration of Daniel Andrade ("Andrade Decl.") ¶ 6. (same).

Indeed, three of the five proposed class representatives are currently seeking relief from removal.

*See* Andrade Decl. ¶ 7.  Therefore, the proposed representatives in theory may have relief available

to them that is not necessarily available to others in the class.  Thus, on the issue of harm alone,

this Court would have to engage in an individualized fact determination, which defeats Plaintiffs'

commonality argument.  *See Brown v. District of Columbia*, 928 F.3d 1070, 1081-82 (D.C. Cir. 2019) (finding commonality when "common proof will lead to common answers to each of the five questions on which resolution of Plaintiffs' claims turns"); *see also Nguyen Da Yen v. Kissinger*, 70 F.R.D. 656, 663-64 (N.D. Cal. 1976) (recognizing that commonality could not be established where various factual patterns require individual adjudications of class members' claims).

That Plaintiffs assert a due process claim under the Clause's equal protection guarantee does not alter the analysis.  As the D.C. Circuit has recognized, disparate treatment based on nationality is permitted when it comes to the field of immigration.  *See Narenji v. Civiletti*, 617 F.2d 745, 747 (D.C. Cir. 1979); *see also Colindres v. Dep't of State*, 575 F. Supp. 3d 121, 136-37 (D.D.C. 2021) (collecting cases).  That is because the Executive may decide to "antagonize a particular foreign country by focusing on that country's nationals," and courts "would be ill equipped to determine" the authenticity or adequacy of those reasons. *Reno v. Am.-Arab Anti-Discrim. Comm.*, 525 U.S. 471, 490-91 (1999).  That principle is rooted in issues of foreign policy, which are not subject to judicial review.  *See El-Shifa Pharm. Indus. Co. v. United States*, 607 F.3d 836, 842 (D.C. Cir. 2010) ("The political question doctrine bars our review of claims that, regardless of how they are styled, call into question the prudence of the political branches in matters of foreign policy or national security constitutionally committed to their discretion."); *Mathews v. Diaz*, 426 U.S. 67, 81 (1976) ("the responsibility for regulating the relationship between the United States and our alien visitors has been committed to the political branches of the Federal Government."); *Huisha-Huisha v. Mayorkas*, 27 F.4th 718, 730 (D.C. Cir. 2022) ("'Removal decisions, including the selection of a removed alien's destination, may implicate our relations with foreign powers and require consideration of changing political and economic

circumstances.'" (quoting *Jama v. ICE*, 543 U.S. 335, 348 (2005))).  The Court should not accept Plaintiffs' simple invocation of race and nationality to establish commonality, *see* Pls' Mot. (ECF No. 67) at 8, especially when courts require more to survive a motion to dismiss.  *See Colindres*, 575 F. Supp. 3d at 136-38.

Plaintiffs also cannot establish commonality for additional reasons.  The class definition encompasses, although not exclusively, aliens: (1) who have departed the United States; with (2) final orders of removal having gone through removal proceedings before an immigration judge; (3) no final orders but may currently be in removal proceedings before an immigration judge; (4) possible expedited removal orders who can be ordered removed by an immigration officer without a hearing before an immigration judge; and (5) other forms of immigration available to them.  Those class members who are no longer in the United States have no cognizable Fifth Amendment claim, because it would effectively create of right of entry to the United States.  *See Alhabra v. Rubio*, Civ. A. No. 24-0854 (SLS), 2025 WL 985457, at *8 (D.D.C. Apr. 2, 2025) (citing *Jifry v. FAA*, 370 F.3d 1174, 1182 (D.C. Cir. 2004)).  On the other hand, aliens with final orders of removal do not have a right to remain in the country unlawfully.  *See Huisha-Huisha*, 27 F.4th at 732-33 (recognizing that the Executive has power to expel aliens with final orders of removal where they will not be persecuted or tortured).[5]  Therefore, their constitutional challenge would be subject to

