# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

<table>
<tr><td>

**FRITZ EMMANUEL LESLY MIOT;
RUDOLPH CIVIL; MARLENE GAIL
NOBLE; MARICA MERLINE LAGUERRE;
and VILBRUN DORSAINVIL,**

        *Plaintiffs*,

    v.

**DONALD J. TRUMP, President of the United
States of America; UNITED STATES OF
AMERICA; THE DEPARTMENT OF
HOMELAND SECURITY; and KRISTI
NOEM, Secretary of Homeland Security.**

        *Defendants*.

</td><td>

Case No. 1:25-cv-02471

</td></tr>
</table>

## PLAINTIFFS' REPLY IN SUPPORT OF THEIR MOTION FOR

## CLASS CERTIFICATION AND APPOINTMENT OF CLASS COUNSEL

# TABLE OF CONTENTS

Page

INTRODUCTION ................................................................................................................... 1

ARGUMENT ......................................................................................................................... 2

    I.    8 U.S.C. § 1252(f)(1) does not apply to preclude Plaintiffs' claims. .................... 2

        A.    8 U.S.C. § 1252(f)(1) does not apply to the TPS statute.. .......................... 3

        B.    Section 1252(f)(1) does not apply because the remedies Plaintiffs seek—APA vacatur and declaratory relief—are not injunctions. .......................... 5

        C.    The government's arguments to the contrary are meritless. ....................... 7

        D.    This Court can certify a class. ................................................................. 10

    II.    Rule 23(a) is satisfied here. .................................................................................. 12

        A.    Ascertainability. ..................................................................................... 12

        B.    Commonality. ......................................................................................... 13

        C.    Typicality. .............................................................................................. 21

        D.    Adequacy. .............................................................................................. 22

    III.    A nationwide class is appropriate. ....................................................................... 24

CONCLUSION ..................................................................................................................... 24

CERTIFICATE OF SERVICE ................................................................................................... 26

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Al Otro Lado, Inc v. Mayorkas*,
   619 F. Supp. 3d 1029 (S.D. Cal. 2022)....................................................................5

*Alli v. Decker*,
   650 F.3d 1007 (3d Cir. 2011)..............................................................................11

*Barbara v. Trump*,
   790 F. Supp. 3d 80 (D.N.H. 2025)..............................................13, 15, 22, 24

*Biden v. Texas*,
   597 U.S. 785 (2022)........................................................................................8, 12

*Bowen v. Mich. Acad. of Family Physicians*,
   476 U.S. 667 (1986)..............................................................................................3

*Brito v. Garland*,
   22 F.4th 240 (1st Cir. 2021)...........................................................................7, 11

*Matter of C-I-G-M- & L-V-S-G-*,
   29 I&N Dec. 291 (BIA 2025) ............................................................................19

*Califano v. Yamasaki*,
   442 U.S. 682 (1979)............................................................................................24

*California v. Grace Brethren Church*,
   457 U.S. 393 (1982)............................................................................................10

*CASA, Inc v. Noem*,
   --- F. Supp. 3d ---, 2025 WL 1907378 (D. Md. July 10, 2025) .......................3

*Coal. for Humane Immigrant Rts. v. Noem*,
   --- F. Supp. 3d. ---, 2025 WL 2192986 (D.D.C. 2025).....................................8, 9

*Davis v. United States Parole Comm'n*,
   2025 WL 457779 (D.D.C. Feb. 11, 2025) .....................................................21, 22

*DL v. District of Columbia*, 302 F.R.D. 1, 17 (D.D.C. 2013).......................................12

*Duarte v. Mayorkas*,
   27 F. 4th 1044 (5th Cir. 2022) ..........................................................................20

*Florida v. United States*,
   660 F. Supp. 3d 1239 (N.D. Fla. 2023).............................................................5

*Floyd v. City of New York*,
   283 F.R.D. 153 (S.D.N.Y. 2012) ...................................................................12

*Franklin v. Barry*,
   909 F. Supp. 21 (D.D.C. 1995) ....................................................................21

*Garland v. Aleman Gonzales*,
   596 U.S. 543 (2022) ........................................................................... *passim*

*Matter of H-A-A-V-*,
   29 I&N Dec. 233 (BIA 2025) ......................................................................18

*Haitian Evangelical Clergy Ass'n v. Trump*,
   375 F. Supp. 3d 255 (E.D.N.Y. 2025) ......................................................3, 6, 9

*Hamama v. Adducci*,
   912 F.3d 869 (6th Cir. 2018) .......................................................................11

*Hibbs v. Winn*,
   542 U.S. 88 (2004) ....................................................................................10

*Hinton v. D.C.*,
   567 F. Supp. 3d 30 (D.D.C. 2021) ...............................................................13

*Hoyte v. District of Columbia*,
   325 F.R.D. 485 (D.D.C. 2017) ....................................................................22

*J.D. v. Azar*,
   925 F.3d 1291 (D.C. Cir. 2019) ..........................................................21, 22, 23

*Jennings v. Rodriguez*,
   583 U.S. 281 (2018) ...............................................................................10, 11

*Kornberg v. Carnival Cruise Lines, Inc.*,
   741 F.2d 1332 (11th Cir. 1984) ...................................................................21

*L.G.M.L. v. Noem*,
   --- F. Supp. 3d ---, 2025 WL 2671690 (D.D.C. Sept. 18, 2025)............14, 15, 16, 17

*Las Americas Immigrant Advoc. Ctr. v. U.S. Dep't of Homeland Sec.*,
   783 F. Supp. 3d 200 (D.D.C. 2025) ...............................................................5

*Make the Rd. N.Y. v. Wolf*,
   962 F.3d 612 (D.C. Cir. 2020) ...............................................................6, 7, 9

*Monsanto Co. v. Geertson Seed Farms*,
   561 U.S. 139 (2010) ....................................................................................5

*N.S. v. Dixon*,
  141 F.4th 279 (D.C. Cir. 2025)..............................................................7, 8

*Nat'l TPS All. v. Noem*,
  773 F. Supp. 3d 807 (N.D. Cal. 2025) ....................................3, 4, 5, 13

*New Directions Treatment Servs. v. City of Reading*,
  490 F.3d 293 (3d Cir. 2007)........................................................................22

*Nio v. United States Dep't of Homeland Sec.*,
  323 F.R.D. 28 (D.D.C. 2017)......................................................................14

*O.A. v. Trump*,
  404 F. Supp. 3d 109 (D.D.C. 2019) ..........................................................11

*Parsons v. Ryan*,
  754 F.3d 657 (9th Cir. 2014) ......................................................................13

*Matter of Q. Li*,
  29 I&N Dec. 66 (BIA 2025) ........................................................................19

*Radosti v. Envision EMI, LLC*,
  717 F.Supp.2d 37 (D.D.C. 2010)................................................................22

*Reno v. Am.-Arab Anti-Discrimination Comm.*,
  525 U.S. 471 (1999)..................................................................5, 7, 9, 11

*Richards v. Delta Air Lines, Inc.*,
  453 F.3d 525 (D.C. Cir. 2006) ....................................................................17

*Rodriguez v. Marin*,
  909 F.3d 252 (9th Cir. 2018) ......................................................................11

*Rodriguez v. Nat'l City Bank*,
  726 F.3d 372 (3d Cir. 2013)........................................................................13

