UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

FRITZ EMMANUEL LESLY MIOT, et al.,

        Plaintiff,

    v.

DONALD J. TRUMP, President of the United
States, *et al.*,

        Defendants.

Civil Action No. 25-2471 (ACR)

**<u>DEFENDANTS' SUPPLEMENTAL BRIEF</u>**

## TABLE OF CONTENTS

Argument ..................................................................................................................... 1

     I.     The Email in the Administrative Record Satisfies the Consultation Requirement. 1

     II.    Plaintiffs' Policy-and-Practice Claim Fails for Several Reasons. ......................... 4

          A.    The Jurisdiction-Stripping Provisions Foreclose Policy-and-Practice Claims. ..................................................................................................... 4

          B.    Plaintiffs' Policy-and-Practice Claim Fails on the Merits. ....................... 7

     III.   The Court's Questions Related to the TPS Statute Itself. ..................................... 10

Conclusion .................................................................................................................. 10

## <u>TABLE OF AUTHORITIES</u>

**Cases**

*Amgen v. Smith*,
    357 F.3d 103 (D.C. Cir. 2004) ........................................................................ 4

*Ass'n of Nat'l Advertisers, Inc. v. Fed. Trade Comm'n*,
    627 F.2d 1151 (D.C. Cir. 1979) ..................................................................... 10

*Axon Enterprise Inc. v. FTC*,
    598 U.S. 175 (2023) ....................................................................................... 7

*City of Rialto v. West Coast Loading Corp.*,
    581 F.3d 865 (9th Cir. 2009) .......................................................................... 5

*Fed. Law Enf't Officers Ass'n v. Ahuja*,
    62 F.4th 551 (D.C. Cir. 2023) ........................................................................ 5

*In re United States DOGE Serv.*,
    No. 25-5130, 2025 U.S. App. LEXIS 17400 (D.C. Cir. July 14, 2025) ................. 3

*Khan v. Meissner*,
    921 F. Supp. 2 (D.D.C. 1995) ...................................................................... 2, 6

*Matter of M-P-*,
    20 I. & N. Dec. 786 (BIA 1994) ..................................................................... 7

*Matter of S-H-*,
    23 I. & N. Dec. 462 (BIA 2002) ..................................................................... 7

*McNary v. Haitian Refugee Ctr., Inc.*,
    498 U.S. 479 (1991) .............................................................................. 4, 5, 6, 7-8

*O'Harra v. Littlejohn*,
    69 F. Supp. 274 (D.D.C. 1946) ...................................................................... 3

*Palestine Info. Off. v. Shultz*,
    853 F.2d 932 (D.C. Cir. 1988) ....................................................................... 3

*Ramos v. Wolf*,
    975 F.3d 872 (9th Cir. 2020) ...................................................................... 9, 10

*Reno v. AADC*,
    525 U.S. 471 (1999) ...................................................................................... 7

*Sanchez v. Mayorkas*,
    593 U.S. 409 (2021) ...................................................................................... 7

*Toure v. Att'y Gen.*,
   443 F.3d 310 (3d Cir. 2006) .................................................................. 7

*Trump v. Hawaii*,
   585 U.S. 667 (2018) .............................................................................. 9

*U.S., Inc. v. Renaud*,
   5 F.4th 59 (D.C. Cir. 2021) .................................................................. 2

*United States DOGE Serv. v. Citizens for Resp. & Ethics in Wash.*,
   145 S.Ct. 1981 (2025) .......................................................................... 3

*Zadvydas v. Davis*,
   533 U.S. 678 (2001) .............................................................................. 9

