IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **FRITZ EMMANUEL LESLY MIOT; RUDOLPH CIVIL; MARLENE GAIL NOBLE; MARICA MERLINE LAGUERRE; and VILBRUN DORSAINVIL,**<br><br>*Plaintiffs*,<br><br>v.<br><br>**DONALD J. TRUMP, President of the United States of America; UNITED STATES OF AMERICA; THE DEPARTMENT OF HOMELAND SECURITY; and KRISTI NOEM, Secretary of Homeland Security,**<br><br>*Defendants*. | Case No. 1:25-cv-02471 |

## PLAINTIFFS' RESPONSE TO THE COURT'S REQUEST TO TAKE JUDICIAL NOTICE OF SPEECH

Federal Rule of Evidence 201(b)(2) establishes that the Court may judicially notice facts that are not subject to reasonable dispute because they can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned. The Court may take judicial notice on its own at any stage of the proceeding and may do so on its own initiative. Fed. R. Evid. 201(c)(1) and 201(d); *see also Christa McAuliffe Intermediate Sch. PTO, Inc. v. De Blasio*, 364 F. Supp. 3d 253, 264 (S.D.N.Y. 2019) (*sua sponte* taking judicial notice of school chancellor's recorded interview). Courts have taken judicial notice of statements televised on C-Span. *See Kravitz v. United States DOC*, 336 F. Supp. 3d 545, 570 n.17 (D. Md. 2018) (in APA claim, taking judicial notice of then-Secretary of Commerce Wilbur L. Ross's public congressional testimony televised on C-Span, after finding "strong preliminary showing that

[d]efendants have acted in bad faith, and that [d]efendants' stated reason for adding citizenship question . . . was pretextual"). Indeed, courts have taken judicial notice of statements by President Trump that were televised on C-Span. *See Watkins v. CNN, Inc.,* 2018 U.S. Dist. LEXIS 71003, at *2 n.4 (D. Md. April 25, 2018) (taking judicial notice of C-Span recording of then-presidential candidate Donald Trump). Courts have also taken judicial notice of statements recorded by other entities. *See, e.g., Washington Asso. for Television & Children v. FCC*, 712 F.2d 677, 683 n.12 (D.C. Cir. 1983) (speech was in the public domain and "therefore a proper subject of judicial notice"); *McKenna v. Nassau Cnty. News NY*, 2023 WL 8455670, at *5 (E.D.N.Y. Dec. 6, 2023) (taking judicial notice of legislative meeting video depicting comments) (citing cases).

Here too, the Court may, in its discretion and *sua sponte*, take judicial notice of the President's speech at the Conservative Political Action Conference ("CPAC"). This Court has already found that Plaintiffs are permitted to conduct, and this Court is able to consider extra-record discovery with respect to both Plaintiffs' APA and Constitutional claims. *See* Min. Order dated Jan. 23, 2026.

*Escobar Molina v. DHS* is an instructive case presenting analogous issues. *See* __F. Supp. 3d__, 2025 WL 3465518 (D.D.C. Dec. 2, 2025). There, plaintiffs similarly brought both APA and Constitutional claims against the Department of Homeland Security for its policy and practice of conducting warrantless civil immigration arrests in the District of Columbia. In the context of granting preliminary relief, the Court took judicial notice of relevant public statements high-level DHS officials made to News4 [of NBC] regarding its current arrest policy. *Id*. at *24 n. 41; *id*. at *24 ("[T]hese statements are taken at face value as reflecting the current policy and practice of DHS and federal law enforcement agents making civil immigration arrests."). In doing so, the

court reasoned that the noticed statements are consistent with other statements defendants have previously made that are before the court. The court also noted that the defendants, "though granted permission to make post-hearing submissions," did not correct or disavow the statements. *Id*.

So too here. In the CPAC speech, President Trump declared: "This week, I also canceled Temporary Protected Status for migrants from Haiti. They're pouring into our country, pouring in." The President continued: "If I hadn't been elected president, there'd be nobody left in Haiti." He also added: "They [immigrants] were pouring in at levels [unprecedented], from other countries too, all over Africa, the Congo, all over South America. And they were coming in from prisons and mental institutions and insane asylums, jails, and gang members." As in *Escobar Molina,* President Trump's statements may be noticed because they echo many of the prior statements he has made espousing racial animus against Haitians and immigrants of color, *See e.g.*, SAC ¶ 87 ("At the September 10, 2024, presidential debate, President Trump falsely asserted that in Springfield, [Haitian immigrants are] eating the dogs. The people that came in. They're eating the cats. They're eating – they're eating the pets of the people that live there. And this is what's happening in our country.").

Additionally, as in *Escobar Molina*, the statements here were also filmed by a news outlet—C-SPAN—whose mission is to provide "gavel-to-gavel coverage of the workings of the U.S. Congress … without editing, commentary or analysis," as well as "a wide variety of public policy and political events from campaign stops to press briefings."[1] While Defendants claim they cannot confirm the accuracy of the video, as in *Escobar Molina*, they have neither corrected nor disavowed it after been given the opportunity to do so by the Court. Further, the law is clear

---

[1] https://www.c-span.org/about/history/

3

that the Court can consider the President and other officials' comments made in office, as here, on the campaign trail, and otherwise when evaluating Plaintiffs' APA and Equal Protection claims. *See, e.g.*, *Rydeen v. Quigg*, 748 F. Supp. 900, 906 (D.D.C. 1990) ("When reviewing constitutional challenges to agency decisionmaking, courts make an independent assessment of the facts and the law."); *Perkins Coie LLP v. Dept. of Justice*, 783 F. Supp. 3d 105, 162-64 (D.D.C. 2025) (court relied on President Trump's campaign statements from both 2016 and 2020 in evaluating the claims); *AAUP v. Rubio*, --- F. Supp. 3d ---, 2025 WL 2777659, *49 (D. Mass. Sept. 30, 2025) ("The evidence presented at trial included the Public Officials' many public statements suggesting that they wished to staunch public protest related to Israel's treatment of Palestinians, including the President's campaign promise that he would put an end to the student protests on this issue by kicking out protestors and subsequent promise that the Public Officials would deport and cancel the visas of those 'who joined in the pro-jihadist protests' and Secretary Rubio's plainspoken guarantee to deport 'Hamas-supporters' and those who 'participat[e] in pro-Hamas events.'").

Dated: New York, New York
January 30, 2026

**GISKAN SOLOTAROFF & ANDERSON LLP**

*/s/ Raymond Audain*
Raymond Audain
raudain@gslawny.com
(646) 825-2556
1 Rockefeller Plaza, 8th Floor
New York, NY 10020

Sejal Zota (D.C. Bar No. NC020)
JUST FUTURES LAW
sejal@justfutureslaw.org
(617) 812-2822
1629 K Street N.W., Suite 300
Washington, DC 20006