---

[5]    Plaintiffs are likely to rely on their previously-submitted declarations and argue that they would be subject to persecution and torture final orders of removal be entered, to the extent that they are subject to removal proceedings and are then removed Haiti.  *See* Miot Decl. ¶¶ 10-14; Civil Decl. ¶¶ 7-13; Noble Decl. ¶¶ 19-20; Laguerre Decl. ¶¶ 24-31; Dorsainvil Decl. ¶¶ 12-18; *see also* Compl. ¶¶ 178-182.  Those Plaintiffs are different from those with final orders of removal.  Those aliens with final orders of removal have been through removal proceedings under § 1229a and obtained review of their claims through the administrative process with the option of seeking Article III judicial review.  *See* 8 U.S.C. § 1252(a)(5), (b)(9).  To the extent that such individuals have new claims that need to be raised, those claims must be raised through the petition-for-review process.  *See* 8 U.S.C. § 1252(b)(9) (channeling to a petition for review all questions of law and fact that arise out of the act of removal).

a different analysis. For those class members who are in the United States without final orders of removal, including the proposed class representatives, the Court would have to conduct individualized determinations about their "substantial connections" with the United States or review the Plaintiffs' individualized acts and determine whether they constitute "accepted societal obligations." *Jifry*, 370 F.3d at 1182-83. As for aliens who underwent expedited proceedings, they cannot "claim any greater rights under the Due Process Clause" than those that are statutorily provided by Congress. *Dep't of Homeland Sec. v. Thuraissigiam*, 591 U.S. 103, 107 (2020). Such removals involve "considerably less process . . . than [is provided] in full removal proceedings." *Las Americas Immigr. Advoc. Ctr. v. Wolf*, 507 F. Supp. 3d 1, 39 (D.D.C. 2020); *dismissed sub nom. Las Americas Immigr. Advoc. Ctr. v. Mayorkas*, No. 20-5386, 2024 WL 3632500 (D.C. Cir. Aug. 1, 2024); *see, e.g.,* 8 U.S.C. § 1225(b)(1)(A)(i) (asylum officers may remove aliens "without further hearing or review").

Because commonality "requires the plaintiff to demonstrate that the class members 'have suffered the same injury,'" that the members of the putative class possess differing levels of due process protections is necessarily fatal to their ability to demonstrate the requisite commonality for class certification. *Wal-Mart*, 564 U.S. at 349-50. This is exactly why it would be near impossible to conduct a "one stroke" analysis and determine whether the class members are all subject to the same constitutional harms. *See id.* at 350. There would be no common answers when it comes to Plaintiffs' constitutional claim, and those "dissimilarities within the proposed class are" exactly what "impede the generation of common answers." *Id.*

Plaintiffs may argue that policy-and-practice claims are different and should be treated as such. *See* Pls' Mot. (ECF No. 67) at 7-8. But Plaintiffs must "provide 'significant proof' that such a policy or practice exists." *Parker v. Bank of Am., N.A.*, 99 F. Supp. 3d 69, 81 (D.D.C. 2015)

(quoting *Wal-Mart*, 564 U.S. at 354).  Plaintiffs have fallen well short of sustaining their burden.

All they have are mere allegations of unlawful behavior.  *See, e.g.*, Compl. ¶¶ 59, 60, 64, 65, 94,

98, 100, 101.  Plaintiffs have not supported their class certification motion "with significant

evidence that such a policy or practice exists."  *Parker*, 99 F. Supp. 3d at 81 (citation omitted).

     More broadly, however, this Court should heed the Supreme Court's hesitation when it

comes to class certification in the immigration realm.  *See, e.g.*, *Jennings*, 583 U.S. at 314

(remanding case and directing lower court to determine whether a Rule 23(b)(2) class action is the

appropriate mechanism to resolve "flexible" Due Process Clause claims).  As shown above,

"claims of [due process] constitutional violations . . . [are] not always fully available to every

claimant."  *Las Americas*, 507 F. Supp. 3d at 39; *see Zadvydas v. Davis*, 533 U.S. 678, 694 (2001)

("[T]he nature of protection[s] may vary depending upon status and circumstance[s].");

*Hernandez-Carrera v. Carlson*, 547 F.3d 1237, 1254 (10th Cir. 2008) ("[I]t is not at all clear that

removable aliens benefit from precisely the same advantages of due process as do citizens or lawful

permanent resident aliens.").

     Therefore, the individualized inquiries required for Plaintiffs' constitutional claim defeat

commonality.  *See Wal-Mart*, 564 U.S. at 350 (requiring a "common answer[] apt to drive the

resolution").