*Saget v. Trump*,
  375 F. Supp. 3d 280 (E.D.N.Y. 2019) ........................................................3

*Steffel v. Thompson*,
  415 U.S. 452 (1974)..................................................................................7, 12

*Stephens v. Farmers Rest. Grp.*,
  329 F.R.D. 476 (D.D.C. 2019)....................................................................13

*Texas v. United States*,
  40 F.4th 205 (5th Cir. 2022) ....................................................................5, 8

*Trump v. CASA Inc.*,
606 U.S. 831 (2025) ........................................................................................6, 24

*Ulstein Mar., Ltd. v. United States*,
833 F.2d 1052 (1st Cir. 1987) .....................................................................7

*United States v. Cook*,
594 F.3d 883 (D.C. Cir. 2010) ....................................................................10

*Wal-Mart Stores, Inc. v. Dukes*,
564 U.S. 338 (2011) ....................................................................................15

*Matter of Yajure Hurtado*,
29 I&N Dec. 216 (BIA 2025) ......................................................................19

**Statutes**

5 U.S.C. § 559 ........................................................................................4, 10

5 U.S.C. § 706 .......................................................................................*passim*

8 U.S.C. § 1158(c)(2) ...............................................................................20

8 U.S.C. § 1252(f)(1) ..............................................................................*passim*

8 U.S.C. § 1254a ....................................................................................*passim*

28 U.S.C. § 1341 .......................................................................................10

**Rules**

Fed. R. Civ. P. 23(g) ................................................................................12

Fed. R. Civ P. 23 ...................................................................................*passim*

Rule 23(a) .........................................................................................1, 12, 20, 22

Rule 23(b)(2) ...................................................................................3, 10, 11, 17

Rule 23(b)(3) ..........................................................................................17

**Other Authorities**

Acting EOIR Director Sirce E. Owen, *Pretermission of Legally Insufficient
Application for Asylum* (Apr. 11, 2025) ......................................................18

Black's Law Dictionary (12th ed. 2014) .........................................................8

Exec. Off. for Imm. Rev. Adjudication Stats. (2023), U.S. DEPT. OF JUSTICE, https://www.justice.gov/eoir/page/file/1107366/dl.................................................................19

H.R. Rep. No. 469, 104th Cong., 2d. Sess. Pt. 1 (1996)....................................................9

Marisa Penaloza, *Haiti faces disasters and chaos. Its people are most likely to be denied U.S. asylum*, NPR NEWS (Oct. 16, 2021), NPR NEWS (Oct. 16, 2021), https://www.npr.org/2021/10/16/1043458530/haitians--u-s-asylum--racist ..........................19

## INTRODUCTION

The government's opposition provides no reason for this court to deny Plaintiffs' class certification motion.

The government's lead argument is not really about class certification under Rule 23 at all—it is more akin to a Rule 12 argument. The government argues that all of Plaintiffs' claims are barred by 8 U.S.C. § 1252(f)(1), which limits courts' ability to issue injunctive relief for claims arising from certain provisions of the Immigration and Nationality Act ("INA"). The government makes this argument in every TPS case and has never prevailed. It is not at all clear that the TPS statute is among those provisions of the INA to which § 1252(f)(1) applies in the first place. In any event, § 1252(f)(1) applies only to injunctive relief—and Plaintiffs here do not seek an injunction. Put simply:  § 1252(f)(1) poses no barrier to certifying the class Plaintiffs seek.

The government is also wrong that Rule 23(a)'s requirements are not met here.

*Ascertainability*.  Although the government is wrong to insist on an ascertainability analysis—such an analysis is neither required by case law nor appropriate for a (b)(2) class like the one Plaintiff seeks—the proposed class here is readily ascertainable because one could determine whether they are in the class just by reading the definition.

*Commonality*.  The government's primary argument is that the proposed class lacks commonality because some number of TPS holders may also have, or be eligible for, other non-TPS immigration statuses. But that does not matter—the loss of TPS protections is a harm common to every class member regardless of whether they can obtain some other immigration status. Plus, the government's attempt to assure the Court that these other forms of status constitute meaningful relief is misleading—for example, at a recent meeting in Springfield, Ohio, Haitian TPS holders and their supporters were informed by a staffer to U.S. Senator Jon Husted that even

people with pending asylum claims are likely to be placed in immigration detention as soon as Haiti's TPS designation ends in February 2026.

*Typicality*.  The government says typicality is not satisfied here by identifying supposed factual difference among the named Plaintiffs—but the focus for the typicality requirement is on the nature of the claims, not the Plaintiffs' individual characteristics.

*Adequacy*.  The government argues that the named Plaintiffs are not adequate class representatives because they have not demonstrated sufficient knowledge of the case.  That is not true, as the declarations they have already submitted confirm.  And the named Plaintiffs and unnamed class members will benefit from the same relief—a declaration that the Trump administration's termination of Haiti's TPS designation was unlawful and a vacatur of that decision—so the named Plaintiffs do not have divergent interests.

Finally, the government argues that the Court should not certify the proposed class because it is a "nationwide" class.  But nothing in Rule 23 limits the geographic scope of a class.

For these reasons and those that follow, this Court should reject the government's arguments and certify the proposed class.

## ARGUMENT

### I.    8 U.S.C. § 1252(f)(1) does not apply to preclude Plaintiffs' claims.

The government's threshold argument is more about whether Plaintiffs can bring their claims at all than it is about the propriety of class certification.  The government argues that 8 U.S.C. § 1252(f)(1) operates to altogether preclude Plaintiffs' claims, and that therefore Plaintiffs cannot have a class certified for those claims.  *See* Opp. at 7–15.  The government's argument goes like this:  8 U.S.C. § 1252(f)(1) states, in relevant part, that federal district courts lack the authority to "enjoin or restrain the operation of" certain provisions of the Immigration and Nationality Act, including the TPS statute, 8 U.S.C. § 1254a.  Opp. at 8.  By seeking to hold

unlawful and set aside Secretary Noem's partial vacatur and termination of Haiti's TPS, Plaintiffs

seek an injunction. *Id.* Accordingly, Plaintiffs' claims are precluded by the plain text of §

1252(f)(1) and the Supreme Court's decision in *Garland v. Aleman Gonzales*, 596 U.S. 543, 550

(2022), which further interpreted § 1252(f)(1). And, because, through § 1252(f)(1) "Congress

divested federal district courts from granting" the relief Plaintiffs seek, "Plaintiffs cannot meet the

definition of Rule 23(b)(2)." Opp. at 7.

The government's argument is nothing new—they have made a version of this argument

in every TPS case in the second Trump administration. Every court to consider the issue has

rejected it. *Nat'l TPS All. v. Noem*, 773 F. Supp. 3d 807, 824–29 (N.D. Cal. 2025), *aff'd* 150 F.4th

1000 (9th Cir. 2025); *Haitian Evangelical Clergy Ass'n v. Trump*, 375 F. Supp. 3d 255, 270–72

(E.D.N.Y. 2025) ("*HECA*"); *CASA, Inc v. Noem*, --- F. Supp. 3d ---, 2025 WL 1907378, at *11-13

(D. Md. July 10, 2025). This Court should, too.

### A.    8 U.S.C. § 1252(f)(1) does not apply to the TPS statute.

The government asserts that Plaintiffs' claims are barred because the TPS statute—8 U.S.C.