**Statutes**

5 U.S.C. § 705 ....................................................................................... 10

6 U.S.C. § 557 ......................................................................................... 3

8 U.S.C. §1229a ...................................................................................... 6

8 U.S.C. § 1103 ....................................................................................... 3

8 U.S.C. § 1157 ....................................................................................... 3

8 U.S.C. § 1252 .................................................................................... 1, 6

8 U.S.C. § 1252a .................................................................................. 8, 9

8 U.S.C. § 1254a ............................................................................. *passim*

8 U.S.C. §§ 1252 .................................................................................. 5, 6

28 U.S.C. § 2347 ..................................................................................... 7

**Other**

8 C.F.R. § 1240.1 .................................................................................... 6

8 C.F.R. §§ 1003.19 ................................................................................ 6

90 Fed. Reg. 19217 (May 6, 2025) ......................................................... 9

90 Fed. Reg. 54733 (Nov. 28, 2025) ...................................................... 8

Defendants President Donald Trump in his official capacity, Secretary Kristi Noem ("the Secretary") in her official capacity, and the Department of Homeland Security (collectively "Defendants"), through undersigned counsel, submit this supplemental brief to address: (1) the Court's inquiries from the motions' hearing; and (2) address Plaintiffs' allegations in the second amended complaint, after the Court granted leave and accepted its filing.

## ARGUMENT

### I.    <u>The Email in the Administrative Record Satisfies the Consultation Requirement.</u>

Congress authorized the Secretary to designate a country for Temporary Protected Status ("TPS") "after consultation with appropriate agencies of the Government" and set forth three qualified reasons that could justify such a designation.  8 U.S.C. § 1254a(b)(1).  Congress very specifically did not define "consultation," thereby leaving to the Executive's discretion what would be sufficient.  *See* Government Accountability Office Report 20-134, *Temporary Protected Statute: Steps Taken to Inform and Communicate Secretary of Homeland Security's Decisions* at 2 ("Although the INA does not prescribe the other agencies that must be consulted, the Department of State (State) generally has a role in providing input for the Secretary [] TPS reviews."); *see also id*. at 18-19 ("[] DHS generally consults with State on TPS decisions, although it is not specifically required to do so under the statute.").  That is precisely why Congress barred judicial review of: (1) "any determination" "with respect to the designation, or termination or extension of a designation, of a foreign state[,]" 8 U.S.C. § 1254a(b)(5); and (2) "any other any other decision or action of [] the Secretary [] the authority for which is specified under this subchapter to be in the [Secretary's] discretion," with a nonapplicable exception, 8 U.S.C. § 1252(a)(2)(B)(ii).

Starting with the TPS statute itself, Congress authorized the Secretary to designate and then terminate a country's TPS designation after consultation with the appropriate agencies.  What constitutes sufficient consultation is nothing more than the Secretary's "determination" "with

respect to the termination" of a country's designation.  8 U.S.C. § 1254a(b)(5) (citation modified).

A determination is a decision, *see Khan v. Meissner*, 921 F. Supp. 2, 4 (D.D.C. 1995); consultation

is defined as "seek[ing] advice or information of."  *Consult, American Heritage Dict.* (5th ed.

2019).  Here, the Secretary decided that, with respect to terminating Haiti's TPS designation, the

email exchange between the Department of Homeland Security and the Department of State was

sufficient advice or information to satisfy the consultation requirement.  *See* HaitiTPS00409-10.

Section 1254a divests this Court from reweighing the Secretary's determination in that respect.

Similarly, § 1252(a)(2)(B)(ii) bars judicial review into the sufficiency of consultation as it

relates to a country's TPS termination.  Congress did not set the scope of what agencies are

required to be consulted.  Nor did it define what constitutes sufficient consultation.  The TPS

statute need not use any magic words to indicate that the consultation issue is left to the Secretary's

discretion.  *See iTech U.S., Inc. v. Renaud*, 5 F.4th 59, 66 (D.C. Cir. 2021) (reiterating *Zhu v.

Gonzales*, 411 F.3d 292 (D.C. Cir. 2005) and its holding that discretion can be understood without

using the actual word).  The sufficiency of consultation must be understood as being left to the

Secretary's sound discretion because it comports with the structure and purpose of TPS.

Consultation regarding the existence of "an ongoing armed conflict within the state,"

§ 1254a(b)(1)(A), and describing it in public materials in light of diplomatic and foreign policy

considerations, may be very different in both kind and degree from consultation regarding whether

"there has been an earthquake, flood, drought, epidemic, or other environmental disaster in the

state[,]" § 1254a(b)(1)(B)(i).  In sum, the statute leaves each Secretary with substantial discretion

to determine when, where, how, and with whom to consult as appropriate in each instance.