### B.    The Proposed Class Lacks Typicality.

     Typicality requires a finding that "the claims or defenses of the representative parties are

typical of the claims or defenses of the class."  Fed. R. Civ. P. 23(a)(3).  Its aims are to ensure

"'that the class representatives have suffered injuries in the same general fashion as absent class

members.'"  *In re Vitamins Antitrust Litig.*, 209 F.R.D. 251, 260 (D.D.C. 2002) (quoting *Thomas

v. Albright*, 139 F.3d 227, 228 (D.C. Cir. 1998)).  That said, "[b]ecause Rule 23 requires that both

the claims and the defenses be typical, a proposed class representative will not satisfy Rule 23(a)(3)

if the representative is subject to a unique defense that is likely to become a major focus of the litigation." *In re Rail Freight Fuel Surcharge Antitrust Litig.*, 287 F.R.D. 1, 33 (D.D.C. 2012) (citation modified).  While the claims do not need to be identical, *Cohen v. Chilcott*, 522 F. Supp. 2d 105, 115 (D.D.C. 2007), "at least one named plaintiff [must have] a claim relating to each challenged practice for which relief is [sought]."  *Stewart v. Rubin*, 948 F. Supp. 1077, 1088 (D.D.C. 1996) *aff'd*, 124 F.3d 1309 (D.C. Cir. 1997), *enforcement denied*, Civ. A. No. 90-2841 (RCL), 1999 WL 35798755 (D.D.C. July 1, 1999).  Typicality is lacking here for similar reasons that doom commonality.  *See supra* at III.A.

Evidencing the disparity is the variety of harms that the named Plaintiffs allege.  For example, Miot claims that losing TPS would affect employment because he would be unable to continue his graduate studies and fulfill his professional goals; he claims that removal would harm him because he suffers from a medical condition and would be subject to gang violence based on his long-term presence in the United States.  Miot. Decl. ¶¶ 5, 8-11.  But that harm would not be the same for all class members given that Miot may still be able to seek relief or protection from removal and may potentially have other means by which to obtain lawful status given his studies. *See* 8 U.S.C. § 1101(a)(15)(F); 8 C.F.R. § 214.1(a).  Noble confirms that not all medical conditions are alike and different harms flow from various conditions.  *See* Noble Decl. ¶¶ 15, 19, 20.  Indeed, Noble confirms a different harm, for she has no connection to Haiti at all, thus TPS termination and potential subsequent removal would result in the removal to Haiti of a stranger to the country. Putting aside her speculation that she would be ordered removed and that Haiti would be the country of removal, the same cannot be said about all class members.

Similarly, Civil contends that he would suffer harm because losing TPS would mean that he could no longer support family members in Haiti and that removal would pose risk to his

ongoing employment as a software engineer.  *See* Civil Decl. ¶¶ 5, 10.  Again, the same cannot be said for all class members of the putative class.

More broadly, however, the "imminent loss of work authorization" and "protections from deportation" allegations are too general.  Compl. (ECF No. 1) ¶ 186.  There is no record of any of the named Plaintiffs having gone through removal proceedings, *see* Andrade Decl. ¶ 6, meaning that they are unlikely to be under immediate threat of removal.  *See* 8 U.S.C. § 1229a (providing an administrative mechanism for aliens to challenge inadmissibility and removability).  Similarly, the named Plaintiffs have other paths by which to seek work authorization even if and after Haiti's TPS designation is terminated.  *See* Instructions for Application for Employment Authorization at 1, available at  https://www.uscis.gov/sites/default/files/document/forms/i-765instr.pdf  (last visited Nov. 4, 2025) (listing thirteen pages worth of statuses that may be eligible for work authorization).  But that does not mean all class members would be.  *See, e.g.*, *id*. at 12 (requiring individuals with Deferred Action for Childhood Arrivals and those with final removal orders to submit additional evidence for consideration in support of an employment authorization request).

Defendants do not contend that the claims and injuries need to be identical for Plaintiffs to satisfy the typicality prong of Rule 23(a).  However, they must have "suffered injuries in the same general fashion" as the rest of the purported class that they intend to represent.  *Cohen*, 522 F. Supp. 2d at 115 (citation modified).  That is simply not the case here.

### C.    The Named Plaintiffs are Inadequate Class Representatives.[6]

Plaintiffs also fail to demonstrate they are adequate class representatives.  Rule 23(a)(4) requires that the named parties be able to "fairly and adequately protect the interests of the class."