§ 1254a—is among the immigration provisions to which § 1252(f)(1) applies. Opp. at 8. But it is

far from clear that § 1252(f)(1) applies to this case.

To start, as the Eastern District of New York noted when blocking the first Trump

administration's attempted termination of Haiti's TPS designation, "there is a 'strong presumption

that Congress intends judicial review of administrative action.'" *Saget v. Trump*, 375 F. Supp. 3d

280, 300 (E.D.N.Y. 2019) (quoting *Bowen v. Mich. Acad. of Family Physicians*, 476 U.S. 667, 670

(1986)). Thus, as a general matter, "courts must restrict access to judicial review of administrative

action only upon a showing of clear and convincing evidence of contrary legislative intent." *Saget*,

375 F. Supp. 3d at 330 (cleaned up).

General principles aside, Congress has specifically addressed when a statute can be construed to limit review under the APA.  In particular, it has decreed that a "[s]ubsequent statute may not be held to supersede or modify … chapter 7" of the APA "except to the extent that it does so ***expressly***."  5 U.S.C. § 559 (emphasis added).  Here, 8 U.S.C. § 1252(f)(1)—which was enacted in 1996 (Omnibus Consolidated Appropriations Act, 1997, Pub. L. 104–208 § 306, 110 Stat. 3009 (Sept. 30, 1996)), long after 5 U.S.C. § 559 (Administrative Procedure Act, Pub. L. 89-554, 80 Stat. 378, 388 (Sept. 6, 1966))—does not expressly supersede or modify 5 U.S.C. § 706, which is part of chapter 7 of the APA.  To the contrary, § 1252(f)(1) is silent as to the APA.  Thus, 5 U.S.C. § 559 forbids the Court from construing § 1252(f)(1) as limiting its power to vacate unlawful agency action under 5 U.S.C. § 706.

In any event, by its plain text, § 1252(f)(1) applies only to "the provisions of part IV" of the INA.  And elsewhere the government has "acknowledge[d] that the U.S. Code places the TPS statute within *part V, not part IV*, which is consistent with the statements by a number of courts that part IV only covers §§ 1221–32."  *Nat'l TPS All.*, 773 F. Supp. 3d at 824 (N.D. Cal. 2025) (emphasis added).

The government's argument here is, implicitly, the same one it has made and lost in other TPS cases: that "the U.S. Code contains an error; that the IIRIRA, when it amended the INA in 1996, designated the TPS statute … under Part IV."  *Nat'l TPS All.*, 773 F. Supp. 3d 825; *accord* Defendants' Opp. to Pls. Mot. for Partial Summ. J. and Cross-Mot. to Dismiss at 10–11, *Haitian Evangelical Clergy Ass'n v. Trump*, No. 25-cv-01464-BMC, Dkt. 37 (Apr. 15, 2025) ("Although Section 1254a appears in Part V of the U.S. Code, the U.S. Code is inconsistent with the INA, wherein the TPS provisions … appear in Chapter 4."); *but see Nat'l TPS All.*, 773 F. Supp. 3d at 824 (noting that "the codification of § 1254a into part V may well have been consistent with

IIRIRA and the INA").  But to date, "[n]o court" has held "that § 1252(f)(1) applies to § 1254a, which, as a facial matter, is reasonable given that § 1252 is titled 'Judicial review of orders of removal' and TPS does not directly involve orders of removal."  *Nat'l TPS All.*, 773 F. Supp. 3d at 824.

Notably, the government, perhaps recognizing the weakness of its position, did "not press[] its Section 1252(f)(1) argument" when it asked the Supreme Court to stay the relief granted Venezuelan TPS holders in *NTPSA*.  Appl. for Stay, *Nat'l TPS All. v. Noem*, 125 S. Ct. 2728 (Mem.) (2025), 2025 WL 1277324, at 14 n.10.

Regardless, even if § 1252(f)(1)'s prohibition on injunctive relief does apply to the TPS statute, it does not bar the relief that Plaintiffs seek here.

**B.    Section 1252(f)(1) does not apply because the remedies Plaintiffs seek—APA vacatur and declaratory relief—are not injunctions.**

A provision that should be interpreted "relatively narrowly," § 1252(f)(1) is "'nothing more or less than a limit on *injunctive* relief.'" *Texas v. United States*, 40 F.4th 205, 219 (5th Cir. 2022) (emphasis added, quoting *Reno v. Am.-Arab Anti-Discrimination Comm*., 525 U.S. 471, 481 (1999)).  Thus, even if applicable to the TPS statute in principle, it has no application here because, contrary to the government's suggestion (*see* Opp. at 5, 8) Plaintiffs do not seek an injunction.

Plaintiffs seek two forms of relief: a "set-aside" (*i.e.*, a vacatur) under the APA and a declaratory judgment.  *See* Dkt. 1 at Prayer for Relief.  Neither is injunctive in nature.

***APA vacatur under 5 U.S.C. § 706.***  "Vacatur is not an injunction." *Las Americas Immigrant Advoc. Ctr. v. U.S. Dep't of Homeland Sec.*, 783 F. Supp. 3d 200, 233 (D.D.C. 2025); *accord Florida v. United States*, 660 F. Supp. 3d 1239, 1284–85 (N.D. Fla. 2023) (same); *Al Otro Lado, Inc v. Mayorkas*, 619 F. Supp. 3d 1029, 1045 (S.D. Cal. 2022) (same).  "There are meaningful differences between an injunction, which is a 'drastic and extraordinary remedy,' and

vacatur, which is a 'less drastic remedy.'" *Texas*, 40 F.4th at 219 (quoting *Monsanto Co. v. Geertson Seed Farms*, 561 U.S. 139, 165 (2010)).  That is because vacatur under 5 U.S.C. § 706 "does nothing but re-establish the status quo absent the unlawful agency action" and therefore "neither compels nor restrains further agency decision-making."  *Id.*

Indeed, earlier this year the Supreme Court "explicitly distinguished between injunctions and orders pursuant to 5 U.S.C. § 706."  *HECA*, 789 F. Supp. 3d at 270.  In *Trump v. CASA, Inc.*, the Court held that district courts lack authority to issue so-called "universal injunctions" in certain circumstances but did not "resolve the distinct question of whether the Administrative Procedure Act authorizes federal courts to vacate federal agency action."  606 U.S. 831, 847 n.10 (2025).  Writing separately, Justice Kavanaugh emphasized the point, stressing that notwithstanding the Court's holding about injunctive relief, "in cases under the Administrative Procedure Act, plaintiffs may [still] ask a court to … 'set aside' a new agency rule" under 5 U.S.C. § 706.  *Id.* at 869 (Kavanaugh, J., concurring).

Put simply, because "[o]rders pursuant to 5 U.S.C. § 706(2) set aside unlawful agency actions without foreclosing future agency actions," such "orders are different in nature from injunctions, which prohibit an agency from taking a certain action at all, ever."  *HECA*, 789 F. Supp. 3d at 271.

***Declaratory relief under the Declaratory Judgment Act***.  The government concedes that "the D.C. Circuit has indicated that § 1252(f)(1) does not bar the granting of declaratory relief."  Opp. at 13 (citing *Make the Rd. N.Y. v. Wolf*, 962 F.3d 612, 635 (D.C. Cir. 2020)).  In fact, the D.C. Circuit has done more than "indicate[]" that § 1252(f)(1) is no bar to declaratory relief.  In *Make the Road*, it squarely held that § 1252(f)(1) "prohibits only injunctions" and "does not

proscribe the issuance of a declaratory judgment." 962 F.3d at 635. That binding precedent disposes of the government's argument.