Reading the TPS statute as not permitting the Secretary to decide about the sufficiency of

consultation would impose requirements that Congress itself did not deem necessary.  Moreover,

such a reading would second-guess communications within a coordinate branch of the government, and it is well-established that "judicial deference and restraint" is required when "internal Executive Branch communications" are involved. *United States DOGE Serv. v. Citizens for Resp. & Ethics in Wash.*, 145 S.Ct. 1981, 1982 (2025) (citing *Cheney v. United States Dist. Court for D.C.*, 542 U.S. 367, 385 (2004)); *see also In re United States DOGE Serv.*, No. 25-5130, 2025 U.S. App. LEXIS 17400, at *3 (D.C. Cir. July 14, 2025). Congress certainly did not envision courts reviewing the sufficiency of communications related to national security, foreign policy, and national interest when those sensitive areas are within the Executive's purview.

Importantly, Congress understood that it could define sufficient consultation. Another section of the INA authorizes the President to forth the "maximum number of refugees" that may be admitted annually "after appropriate consultation [with Congress], is justified by humanitarian concerns or is otherwise in the national interest." 8 U.S.C. § 1157(a)(2). Congress defined "appropriate consultation." 8 U.S.C. § 1157(e). That Congress did not do the same for the TPS statute is "not inadvertent." *O'Harra v. Littlejohn*, 69 F. Supp. 274, 276-77 (D.D.C. 1946). The lack of definition as it pertains to TPS recognizes the "leeway necessary to represent adequately this nation's interests in foreign affairs," where "Congress must of necessity paint with a brush broader than that it customarily wields in domestic areas." *Palestine Info. Off. v. Shultz*, 853 F.2d 932, 944 (D.C. Cir. 1988) (citation modified). Additionally, the TPS statute, which was passed in 1990, reflects an old immigration regime at a time when the "Attorney General" was the decisionmaker. Congress since transferred the Attorney General's TPS authority to the Secretary. *See* Homeland Security Act of 2002, Pub. L. No. 107-296, § 1517, 116 Stat. 2135, 2311 (2002) (codified at 6 U.S.C. § 557); 8 U.S.C. § 1103(a). Within the Department, the Secretary has numerous components who have access to information and can provide information related to TPS

- 3 -

designations.  The administrative record before the Court confirms this.  *See* ECF No. 89, 98 (memos from USCIS related to Haiti's TPS designation).

These arguments cast a long shadow over Plaintiffs' apparent concession that they are making a procedural challenge rather than a substantive one.  *See* Pls' Reply at 9.  Challenging the sufficiency of the consultation is no different than challenging the actual substance of the termination determination.  But even if Plaintiffs' challenge could be reasonably understood as a purely procedural challenge, there would be no review.  *See Amgen v. Smith*, 357 F.3d 103 (D.C. Cir. 2004) (holding that "a no review provision" would extend to a challenge that the agency decision is "procedurally defective").

Therefore, the Court lacks jurisdiction to review the sufficiency of the consultation.  But even if it did not, the email satisfies the statutory requirement given the deference that the Court must afford to Executive Branch communications.

II.    **Plaintiffs' Policy-and-Practice Claim Fails for Several Reasons.**

A.    **The Jurisdiction-Stripping Provisions Foreclose Policy-and-Practice Claims.**

Plaintiffs amended their complaint to allege a "policy-and-practice" claim, alleging that the Secretary is effectively terminating TPS generally.  *See* 2d Am. Compl., ¶¶ 240-48.  But the jurisdiction-stripping provisions cover the policy-and-practice claim and are therefore not reviewable by a federal district court.  Even if they were, Plaintiffs' allegations are not sufficient to state a policy-and-practice claim.