---

[6]    None of the named Plaintiffs have had their TPS terminated; the decision regarding Haiti's TPS designation is under consideration by DHS.  *See* ECF No. 65.  For class certification, at least one class representative must have standing.  *See J.D.*, 925 F.3d at 1324.  At this point, there is a possibility of the Secretary terminating Haiti's TPS designation, but at this time the Court "can

*AmChem Prods.*, 521 U.S. at 625. "A class representative must be part of the class and possess the same interest and suffer the same injury as the class members." *Id.* at 625-26 (citation modified). Plaintiffs here have failed to carry their burden.

"Adequacy is particularly important for a Rule 23(b)(2) class because members of such a class have 'no opportunity . . . to opt out' and no entitlement to 'notice of the action.'" *C.G.B. v. Wolf*, 464 F. Supp. 3d 174, 207 (D.D.C. 2020) (quoting *Wal-Mart*, 564 U.S. at 362). There are generally two criteria recognized by courts to satisfy adequacy: "(1) the named representative must not have antagonistic or conflicting interests with the unnamed members of the class, and (2) the representative must appear able to vigorously prosecute the interests of the class through qualified counsel.'" *Twelve John Does v. District of Columbia*, 117 F.3d 571, 575 (D.C. Cir. 1997). Plaintiffs fail both prongs of the inquiry.

As a threshold matter, none of the five named Plaintiffs have submitted declarations or evidence in support of their class certification motion. Certainly, they submitted declarations in support of the motion for relief under 5 U.S.C. § 705, *see* ECF Nos. 26-2, 26-3, 26-4, 26-5, 26-6, but they do not provide any support that goes to their adequacy as class representatives. Although a comprehensive knowledge of the law certainly is not required, there must be some minimal understanding of the facts or legal theories underlying the case. *See Thorpe*, 303 F.R.D. at 150-51. None of the five Plaintiffs have even satisfied this low threshold of understanding.

---

only speculate" about whether and how an injury will occur at this time. *Elec. Priv. Info. Ctr. v. Presidential Advisory Comm'n on Election Integrity*, 878 F.3d 371, 379 (D.C. Cir. 2017). That would be "fatal" for standing purposes. *Id.* Should the Court disagree and find that the Secretary's upcoming decision in December is sufficiently imminent, Defendants preserve this argument but also submit a fulsome adequacy argument in case the Court decides that the risk of harm is sufficiently imminent to establish standing.

Three of the five named Plaintiffs plainly have conflicting interests with the unnamed members of their class. As explained above, these three individuals are seeking relief from removal, and that path may lead to a favorable decision for each of them. *See* Andrade Decl. ¶ 7. If these three aliens are no longer at risk of removal and/or obtain a separate path to seek receive employment authorization, their interests are directly at odds with all those who fear removal and loss of employment authorization. As for the remaining two named Plaintiffs, there is no declaration or evidence in the record to determine whether they have potential avenues of legitimizing their status in the United States. Absent that, Plaintiffs cannot carry their burden and establish that they do not have antagonistic or conflicting interests with unnamed class members. *See J.D.*, 925 F.3d at 1313.

The named Plaintiffs have provided no evidence that they fully comprehend their representational responsibilities and will vigorously prosecute the interests of the class. Without any declarations to this effect, Plaintiffs have not demonstrated any understanding of their role and responsibilities as class representatives. When a class representative does not understand their responsibilities, they cannot adequately protect the interests of the class. *See*, *e.g.*, *AmChem Prods.*, 521 U.S. at 626-27 (affirming lower court's finding that sub-class representatives who negotiated on behalf of the entire class, not just their sub-class, were not adequate class representatives because they did not properly understand their representational responsibilities). Therefore, none of the proposed class representatives can be considered adequate class members.

Moreover, in seeking to represent a broadly defined class, Civil, Laguerre, and Dorsainvil submit no evidence indicating an intention to continue vigorously prosecuting the interests of the unnamed class members should they receive relief from removal. That these three are utilizing other paths to obtain immigration relief confirms that class members without those avenues will

suffer different and potentially harsher injuries (i.e. a real threat of removal) that these three will not so long as these applications remain pending.  Disparity in injury is a basis to find that Civil, Laguerre, and Dorsainvil are inadequate class representatives.  *See Little v. Wash. Metro. Area Transit Auth.*, 249 F. Supp. 3d 394, 422 (D.D.C. 2017).