In any event, declaratory judgments are in fact different from injunctions. Although "declaratory relief can sometimes have much the same practical effect as injunctive relief, it differs legally and materially." *Brito v. Garland*, 22 F.4th 240, 251 (1st Cir. 2021). "'[A] declaratory judgment is a milder remedy' than an injunction" because "it 'does not, in itself, coerce any party or enjoin any future action.'" *Id.* (quoting *Ulstein Mar., Ltd. v. United States*, 833 F.2d 1052, 1055 (1st Cir. 1987)). Indeed, in passing the Declaratory Judgment Act, "Congress plainly intended declaratory relief to act as an alternative to the strong medicine of the injunction." *Steffel v. Thompson*, 415 U.S. 452, 266 (1974). And because it "is nothing more or less than a limit on injunctive relief," § 1252(f)(1) does not preclude declaratory judgments. *Reno*, 525 U.S. at 481.

### C.    The government's arguments to the contrary are meritless.

The government argues that the relief Plaintiffs seek is, in substance, injunctive and that § 1252(f)(1) therefore bars their claims. The government's arguments are meritless.

***First***, the government argues that the Supreme Court's decision in *Aleman Gonzales* and the D.C. Circuit's decision in *N.S. v. Dixon*, 141 F.4th 279 (D.C. Cir. 2025) "confirm that this Court lacks authority under § 1252(f)(1) to enjoin the Secretary's ultimate determination for Haiti's TPS designation." Opp. at 9. The government's argument misses the mark.

As a threshold matter, the government's argument rests on a false premise. As explained above, Plaintiffs seek a vacatur and a declaratory judgment, not an injunction. That distinguishes this case from both *Aleman Gonzales* and *N.S.*.

Start with *Aleman Gonzales*. Unlike here, the plaintiffs in *Aleman Gonzales* sought a traditional injunction—they did not seek a set-aside under 5 U.S.C. § 706. Because the plaintiffs did not seek relief under the APA, *Aleman Gonzales* did not hold, or even "purport to hold that

§ 1252(f)(1) affects courts' ability to 'hold unlawful and set aside agency actions, findings, and conclusions' under the Administrative Procedure Act." 596 U.S. at 571 (Sotomayor, J., concurring in part and dissenting in part) (citation omitted).  Subsequently, Justices Barrett, Thomas, Alito, and Gorsuch likewise recognized that the Court has "avoid[ed]" taking "a position on whether § 1252(f)(1) prevents a lower court from vacating or setting aside an agency action under the Administrative Procedure Act." *Biden v. Texas*, 597 U.S. 785, 839 (2022) (Barrett, J., dissenting).

*N.S.* is also distinguishable.  The question in *N.S.* was whether § 1252(f)(1) as interpreted in *Aleman Gonzalez* only prevents courts from enjoining statutory provisions or also prevents courts from enjoining agency actions to implement those provisions.  *See N.S.*, 141 F.4th at 298–300.  As another judge of this Court recently explained, *N.S.* "had nothing to do with vacatur or stay under the APA, but rather with a class-wide permanent injunction." *Coal. for Humane Immigrant Rts. v. Noem*, --- F. Supp. 3d. ---, 2025 WL 2192986, at *14 (D.D.C. 2025).

**Second**, defining "restrain" as "to 'limit' or 'put compulsion upon,'" the government argues that under *Aleman Gonzalez* an order vacating Secretary Noem's termination of Haiti's TPS designation "would impermissibly 'restrain' the Secretary from exercising her authority under the TPS statute," even if such an order would "not necessarily 'enjoin' the Government." Opp. at 11 (quoting Black's Law Dictionary (12th ed. 2014)).  The government is, again, incorrect.  As the Fifth Circuit held in *Texas*—which was decided *after Aleman Gonzalez*—"vacatur neither compels *nor restrains* further agency decision-making."  40 F.4th at 220 (emphasis added).

**Third**, the government argues that "the statutory text certainly supports" a reading under which § 1252(f)(1) precludes vacatur under the APA.  Opp. at 11.  In support, the government points to § 1252(f)(1)'s prefatory clause: "Regardless of the nature of the action or claim." *Id*.  Construing § 1252(f)(1) to permit APA vacatur, the government says, "would render the

provision's prefatory clause a 'paper tiger' or 'toothless,' allowing parties to circumvent clear jurisdictional bars by creative pleading." *Id.* This argument ignores that the Supreme Court has already spoken clearly: "By its plain terms, and even by its title, [§ 1252(f)(1)] is nothing more or less than a limit on injunctive relief." *Reno*, 525 U.S. at 481. In light of the Supreme Court's "narrow construction" of § 1252(f)(1), "it is clear that orders pursuant to 5 U.S.C. § 706(2) are not prohibited by 8 U.S.C. § 1252(f)(1)." *HECA*, 789 F. Supp. 3d at 271.

**Fourth**, although it admits that the D.C. Circuit, in *Make the Road*, concluded that "§ 1252(f)(1) does not bar the granting of declaratory relief," the government attempts circumvent that binding precedent. Opp. at 13. Specifically, the government argues that "[u]nder *Make the Road*, this Court could issue a declaratory judgment, but the Government remains free to apply the challenged action"—here, terminating Haiti's TPS designation—"pending further proceedings, including appellate review." *Id.* (cleaned up). According to the government, this approach would "follow Congress's plan for § 1252(f)(1)." *Id.* The government's support for this position is a single line from the legislative history of § 1252(f)(1), in a House Report, stating that, in challenges to immigration procedures, "'the procedures will remain in force while lawsuits are pending.'" *Id.* (quoting H.R. Rep. No. 469, 104th Cong., 2d. Sess. Pt. 1 at 161 (1996)).

The government recently made and lost this very argument in *Coalition for Humane Immigrant Rights*, which involved a challenge to the Trump administration's expansion of eligibility for expedited removal. As here, the plaintiffs there brought an APA claim seeking a set-aside under 5 U.S.C. § 706(2). 2025 WL 2192986, at *12. And there, as here, the government argued that the House Report on which it relies means that a challenged policy should be allowed to take effect so long as the litigation, including appellate review, remains pending. *See* 2025 WL 2192986, at *14. When "pressed … at oral argument" about how its position squared with *Make*

*the Road*'s holding that § 1252(f)(1) does not bar declaratory relief, the government stated that the court could "'adjudicate the merits'" of a dispute, "just not 'issue any relief' including declaratory relief." *Id*. (quoting oral argument transcript). The court rejected this argument as "bizarre," and "declin[ed] to give the statute such an absurd meaning based on a single sentence in the legislative history." *Id*. (citing *United States v. Cook*, 594 F.3d 883, 891 (D.C. Cir. 2010) (articulating the canon against producing absurd results)).[1]

*    *    *

For these reasons, this Court should reject the government's arguments that § 1252(f)(1) precludes Plaintiffs' claims.

### D.    This Court can certify a class.

Eliding the fact that Plaintiffs seek both declaratory relief and vacatur under 5 U.S.C. § 706, the government argues that "even if standalone declaratory relief is not barred by § 1252(f)(1) in this instance, the putative class cannot be sustained based solely upon the request for declaratory relief." Opp. 14 (quoting Fed. R. Civ. P. 23(b)(2)). There is ambiguity in the government's argument, but the argument fails no matter how the ambiguity is resolved.