Plaintiffs misplace their reliance on *McNary v. Haitian Refugee Ctr., Inc.*, 498 U.S. 479 (1991) and argue that the jurisdiction-stripping provisions do not apply to this claim.  *See* Pls' Opp. (ECF No. 93) at 8.  *McNary* addressed whether a statutory provision which channeled judicial review of determinations concerning individual applications for special agricultural worker (SAW) status to removal proceedings barred the district court from considering plaintiffs' challenge to an

alleged "pattern or practice of procedural due process violations by the Immigration and Naturalization Service [] in its administration of the SAW program." 498 U.S. at 483. The Supreme Court held that district court jurisdiction could lie over such an action because the channeling provision applied to review of individual denials rather than "collateral challenges to unconstitutional practice and policies." *Id.* at 492. The Court observed that plaintiffs did "not seek a substantive declaration that they [were] entitled to SAW status;" even if they prevailed on the merits, they would "only be entitled to have their case files reopened and their applications reconsidered in light of … newly prescribed INS procedures." *Id.* at 495.

Unlike the collateral challenge in *McNary*, Plaintiffs here only seek declaratory and injunctive relief setting aside the termination decision for a single country, not some freestanding, independent, and genuinely collateral agency policy, action, or practice. Their claims are thus squarely covered by the review bar. *See Fed. Law Enf't Officers Ass'n v. Ahuja*, 62 F.4th 551, 565 (D.C. Cir. 2023) (declining to apply *McNary* based on the relief sought); *see also City of Rialto v. West Coast Loading Corp.*, 581 F.3d 865, 877 (9th Cir. 2009) (*McNary*'s reasoning was inapplicable to a "pattern and practice" claim that sought the same invalidation of the unreviewable agency decision as successful direct review). Plaintiffs cannot merely hang their hats on § 1254a(b)(5)(A) using "determination" in the singular. *See* Pls' Opp. at 9. Because "once we peel back the procedural label," the claim "at bottom" is that a new termination determination from the Secretary is required. *Ahuja*, 62 F.4th at 565 (citation modified). Review is foreclosed here.

But foreclosing judicial review now does not necessarily mean a path of review is foreclosed in perpetuity. Plaintiffs, to the extent that they are subject to removal and removal proceedings, may be able to avail themselves of review through the administrative process, culminating in Article III review by way of a petition for review. *See* 8 U.S.C. §§ 1252(a)(5),

(b)(9).  The Supreme Court recognized that Congress could bar judicial review of collateral challenges if it used more expansive language.  *McNary*, 498 U.S. at 494.  Indeed, it suggested as an option "all questions of law and fact" relying on other provisions using that language.  *Id*.  Congress amended the provision and elected to follow the Supreme Court's advice; it used "all questions of law and fact," and permitted judicial review of statutory and constitutional questions only by way of a petition for review.  8 U.S.C. § 1252(b)(9).

That Plaintiffs may be able to receive review in removal proceedings is not "tantamount to a complete denial of judicial review" as the Supreme Court suggested when discussing the SAW program.  *McNary*, 498 U.S. at 496-97.  That is because the termination of TPS does not necessarily lead to removal, and Congress's structure in the INA contemplates review only if the question comes up through removal proceedings.  Numerous individuals may have legitimized their status or have ways to legitimize their status in the United States notwithstanding the termination of Haiti's TPS designation.  For those who have no path or chose not to elect a path to legitimize their status in the United States, Congress provided an avenue for review but deferred it until a removal order is issued.  "This may seem draconian to plaintiff[s] and others similarly situated, but this Court cannot remedy that problem."  *Khan*, 921 F. Supp. at 4.  If Plaintiffs choose to remain in the United States without authorization or permission, that volitional choice has downstream effects, one that Congress clearly contemplated and provided an avenue for judicial review if necessary.

Requiring review through the petition-for-review process would not eliminate Plaintiffs' ability to raise constitutional claims in individual immigration proceedings.  *See* Pls' Reply at 24.  An immigration judge is empowered to develop a record.  *See* 8 U.S.C. §1229a(b)(1); *see also* 8 C.F.R. §§ 1003.19(b); 8 C.F.R. § 1240.1(b); 1240.10(a)(4); 1240.11(c)(3)(ii).  Indeed, the