## IV.  **The Court Should Not Certify a Nationwide Class.**

Even if the Court concludes that class certification is appropriate, it should not certify a nationwide class action.  The Supreme Court has cautioned against the certification of nationwide class actions.  *Califano*, 442 U.S. at 702.  And more recently, the Court recognized that Rule 23's predecessor, the equitable bill of peace, "involved a 'group [that] was small and cohesive,' and the suit did not 'resolve a question of legal interpretation for the entire realm.'"  *Trump v. CASA, Inc.*, 606 U.S. 831, 848 (2025).  Relatedly, several Justices cautioned against reflexively certifying nationwide class actions to provide "nationwide class relief" that would be an end-run around the now-forbidden universal injunction.  *Id.* at 868 (Alito, J., concurring).  "[D]istrict courts should not view [*CASA*] as an invitation to certify nationwide classes without scrupulous adherence to the rigors of Rule 23."  *Id.*  "Putting the kibosh on universal injunctions does nothing to disrupt Rule 23's requirements."  *Id.*

Despite seeking nationwide class relief in the wake of *CASA*, Plaintiffs offer no argument why nationwide relief is necessary.  Congress exercised its power to create lower courts by devising a system under which most issues are resolved within twelve geographically-based circuit courts of appeals.  It is a feature of this system that district judges within each circuit can reach different opinions on the same question of law before the circuit rules.  And even once a circuit rules, the issue can continue to percolate within other circuits until the matter is taken up by the Supreme Court.  Congress recognized the need for nationwide uniformity on some questions of law; the Federal Circuit, for example, serves that purpose for certain questions.

And even if Plaintiffs had offered some argument, Congress clearly intended certain immigration issues to play out in the lower courts and preferred a system under which different circuits may opine on particular legal questions and leave uniform resolution of abstract legal questions to the Supreme Court.  The text of § 1252(f)(1) confirms that Congress realized that other judicial districts and circuits may reach different answers to the same question.  *See* 8 U.S.C. § 1252(f)(1) (authorizing only the Supreme Court to enjoin or restrain the operation of a covered provision).  Therefore, certifying a nationwide class, with no possibility of opt-outs, would foreclose any possibility of percolation in other judicial districts, ensuring that no plaintiff can sue elsewhere.  That outcome cannot be squared with Congress's explicit recognition that certain issues may need to percolate through the lower courts before the Supreme Court issues a definitive ruling.

At most, the Court should certify a class limited to this judicial district.  *See, e.g.*, *Bova v. Cox Commc'ns, Inc.*, Civ. A. No. 01-0090, 2001 WL 1654708, at \*4 (W.D. Va. Dec. 12, 2001) (limiting the class action to the district).  This Court certainly should not certify a nationwide class when none of the proposed class representatives has any connection to the District.  *See* Miot Decl. ¶ 3 (Loma Linda, California), Civil Decl. ¶ 2 (Bloomfield, New Jersey); Noble Decl. (lack of mention regarding residence); Laguerre Decl. ¶ 2 (New York, New York); Dorsainvil Decl. ¶ 2 (Springfield, Ohio).  Plaintiffs should at least have some connection to the district in which they seek to bring a lawsuit, particularly a class action.  *Cf. Turnbull v. Berryhill*, 490 F. Supp. 3d 132, 138 (D.D.C. 2020) (dismissing for improper venue where plaintiffs "live[d] variously in 'California, Florida, Nevada, North Carolina, Texas, Connecticut, and Washington State'"), *aff'd sub nom. Turnbull v. Kijakazi*, No. 20-5365, 2021 WL 5993232 (D.C. Cir. Dec. 10, 2021).

If the Court concludes that Plaintiffs have satisfied the standard for class certification, it still should not certify a nationwide class without a showing by Plaintiffs of why nationwide class certification is necessary and proposing a class representative from within this District.

**CONCLUSION**

Because Plaintiffs failed to meet their burdens under Rule 23, the Court should deny the motion for class certification.

Dated: November 7, 2025

Respectfully submitted,

JEANINE FERRIS PIRRO
United States Attorney

BRIAN P. HUDAK, D.C. Bar #90034769
Chief, Civil Division

By: _____ */s/ Dhruman Y. Sampat* _____
DHRUMAN Y. SAMPAT
Assistant United States Attorney
601 D Street, NW
Washington, DC 20530
(202) 252-2525
dhruman.sampat@usdoj.gov

*Attorneys for the United States of America*