---

[1]    The government's reliance (Opp. at 11, 14) on *California v. Grace Brethren Church*, 457 U.S. 393 (1982), is also to no avail. First, because the claims asserted in *Grace Brethren* were not brought under the APA, they, unlike the claims asserted here, were not governed by the express-statement rule established by 5 U.S.C. § 559. Second, the provision at issue in *Grace Brethren*, 28 U.S.C. § 1341—a forum-selection provision pursuant to which "[t]he district courts shall not enjoin, suspend or restrain the assessment, levy or collection of any tax under State law where a plain, speedy and efficient remedy may be had in the courts of such State"—is based on principles of comity and guarantees an adequate forum for constitutional and statutory claims to be heard. Here, by contrast, comity not an issue and there is no other forum for Plaintiffs' claims. Third, contrary to what the government suggests, 28 U.S.C. § 1341 does not categorically prevent federal district courts from entertaining all challenges to state laws; in *Hibbs v. Winn*, 542 U.S. 88 (2004), which post-dates *Grace Brethren*, the Supreme Court held that § 1341 does not bar third-party suits challenging unconstitutional state-law tax credits.

The government might be understood to be arguing that a Rule 23(b)(2) class can never be certified absent a request for injunctive relief. In this vein, the government cites *Jennings v. Rodriguez*, 583 U.S. 281 (2018), for the proposition that "if § 1252(f)(1) prohibits classwide injunctive relief, then it may equally prohibit corresponding declaratory relief." Opp. at 15. But *Jennings* did not hold that class certification under Rule 23(b)(2) cannot rest on a request for declaratory relief alone; it remanded the case for the court of appeals to "decide whether that remedy can sustain the class on its own." 581 U.S. at 313. Although the government fails to acknowledge the case's subsequent history, on remand, the Ninth Circuit squarely held that § 1252(f)(1) "does not on its face bar class actions, and even if [*Reno*] forecloses the argument that § 1252(f)(1) allows classwide injunctive relief, it does not affect classwide declaratory relief." *Rodriguez v. Marin*, 909 F.3d 252, 256 (9th Cir. 2018). Simply put and contrary to the government's apparent contention, the mere fact that Plaintiffs do not seek injunctive relief does not preclude certification of the proposed class under Rule 23(b)(2).

Alternatively, the government might be arguing that class certification is impermissible because the only relief available is relief limited to the named Plaintiffs. But that is, once again, an argument that the government has made and lost in other cases, including in this district. For example, in *O.A. v. Trump*—a case on which Plaintiffs relied extensively in their class certification motion but which the government does not address in its opposition—the court held that § 1252(f)(1) does "not foreclose class treatment because it 'only bars injunctive relief,' not declaratory relief." 404 F. Supp. 3d 109, 159 (D.D.C. 2019) (quoting *Hamama v. Adducci*, 912 F.3d 869, 878 (6th Cir. 2018)). This district is not alone in so concluding. Circuit courts have similarly held that § 1252(f)(1) does not bar class-wide declaratory relief. *See, e.g., Brito*, 22 F.4th at 250–52 (1st Cir. 2021); *Alli v. Decker*, 650 F.3d 1007, 1010–13 (3d Cir. 2011).

11

That these cases came before *Aleman Gonzlaes* is immaterial. *Aleman Gonzales* did not reach the question of whether § 1252(f)(1) prohibits class-wide declaratory relief.  *See Aleman Gonzales*, 596 U.S. at 572 (Sotomayor, J., concurring in part and dissenting in part); *Texas*, 597 U.S. at 839 (Barrett, J. dissenting).   And as Justice Sotomayor noted in her dissent, the government's position that § 1252(f)(1) precludes classwide declaratory relief "is difficult to square … with the statute Congress enacted" because § 1252(f)(1) "limits lower courts' authority to 'enjoin or restrain' whereas a declaratory judgment (unlike an injunction) 'is not ultimately coercive.'"  596 U.S. at 572 n.9 (quoting *Steffel*, 415 U.S. at 471).[2]

Accordingly, this Court can—and should—grant Plaintiffs' motion.

## II.    Rule 23(a) is satisfied here.

The government argues that Plaintiffs cannot satisfy some of the requirements of Rule 23(a).[3]  The government is wrong.

### A.    Ascertainability.

The government asserts that this Court should consider the "threshold question of ascertainability before conducting a Rule 23(a) analysis." Opp. at 17.  But as the government itself acknowledges, ascertainability is not a requirement in this district.  *Id*.  That should end this Court's analysis.  In any event, because this case will not require individualized notice, opt-out rights, or individual damage assessments, and the government will be required to comply with the relief

---

[2]    Justice Sotomayor also observed that if § 1252(f)(1), which authorizes the Supreme Court  to issue injunctive relief, "affects both injunctive and declaratory relief, it is hard to see how any class action could proceed, as no relief would be available in the lower courts," which, "in turn, would prevent any such case from reaching [the Supreme Court], rendering Congress' reservation of th[e] Court's authority a nullity."  596 U.S. at 572 n.9 (noting that § 1252(f)(1) strips authority from "all courts '*other than the Supreme Court*'" (emphasis added)).

[3]    The government does not dispute that the putative class satisfies Rule 23(a)'s numerosity requirement.  Nor does the government dispute Plaintiffs' counsels' qualifications to serve as class counsel should the Court certify the class.  *See* Fed. R. Civ. P. 23(g).

ordered no matter who is in the class, "the rationale for precise ascertainability is inapposite in the 23(b)(2) context." *DL v. District of Columbia*, 302 F.R.D. 1, 17 (D.D.C. 2013) (citing *Floyd v. City of New York*, 283 F.R.D. 153, 172 (S.D.N.Y. 2012) ("It would be illogical to require precise ascertainability in a suit that seeks no class damages.")); *see also* Newberg on Class Actions § 3:7.

But even if ascertainability were a requirement, that requirement would be readily satisfied here. "All that is required for a class to be ascertainable is that an individual would be able to determine, simply by reading the class definition, whether he or she is a member of the proposed class." *Hinton v. D.C.*, 567 F. Supp. 3d 30, 51 (D.D.C. 2021). "Ascertainability is not designed to be a particularly stringent test, and simply requires that that a class definition render potential class members identifiable according to objective criteria." *Id.* (cleaned up). The proposed class definition here satisfies that standard because it establishes objective criteria for determining membership, namely, whether (a) someone has applied for, or been granted TPS; and (b) whether they named TPS as the country under which they applied for TPS. *See* Dkt. 1, ¶ 184 (proposed class definition).

## B. Commonality.

The commonality requirement is "a low bar, and courts have generally given it a permissive application." *Barbara v. Trump*, 790 F. Supp. 3d 80, 92 (D.N.H. 2025) (citation omitted). The focus is on whether the defendant's conduct was common as to all of the class members. *Rodriguez v. Nat'l City Bank*, 726 F.3d 372, 382 (3d Cir. 2013). "[C]ourts uniformly recognize that not *all* questions of law and fact need be common to the class." Newberg on Class Actions § 3:20 at 406 (citing *Parsons v. Ryan*, 754 F.3d 657, 674 (9th Cir. 2014)) (emphasis in the original). Possible "factual variations among the class members" do not "defeat the commonality requirement." *Stephens v. Farmers Rest. Grp.*, 329 F.R.D. 476, 483 (D.D.C. 2019). And "the fact that class

members . . . may suffer varying degrees of injury [] will not bar a finding of commonality." Newberg on Class Actions § 3:20 at 407.