immigration judge has a duty to do so. *See, e.g.*, *Toure v. Att'y Gen.*, 443 F.3d 310, 325 (3d Cir. 2006). While immigration judges may not adjudicate constitutional challenges to statutory authority, they must still develop the record for such challenges to be heard by the court of appeals. *See Matter of M-P-*, 20 I. & N. Dec. 786, 787-88 (BIA 1994); *see Matter of S-H-*, 23 I. & N. Dec. 462, 465 (BIA 2002). In the incredibly rare case in which there is an insufficient record, the court of appeals could "transfer the proceedings to a district court" for limited fact finding if a petitioner can establish that a hearing is required on that issue. 28 U.S.C. § 2347(b)(3); *see Reno v. AADC*, 525 U.S. 471, 496-97 & n. 3 (1999) (Ginsburg, J., concurring); *Khalil v. President, the United States of America*, Nos. 25-2162 & 25-2357, Opin. at 35-37 (3d Cir. Jan. 15, 2026).

Allowing policy-and-practice claims to proceed for those individuals subject to removal and removal proceedings comports with congressional intent. *See Sanchez v. Mayorkas*, 593 U.S. 409, 416 (2021) ("And because a grant of TPS does not come with a ticket of admission, it does not eliminate the disqualifying effect of an unlawful entry."). Because Plaintiffs contend that the termination of TPS would lead to removal issues, those claims are inextricably "intertwined with or embedded in matters on which" the immigration officials are expert; therefore, they must pursue those challenges through the scheme created by Congress. *See Axon Enterprise Inc. v. FTC*, 598 U.S. 175, 195 (2023). The Court should dismiss the claim for lack of jurisdiction.

### B.    Plaintiffs' Policy-and-Practice Claim Fails on the Merits.

Jurisdictional deficiencies notwithstanding, Plaintiffs' policy-and-practice claim fails on the merits. Plaintiffs' claim rests on the premise that the Secretary, in arriving at the Haiti TPS termination determination, deviated from past practice and is part of a larger policy of terminating TPS generally. The problem with Plaintiffs' theory is that through this action, they challenge only *Haiti's TPS termination* determination. A proper policy-and-practice claim would require challenges to all other TPS designations. *See McNary*, 498 U.S. at 495 (relief would be for all

plaintiffs to have their case files reopened).  In other words, Plaintiffs prevailing on a policy-and-practice claim before this Court would likely affect *all* other TPS cases, which simply cannot be the case.  Regardless, even with the various TPS termination determinations, Plaintiffs' claim still fails.  The Secretary applied a process and legal standard that is materially similar to those used by past Secretaries when evaluating TPS termination decisions.  *See* GAO Report 20-134 at 21 (discussing USCIS' significant input and recommendation memos).  That the Secretary reached different conclusions than recent Secretaries regarding Haiti's designation merely reflects a difference in the Secretaries' assessment and weighing of evolving country conditions and national interest.

Here, there is no dispute that the Secretary analyzed the country conditions in Haiti before deciding to terminate the TPS designation.  Termination of the Designation of Haiti for [TPS], 90 Fed. Reg. 54733 (Nov. 28, 2025); *see* ECF Nos. 89-1, 89-2.  Plaintiffs advance a constitutional violation theory, alleging that discriminatory animus motivated the determination to terminate Haiti's TPS designation.  *See* 2d Am. Compl. ¶ 284.  Given that the Secretary has terminated or vacated TPS designations for twelve other countries, Plaintiffs allege that evidences a policy-and-practice of terminating TPS generally. But that argument fails for two reasons.

First, nothing requires that there be countries designated for TPS at any given moment. Indeed, Congress went out of its way to require the Secretary to revisit prior designations periodically.  *See* 8 U.S.C. § 1252a(b)(3)(A) (requiring the Secretary to review the original designation decision and determine whether those conditions "continue to be met").  Congress contemplated a world in which a country or multiple countries would lose their TPS designation. *See, e.g.*, 101 Cong. Rec. 25845 (Floor Statement by Congressman Morrison) (acknowledging that TPS would "actually set a time limit on [beneficiaries'] continued presence in the United States