Rather, to satisfy the commonality requirement, Plaintiffs need only identify a "*single …* common question" that is susceptible to generalized, classwide proof and that will generate a common answer apt to drive the resolution of the litigation. *L.G.M.L. v. Noem*, --- F. Supp. 3d ----, 2025 WL 2671690, at * 8 (D.D.C. Sept. 18, 2025) (citations omitted). Here, there are numerous common questions, including:

- Is the Trump Administration's decision to "partially vacate," and then terminate, Haiti's TPS designation the result of the statutorily prescribed process of assessing country conditions to determine whether Haitian TPS holders can return to Haiti "in safety"?   8 U.S.C. § 1254a(b)(1)(C).

- If so, does that decision violate the APA?

- Were those decisions the result of President Trump's discriminatory racial animus against nonwhite immigrants?  See Dkt. 1, ¶¶ 190-210.

- If so, does that violate the Constitution?

These shared legal and factual questions are central to this case and apply to most if not all members of the proposed class. Classwide litigation will generate singular answers to these questions, and, if the Court decides in their favor on the merits, the class will receive the same relief for the same injury. This serves the efficiency and fairness goals of Federal Rule of Civil Procedure 23. *See* Newberg on Class Actions § 3:18 at 384 ("The single adjudication of common questions is more efficient for the legal system and for the repeat parties than are multiple litigations while a single adjudication also avoids the unfairness that could result from inconsistent outcomes.").

As such, the questions posed in this case are the type of questions that courts regularly find satisfy the commonality requirement. *See Nio v. United States Dep't of Homeland Sec.*, 323 F.R.D. 28, 32 (D.D.C. 2017) ("The Court acknowledges the factual variations among class members, but finds that they do not impact the overarching questions common to the class: (1) Do defendants have the legal authority to implement these policies and practices? (2) Did defendants implement their new policies and practices in accordance with the strictures of the APA? and (3) Do these policies and practices otherwise violate the Constitution, the APA, or other applicable law? As the Supreme Court has explained, even a single common question can satisfy the commonality requirement." (citing *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011)); *Barbara* 790 F. Supp. 3d at 93 ("Petitioners raise several common questions of law, including whether the Executive Order violates the Constitution and § 1401 and whether the respondents have violated the Administrative Procedure Act.").

The government's primary argument regarding commonality is that the proposed class definition is too broad because (a) not everyone who has TPS protections has *only* TPS protections—that is, some people may also have asylum claims, visas, *etc.*; and (b) some people with TPS may have final orders of removal while others may not. Opp. at 16–20. Accordingly, the government argues, not all plaintiffs have a common injury. *Id.* The government is incorrect.

***First***, the fact that some undefined number of putative class members may have a separate immigration status does not change the fact that *every* class member will lose his or her right to legally work and not be deported guaranteed *by TPS*. *See* Dkt. 1, ¶ 19. The loss of TPS protections is a harm common to every class member—and that is true regardless of whether an individual class member is eligible for some form of immigration relief besides TPS or whether they have a final order of removal.

*L.G.M.L.* is instructive here.  That case involved a challenge to the government's attempt to "send unaccompanied alien children from Guatemala in government custody back to that country.  2025 WL 2671690, at *3.  The plaintiffs alleged, among other things, that these attempted removals violated the processes required by the Trafficking Victims Protection Reauthorization Act of 2008 ("TVPRA"), the INA, and the Fifth Amendment.  *Id*. at *4.  There, as here, the government pointed to "purported factual differences" among the putative class members, the most prominent of which was the claim that some of the children might "prefer to go back immediately" to be reunified with their family members in Guatemala.  *Id*. at *8.  The court, however, correctly noted that this argument improperly "focus[es] on *outcomes*—immediate reunification—that are irrelevant to the common questions that Plaintiffs raise about the *processes* they say the TVPRA and the Constitution require."  *Id*.  So too here.  The government's focus on the fact that some number of class members may ultimately be protected from removal due to some other status is irrelevant to common questions about whether, among other things, the Trump Administration processes required by the TPS statute.

*L.G.M.L.* is also instructive in another way.  The government here attempts to muddy the waters, going out of its way to identify a large menu of supposed alternative immigration statuses that, it says, can or do provide the putative class members with the same protections as TPS.  For example, the government points the court to a website "listing thirteen pages worth of statuses that may be eligible for work authorization."  Opp. at 25.  The government mentions—incorrectly, more on that below—that TPS holders who also have pending asylum claims do not face a "real threat of removal" "so long as th[eir] applications remain pending."  Opp. at 28.  The government invokes asylum grants, U visas, T visas, and Special Immigrant Juvenile Status, and Violence Against Women Act of 1994 self-petitions.  Opp. at 18.  Some putative class members may have

these options, and others may not, according to the government—and that fact means that not all class members were injured in the same way.  Opp. at 18–19.  Put another way, the government's argument is that because so many class members can supposedly take advantage of such a wide array of immigration statuses, individualized factual issues predominate over class issues, defeating the commonality requirement.  But as *L.G.M.L.* correctly pointed out, "Rule 23(b)(2) does not require that 'common legal and factual questions predominate;'"—that is a requirement only of Rule 23(b)(3).  2025 WL 2671690, at *8 (quoting *Richards v. Delta Air Lines, Inc*., 453 F.3d 525, 530 (D.C. Cir. 2006)).  The Court should not import a predominance requirement where none is needed.

**Second**, both in its commonality argument and more broadly throughout its opposition, the government attempts to assure the Court that the named Plaintiffs (and TPS holders more broadly) need only pick from among the menu of alternative immigration statuses to receive equally—if not more—robust protections than are afforded by TPS.  That is misleading.

There is good reason to believe that the moment after TPS ends on February 3, 2026 the Trump administration will begin detaining and then removing Haitian TPS holders, even if they have pending asylum claims.  On October 20, 2025, Pastor Carl Ruby—the Senior Pastor of Springfield Christian Church in Springfield, Ohio who has worked closely with the Haitian community there—met with representatives of Ohio Governor Mike DeWine and U.S. Senator Jon Husted.  Ex. A, Ruby Decl. ¶¶ 3–4.[4]  Among those in attendance were Andrew Wilson

---

[4]    Plaintiffs acknowledge that they are introducing this evidence for the first time on reply.  That is because Pastor Ruby's declaration rebuts factual assertions about the supposed robustness of the alternative immigration statuses identified by the government—an issue itself raised for the first time in the government's opposition.  Plaintiffs concede that their introduction of this evidence likely constitutes good cause for a sur-reply, should the government request one.  *See* Reyes, J., Standing Order, Part 7.c ("A party may not file a sur-reply without first obtaining leave of the

(Director of the Ohio Department of Public Safety under Gov. DeWine), and Sean Dunn (Senior Advisor and Counselor to Sen. Husted). *Id*. Also in attendance was Viles Dorsanvil, head of the Haitian Community Help and Support Center in Springfield, and Casey Rollins, director of St. Vincent de Paul, a Catholic food pantry and clothing charity. *Id*. ¶ 4. The purpose of the meeting was to "discuss issues relating to the Haitian immigrant community" in Springfield. *Id*. ¶ 3. When Pastor Ruby and Ms. Rollins asked "for clarification on what would happen when TPS end[s]," Mr. Dunn and Mr. Wilson "made very clear that they understood there would be detainments and deportation proceeding in Springfield after February 3 and that we should encourage Haitians to prepare for this." *Id*. ¶¶ 7, 8. In response to Pastor Ruby's and Ms. Rollins' question "regarding who would be subject to such raids," Mr. Dunn and Mr. Wilson responded "anyone who did not have asylum or citizenship would be subject to such raids. They said that even Haitians who had asylum applications would be detained," emphasizing that in light of its budget, "ICE officials would have ample ability to subject Haitians in Springfield to intense pressure." *Id*.