and to have their names, and to know their addresses by the registration provisions, so that as the period expires, we can then take the necessary steps to send these individuals home"). Additionally, Congress afforded the Secretary with the authority to invoke "national interest" considerations when terminating a country's TPS designation. *See* 8 U.S.C. § 1252a(b)(1)(C). In doing so, Congress codified the principle that the country can and must speak with one voice when it comes to immigration. *See Zadvydas v. Davis*, 533 U.S. 678, 700 (2001). By finding that the continued presence of Haitian TPS holders, which represents the individuals before this Court, and other TPS holders is contrary to the national interest, the Secretary is ensuring consistency that the nation is indeed speaking with one voice on these matters. Second, even if the Court is unpersuaded by that argument, the Supreme Court has already upheld Executive action that targets specific countries for immigration consequences when reviewing a constitutional challenge. *See Trump v. Hawaii*, 585 U.S. 667, 710 (2018) (upholding Proclamation banning aliens from certain countries from entering the United States).

Moreover, the public facts on the ground undermine Plaintiffs' theory. For instance, South Sudan's TPS designation was extended after the Secretary was unable to review the country conditions in the requisite time. *See* Extension of South Sudan Designation for [TPS], 90 Fed. Reg. 19217 (May 6, 2025). Even accepting Plaintiffs' allegations, they cannot make out a policy-and-practice claim that suggests that the Secretary is attempting to terminate TPS generally or that the Secretary's decision is motivated by discriminatory animus. That is because "virtually every country that has been designated for TPS since its inception has been non-European [] and most have majority non-white populations." *Ramos v. Wolf*, 975 F.3d 872, 898 (9th Cir. 2020) (citation modified). It cannot be that Plaintiffs make out a policy-and-practice discriminatory animus claim simply by pointing to the fact that Haiti is a majority nonwhite country. *See Ramos*, 975 F.3d at

898 (citing *DHS v. Regents of the Univ. of Cal.*, 591 U.S. 1, 34 (2020)).  Plaintiffs have clearly fallen short of a "clear and convincing showing" to "rebut the presumption of administrative regularity." *Ass'n of Nat'l Advertisers, Inc. v. Fed. Trade Comm'n*, 627 F.2d 1151, 1171 (D.C. Cir. 1979).

## III.    <u>The Court's Questions Related to the TPS Statute Itself.</u>

To the extent that the above do not satisfy the Court's inquiry as to the Secretary's statutory authority, Defendants attempt to address the Court's specific questions from the motions' hearing.

The TPS statute does not prohibit termination of multiple countries' TPS designations.  *See* 8 U.S.C. § 1254a(b)(3)(B).  For countries who were originally designated for TPS based on the existence of "extraordinary and temporary conditions," the Secretary is permitted to terminate TPS designations if the Secretary finds "permitting the aliens [who are nationals of the state] to remain in the United States" would be contrary to the Nation's national interest.  *See* 8 U.S.C. § 1254a(b)(1)(C).  The statute requires the Secretary to make individual findings per state when making a TPS designation.  *See* 8 U.S.C. § 1254a(b)(3)(B).  Meaning, the Secretary could likely not publish one notice to the Federal Register that justifies the termination of multiple countries by simply stating that it would be in the country's "national interest" to do so. The Secretary would have to include the basis for the determination per foreign state.  *See* 8 U.S.C. § 1254a(b)(3)(B).  However, that does not necessarily mean that each determination requires an individualized notice.  The Secretary could satisfy the notice requirement by publishing one notice that contains the bases for TPS decisions for each individual country.

## CONCLUSION

For the foregoing reasons, the Court should deny Plaintiffs' 5 U.S.C. § 705 motion and dismiss Plaintiffs' complaint.

\*        \*        \*

Dated: January 16, 2026

Respectfully submitted,

JEANINE FERRIS PIRRO
United States Attorney

By: _____ */s/ Dhruman Y. Sampat* _____
DHRUMAN Y. SAMPAT
AMANDA L. TORRES
Assistant United States Attorneys
601 D Street, NW
Washington, DC 20530
(202) 252-2525 (Sampat)
(202) 252-2507 (Torres)
dhruman.sampat@usdoj.gov
amanda.torres@usdoj.gov

*Attorneys for the United States of America*