What Pastor Ruby learned at the October 20 meeting is consistent with the law. The government's assertion that people with pending asylum applications do not face a "real threat of removal" while their "applications remain pending," (Opp. at 28), ignores the reality that a recent DOJ memorandum and precedential decisions from the Board of Immigration Appeals ("BIA") have streamlined the ability of Immigration Judges to dismiss asylum applications without merits hearing and thereby quickly ensure that asylum applications are *not*, in fact, pending. *See, e.g.*, *Matter of H-A-A-V-*, 29 I&N Dec. 233 (BIA 2025); PM 25-28, Acting EOIR Director Sirce E. Owen, *Pretermission of Legally Insufficient Application for Asylum* (Apr. 11, 2025). The

---

Court…."). Plaintiffs respectfully request, however, that any sur-reply be confined to addressing the assertions in Pastor Ruby's declaration and no other topic.

government has additionally entered into agreements with countries—including countries with poor human rights records—to permit the U.S. to remove individuals with pending asylum applications to third countries to pursue asylum in *those* countries rather than in the United States. *See, e.g.*, *Matter of C-I-G-M- & L-V-S-G-*, 29 I&N Dec. 291 (BIA 2025).    Finally, recent BIA precedent has vastly expanded the scope of noncitizens subject to mandatory immigration detention without the opportunity for bond—a definition that includes individuals with pending asylum applications, and that will sweep up many Haitian TPS holders the moment TPS ends.  *See, e.g.*, *Matter of Yajure Hurtado*, 29 I&N Dec. 216 (BIA 2025); *Matter of Q. Li*, 29 I&N Dec. 66 (BIA 2025).

And even if every Haitian TPS holder applied for asylum, very few of them would actually have their applications granted, contrary to the government's suggestions.  "Haiti is the country with the highest rate of asylum denial in the United States, according to data from the Justice Department."  Marisa Penaloza, *Haiti faces disasters and chaos. Its people are most likely to be denied U.S. asylum*, NPR NEWS (Oct. 16, 2021), https://www.npr.org/2021/10/16/1043458530/haitians--u-s-asylum--racist.  Indeed, from October 2018 through June 2021, "of 4,202 [asylum] applications, only 194"—or roughly 4.6%—were granted." *Id*.; *accord* Exec. Off. for Imm. Rev. Adjudication Stats. (2023), U.S. DEPT. OF JUSTICE, https://www.justice.gov/eoir/page/file/1107366/dl (noting a 4% grant rate for Haitians).

Even TPS holders who have been granted asylum—as opposed to merely having applied— are not necessarily protected, as the government claims.  Granted asylum "does not convey a right to remain permanently in the United States, and may be terminated" if certain conditions are met, like, for example, if the government strikes a "bilateral or multilateral agreement" with a "country … in which the alien's life or freedom would not be threatened on account of race, religion,

nationality, membership in a particular social group … and where the alien is eligible to receive asylum or equivalent temporary protection." 8 U.S.C. § 1158(c)(2).[5] By contrast, TPS provides—subject to narrow exceptions such as committing more than one misdemeanor, *see* 8 U.S.C. § 1254a(c)(2)—that so long as a country's TPS designation remains in effect, the government "shall not remove the alien from the United States." *Id.* at § 1254a(a)(1)(A).

At bottom, the government's implicit assurances that Haitian TPS holders will be protected by other statuses is speculative. And, ultimately, it is besides the point. As explained above, to satisfy Rule 23(a)'s commonality requirement, Plaintiffs need only raise a single question common to the class—and they have done more than that.

*Third*, and contrary to the government's argument, it matters not that some TPS holders may have final orders of removal and others do not. *See* Opp. at 18–19. For one thing, TPS's protections *are* what both subcategories of TPS holders the government identifies—those with final orders of removal and those without—have in common. That is because a final order of removal "remains inexecutable so long as the alien remains a TPS beneficiary." *Duarte v. Mayorkas*, 27 F. 4th 1044, 1053–54 (5th Cir. 2022).

*Fourth*, the government says there is no commonality here because the proposed class "encompasses" people "who have departed the United States." Opp. at 21. But the TPS statute requires that one be "continuously physically present in the United States" in order to obtain and maintain TPS protections. 8 U.S.C. § 1254a(c)(1)(A)(i).

---

[5] As Pastor Ruby's declaration confirms, there is good reason to believe that, as we speak, the government is attempting to obtain such an agreement with one or more third countries. Ex. A, Ruby Decl., ¶ 11 ("I spoke with Mr. Dunn again today. He stated that his office would continue to seek third-country agreements other than Haiti. He again acknowledged that Haiti is not a safe option."). If this occurs, even those with *granted* asylum claims could be removed.

***Fifth***, and finally, the government argues that Plaintiffs' invocation of a Fifth Amendment equal protection claim does not establish commonality because "disparate treatment based on nationality is permitted when it comes to the field of immigration." Opp. at 20. But that misreads Plaintiffs' constitutional claim. Plaintiffs do not merely allege discrimination based on *nationality*; they also allege discrimination based on *race*. Plaintiffs dedicated nearly forty paragraphs of their complaint to explaining these allegations. Dkt. 1, ¶¶ 65-104. And, as Plaintiffs explained in their motion for class certification, "this case sounds in racial discrimination, and '[b]y its very nature, racial discrimination is based upon characteristics that define a class.'" Dkt. 67 at 8 (quoting *Franklin v. Barry*, 909 F. Supp. 21, 30 (D.D.C. 1995)).

## C.    Typicality.

Typicality requires a "'nexus between the class representative's claims … and the common questions of fact or law which unite the class.'" *Davis v. United States Parole Comm'n*, 2025 WL 457779, at *6 (D.D.C. Feb. 11, 2025) (quoting *Kornberg v. Carnival Cruise Lines, Inc*., 741 F.2d 1332, 1337 (11th Cir. 1984)). Typicality exists if the claims "stems from a single event or a unitary course of conduct, or if they are based on the same legal or remedial theory." *J.D. v. Azar*, 925 F.3d 1291, 1320 (D.C. Cir. 2019).

Plaintiffs satisfy these standards. Each named Plaintiff alleges that the Trump administration's decision to "partially vacate," and then terminate, Haiti's TPS designation ran afoul of the statutorily prescribed TPS process. 8 U.S.C. § 1254a(b)(1)(C). Each named Plaintiff alleges that the administration's decision violated their rights under the Fifth Amendment. Regardless of the theory of relief, each named Plaintiff's claims are directed at the same course of conduct by the administration.

The government's arguments concerning typicality focus on the supposed "variety of harms that the named Plaintiffs allege." Opp. at 24. For example, the government argues that

Plaintiff Miot's claims are not typical because he "may still be able to seek relief or protection from removal and may potentially have other means by which to obtain lawful status." *Id*. The government says that Plaintiff Noble "confirms a different harm" from the unnamed class members "for she has no connection to Haiti at all." *Id*. The government says that Plaintiff Civil's harms—an inability to support his family members—"cannot be said for all class members." *Id*. at 24–25.

But these arguments contain a fundamental error: they focus on the named Plaintiffs' "individual characteristics" and not on the "nature of the claims" they bring. *Radosti v. Envision EMI, LLC*, 717 F.Supp.2d 37, 52 (D.D.C. 2010) (citation omitted). That gets it exactly backwards: Rule 23's typicality analysis focuses on "the nature of the claims of the representative, not the individual characteristics of the plaintiff." *Id*. (cleaned up). "At best, the Government has identified an inconsequential factual variation about [the named Plaintiffs'] characteristics, not the nature of [their] claim." *Davis*, 2025 WL 457779, at *6 (focusing on the named plaintiff's "downstream harms" rather than the nature of the claims alleged was enough to reject the government's typicality argument); *see also Barbara*, 790 F. Supp. 3d at 94–95.

### D.     Adequacy.

There are two components to Rule 23(a)'s adequacy requirement. First, the named Plaintiffs must "not have antagonistic or conflicting interests with the unnamed members of the class." *Azar*, 925 F.3d at 1312. Second, the named Plaintiffs must "appear able to vigorously prosecute the interest of the class through qualified counsel." *Id*. (citation and internal quotation marks omitted). Adequacy is "not a stringent requirement," *Hoyte v. District of Columbia*, 325 F.R.D. 485, 491 (D.D.C. 2017), and a named Plaintiff "need only possess a minimal degree of knowledge necessary to meet the adequacy standard." *New Directions Treatment Servs. v. City of Reading*, 490 F.3d 293, 313 (3d Cir. 2007) (cleaned up).

Both components are satisfied here.  The named Plaintiffs and unnamed class members will benefit from the same relief—a declaration that the Trump administration's termination of Haiti's TPS designation was unlawful and a vacatur of that decision—so the named Plaintiffs do not have divergent interests; Plaintiffs' interests are aligned with the interests of the members of the putative class. Also, there is no risk of a financial conflict, as Plaintiffs seek no monetary damages.

The government argues that the named Plaintiffs are not adequate representatives because they "have provided no evidence that they fully comprehend their representational responsibilities and will vigorously prosecute the interests of the class."  Opp. at 27.  As the government will come to appreciate when the Parties engage in discovery, Plaintiffs fully comprehend their representational responsibilities and are committed to vigorously prosecuting the interests of the class.  Even resting on the pleadings and proceedings to date, though, there is ample basis for the Court to find that the Plaintiffs are adequate representatives.  First, it is clear that class counsel is vigorously prosecuting these claims, and the focus for Rule 23's adequacy is on whether the named Plaintiffs will "vigorously prosecute the interest of the class *through qualified counsel*."  *Azar*, 925 F.3d at 1312 (citation and internal quotation marks omitted, emphasis added).  The government does not challenge counsels' qualifications.  Moreover, Plaintiffs' detailed declarations demonstrate that have already devoted a substantial amount of time to this case.  Plaintiffs' declarations also make clear that each is acutely aware of the consequences of TPS's now-impending end and this lawsuit.  *See generally* Dkt. 26-2, 26-3, 26-4, 26-5, 26-6. Plaintiffs' willingness to assume the risks associated with publicly leading a class action of this magnitude also demonstrates their commitment to pursuing the interests of the class.

Finally, in a re-tread of its commonality argument, the government argues that because three of the named Plaintiffs have applied for protections from removal other than TPS, they "plainly have conflicting interests with the unnamed members of their class." Opp. at 27. Again, not so. *See supra*, p. __,

### III.    A nationwide class is appropriate.

The government, at last, argues that Plaintiffs seek a nationwide class and that such a class is improper. Opp. at 28–30. But at "no point …do [Plaintiffs] request a 'nationwide class.'" *Barbara*, 790 F. Supp. 3d at 99. Rather, Plaintiffs merely "request class certification for a harm that most likely affects class members residing in other states." *Id*. And "[n]othing in Rule 23 … limits the geographic scope of a class action that is brought in conformity with that Rule." *Califano v. Yamasaki*, 442 U.S. 682, 701 (1979).

The government argues that class certification here would amount to an "end-run around the now-forbidden universal injunction," which the Supreme Court addressed in *CASA*. Opp. at 28. But nothing in *CASA* stops a Plaintiff from "ask[ing] a court to award preliminary classwide relief that may, for example, be statewide, regionwide, or even nationwide." *CASA*, 606 U.S. at 869 (Kavanaugh, J., concurring).

### CONCLUSION

The Court should (1) certify the proposed class; (2) appoint Plaintiffs as Class Representatives; and (3) appoint undersigned counsel as Class Counsel.


Dated: November 12, 2025                                    Respectfully submitted,
                                                           /s/ *Geoffrey M. Pipoly*
                                                           Geoffrey M. Pipoly

Ira J. Kurzban
Kevin Gregg
KURZBAN, KURZBAN, TETZELI & PRATT, P.A.
131 Madeira Ave.
Coral Gables, FL 33134
Phone: (305) 444-0060
ira@kktplaw.com
kgregg@kktplaw.com

Sejal Zota
JUST FUTURES LAW
1629 K Street N.W., Suite 300
Washington, DC 20006
Phone: (617) 812-2822
sejal@justfutureslaw.org

Raymond Audain
GISKAN SOLOTAROFF & ANDERSON LLP
1 Rockefeller Plaza, 8th Floor
New York, NY 10020
Phone: (646) 290-6249
raudain@gslawny.com

Daniel Paul Mach
BRYAN CAVE LEIGHTON PAISNER, LLP
1290 Avenue of the Americas
New York, NY 10104
Phone: (212) 541-1146
daniel.mach@bclplaw.com

Geoffrey M. Pipoly
Alexa Thein
Madisen Hursey
BRYAN CAVE LEIGHTON PAISNER, LLP
161 N. Clark Street, Ste. 4300
Chicago, IL 60601
Phone: (312) 602-5000
geoff.pipoly@bclplaw.com
alexa.thein@bclplaw.com
madisen.hursey@bclplaw.com

Andrew Tauber (D.C. Bar No. 495980)
BRYAN CAVE LEIGHTON PAISNER, LLP
1155 F. Street NW, Ste. 700
Washington, D.C. 20004
Phone: (202)-508-6200
andrew.tauber@bclplaw.com

Matthew Stanford
BRYAN CAVE LEIGHTON PAISNER, LLP
2 N. Central Ave., Ste. 2100
Phoenix, AZ 85004
Phone: (602) 364-7000
matt.stanford@bclplaw.com


*Attorneys for Plaintiffs*

**CERTIFICATE OF SERVICE**

I hereby certify that on this 12th day of November, 2025, a copy of the foregoing was filed

through the CM/ECF system which sent notice of the filing to all appearing parties of record.

*/s/ Geoffrey M. Pipoly*
Geoffrey M. Pipoly
*Counsel for Plaintiffs*