UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| FRITZ EMMANUEL LESLY MIOT, *et al.*,<br><br>              Plaintiffs,<br><br>     v.<br><br>DONALD J. TRUMP, President of the United States, *et al.*,<br><br>              Defendants. | Civil Action No. 25-2471 (ACR) |

**DEFENDANTS' MOTION TO STAY COURT'S ORDER GRANTING RELIEF
UNDER 5 U.S.C. § 705**

## <u>TABLE OF CONTENTS</u>

Introduction.................................................................................................................. 1

Background.................................................................................................................. 1

Legal Standard ........................................................................................................... 1

     I.     The Government is Likely to Succeed on the Merits. ............................................. 1

          A.     The TPS Statute and Section 1252(a)(2)(B)(ii) Bar Review. .................... 1

               1.     Section 1254a Bars Review.............................................................. 2

               2.     Section 1252(a)(2)(B)(ii) Bars Review. ....................................... 4

          B.     The Government is Likely to Succeed Because Plaintiffs Do Not Have Plausible APA Claims.................................................................................. 5

               1.     Two Jurisdiction-Stripping Provisions Foreclose Review. .......... 5

               2.     The Government is likely to succeed on Plaintiffs' Policy-and-Practice APA Claim. ..................................................................... 5

               3.     The Government is likely to succeed because the decision was not preordained and a preordained decision would not violate the APA.. 7

               4.     The Government is likely to succeed in arguing that Plaintiffs' arbitrary-and-capricious claim fails.................................................. 8

          C.     The Government is Likely to Succeed in its Constitutional Arguments. ... 9

               1.     The Court Applied the Wrong Standard....................................... 9

                2.     The Government is likely to succeed on appeal regardless of the standard. ...................................................................................... 10

          D.     The Court's Order is Overbroad. ............................................................. 10

          E.     The District Court's Stay Order Violates 8 U.S.C. § 1252(f)(1). ............. 11

II.     The Government Is Entitled to a Stay Because It Will Suffer Irreparable Harm Absent a Stay and the Equitable Factors Favor It. ................................................. 13

Conclusion ............................................................................................................................. 17

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Am. Foreign Serv. Ass'n v. Trump*,
No. 25-5184, 2025 U.S. App. LEXIS 15297 (D.C. Cir. June 20, 2025) ................................. 14

*Am.'s Bldg. Trades Unions v. Dep't of Def.*,
783 F. Supp. 3d 290 (D.D.C. 2025) ......................................................................... 7

*Amgen, Inc. v. Smith*,
357 F.3d 103 (D.C. Cir. 2004) ............................................................................... 5

*Baystate Franklin Med. Ctr. v. Azar*,
950 F.3d 84 (D.C. Cir. 2020) ................................................................................ 8

*Biovail Corp. v. FDA*,
448 F. Supp. 2d 154 (D.D.C. 2006) ...................................................................... 16

*Brasil v. Sec'y of DHS*,
28 F.4th 1189 (11th Cir. 2022) ............................................................................. 4

*Chaplaincy of Full Gospel Churches v. England*,
454 F.3d 290 (D.C. Cir. 2006) ............................................................................ 15

*Cheney v. United States Dist. Court for D.C.*,
542 U.S. 367 (2004) ........................................................................................... 3

*City of Rialto v. West Coast Loading Corp.*,
581 F.3d 865 (9th Cir. 2009) ............................................................................... 5

*Corp. for Pub. Broad. v. FEMA*,
792 F. Supp. 3d 67 (D.D.C. 2025) ....................................................................... 16

*Davis v. Pension Ben. Guar. Corp.*,
571 F.3d 1288 (D.C. Cir. 2009) ........................................................................... 16

*Department of Commerce v. New York*,
588 U.S. 752 (2019) ........................................................................................ 6, 7

*Doc Soc'y v. Blinken*, Civ. A.,
No. 19-3632 (TJK), 2023 WL 5174304 (D.D.C. Aug. 11, 2023) .............................. 9

*Doc Soc'y v. Rubio*,
141 F.4th 1273 (D.C. Cir. 2025) ........................................................................... 9

*Edwards v. Dist. of Columbia,*
    755 F.3d 996 (D.C. Cir. 2014) ................................................................. 5

*Egbert v. Boule,*
    596 U.S. 482 (2022) ................................................................................. 2

*Evangelical Lutheran Church in Am. v. I.N.S.,*
    288 F. Supp. 2d 32 (D.D.C. 2003) ........................................................... 4

*Fed. Law Enf't Officers Ass'n v. Ahuja,*
    62 F.4th 551 (D.C. Cir. 2023) .................................................................. 5

*Flores v. Garland,*
    72 F.4th 85 (5th Cir. 2023) ...................................................................... 4

*Garland v. Aleman-Gonzalez,*
    596 U.S. 543 (2022) ............................................................................... 13

*Immigrant Defs. L. Ctr. v. Noem,*
    145 F.4th 972 (9th Cir. 2025) ................................................................. 11

*Ind. Mun. Power Agency v. FERC,*
    56 F.3d 247 (D.C. Cir. 1995) .................................................................... 8

*INS v. Legalization Assistance Project,*
    510 U.S. 1301 (1993) ........................................................................ 14, 16

*Islamic Am. Relief Agency v. Gonzales,*
    477 F.3d 728 (D.C. Cir. 2007) .................................................................. 8

*iTech U.S., Inc. v. Renaud,*
    5 F.4th 59 (D.C. Cir. 2021) ...................................................................... 4

*J.E.F.M. v. Lynch,*
    837 F.3d 1026 (9th Cir. 2016) ................................................................ 15

*Kinney-Coastal Oil Co. v. Kieffer,*
    277 U.S. 488 (1928) ............................................................................... 11

*Lyng v. Payne,*
    476 U.S. 926 (1986) ................................................................................. 6

*Make the Road N.Y. v. Wolf,*
    962 F.3d 612 (D.C. Cir. 2020) ................................................................ 14

*Maryland v. King,*
    567 U.S. 1301 (2012) .................................................................................................... 14

*Masroor v. Noem,*
    Civ. A. No. 25-256 (JDB), 2025 WL 2439176 (D.D.C. Aug. 25, 2025) .................................... 4

*Mathews v. Diaz,*
    426 U.S. 67 (1976) ........................................................................................................ 9

*MediNatura, Inc. v. FDA,*
    998 F.3d 931 (D.C. Cir. 2021) ...................................................................................... 14

*Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co.,*
    463 U.S. 29 (1983) ........................................................................................................ 8

*Mousavi v. USCIS,*
    828 F. App'x 130 (3d Cir. 2020) .................................................................................... 4

*Muvvala v. Wolf*, Civ. A.,
    No. 20-2423 (CJN), 2020 U.S. Dist. LEXIS 177082 (D.D.C. Sept. 25, 2020) ...................... 16

*Mylan Pharms., Inc. v. Shalala,*
    81 F. Supp. 2d 30 (D.D.C. 2000) .................................................................................. 16

*N.S. v. Dixon,*
    141 F.4th 279 (D.C. Cir. 2025) ..................................................................................... 12

*Narenji v. Civiletti,*
    617 F.2d 745 (D.C. Cir. 1979) ....................................................................................... 9

*Nat'l TPS All. v. Noem,*
    150 F.4th 1000 (9th Cir. 2025) ..................................................................................... 12

*Nixon v. Fitzgerald,*
    457 U.S. 731 (1982) .................................................................................................... 10

*Nken v. Holder,*
    556 U.S. 418 (2009) ........................................................................................... 1, 13, 14

*Noem v. Nat'l TPS All.,*
    145 S. Ct. 2728 ...................................................................................................... 2, 13

*Noem v. Nat'l TPS All.,*
    --- S. Ct. ---, 2025 WL 2812732 (Mem.) ...................................................................... 2, 13

*Olenga v. Gacki,*
    507 F. Supp. 3d 260 (D.D.C. 2020) .................................................................. 9

*Open Top Sightseeing USA Mr. Sightseeing, LLC,*
    48 F. Supp. 3d 87 (D.D.C. 2014) ................................................................... 16

*Poursina v. USCIS,*
    936 F.3d 868 (9th Cir. 2019) ........................................................................ 4

*Pub. Citizen Health Res. Grp. v. Tyson,*
    796 F.2d 1479 (D.C. Cir. 1986) ...................................................................... 8

*Ramos v. Wolf,*
    975 F.3d 872 (9th Cir. 2020) ....................................................................... 10

*Regents of the Univ. of Cal.,*
    591 U.S. 1 (2020) ........................................................................................ 10

*Sheldon v. Sill,*
    49 U.S. (8 How.) 441 (1850) .......................................................................... 2

*Staub v. Proctor Hosp.,*
    562 U.S. 411 (2011) ..................................................................................... 10

*Transohio Sav. Bank v. Dir., Office of Thrift Supervision,*
    967 F.2d 598 (D.C. Cir. 1992) ........................................................................ 6

*Trump v. Boyle,*
    145 S. Ct. 2653 (2025) ................................................................................. 13

*Trump v. CASA, Inc.,*
    606 U.S. 831 (2025) ..................................................................................... 11

*Trump v. Hawaii,*
    585 U.S. 667 (2018) ................................................................................. 7, 10

*Trump v. United States,*
    603 U.S. 593 (2024) ..................................................................................... 10

*United States v. Nixon,*
    418 U.S. 683 (1974) ..................................................................................... 10

*Verde-Rodriguez v. Att'y Gen.,*
    734 F.3d 198 (3d Cir. 2013) ......................................................................... 15

*Verma v. U.S. Citizenship & Immigr. Servs.*, Civ. A.,
　　No. 20-3419 (RDM), 2020 U.S. Dist. LEXIS 239157 (D.D.C. Dec. 18, 2020) ...................... 16

*Village of Arlington Heights v. Metropolitan Hous. Dev. Corp.*,
　　429 U.S. 252 (1977) ........................................................................................................ 9, 10

*United States DOGE Serv. v. Citizens for Resp. & Ethics in Wash.*,
　　145 S.Ct. 1981 (2025) .............................................................................................................. 2

*Zadvydas v. Davis*,
　　533 U.S. 678 (2001) .......................................................................................................... 7, 14

*Zeng v. Mayorkas*, Civ. A.,
　　No. 21-446 (DLF), 2021 U.S. Dist. LEXIS 111323 (D.D.C. Apr. 16, 2021) .......................... 16

*Zhu v. Gonzales*,
　　411 F.3d 292 (D.C. Cir. 2005) ................................................................................................ 4

## **Statutes**

5 U.S.C. § 705 ............................................................................................................................ i, 1

8 U.S.C. § 1252(a)(2)(B) ............................................................................................................... 4

8 U.S.C. § 1252(f)(1) ............................................................................................................... i, 11

8 U.S.C. § 1252a(b)(1)(C) ............................................................................................................ 7

8 U.S.C. § 1252a(b)(3)(A) ............................................................................................................ 6

8 U.S.C. § 1254a(b)(3)(B) ............................................................................................................ 8

8 U.S.C. § 1254a(b)(5)(A) ............................................................................................................ 3

8 U.S.C. §§ 1252(a)(5) ............................................................................................................... 15

8 U.S.C. § 1254a(b)(1)(C) .......................................................................................................... 16

**INTRODUCTION**

Defendants President Donald Trump, Secretary Kristi Noem ("the Secretary"), and the Department of Homeland Security (collectively "the Government"), in their official capacities, and through undersigned counsel, move to stay the district court's order staying the termination of Haiti's designation under the Temporary Protected Status ("TPS") statute. *See* Feb. 2, 2026, Order, ECF No. 183. Defendants are likely to prevail on appeal, and the equitable factors all favor granting the stay.  Defendants request that the Court rule on this motion **no later than Monday at 12:00pm** so that they may seek appropriate appellate review. Pursuant to Local Civil Rule 7(m), the Government conferred with counsel for Plaintiffs, and Plaintiffs oppose the requested relief.

**BACKGROUND**

The opinion denying Defendants' motion to dismiss and granting Plaintiffs' motion under 5 U.S.C. § 705 ("§ 705 Motion") recounts the allegations in the Second Amended Complaint.  *See* Mem. Op. (ECF No. 124) at 1-18.[1]

**LEGAL STANDARD**

A stay of a district court order pending appeal turns on (1) likelihood of success on the merits; (2) irreparable injury; (3) balancing the equities; and (4) the public interest. *Nken v. Holder*, 556 U.S. 418, 426 (2009).  Each factor favors a stay here.

**ARGUMENT**

I.    <u>The Government is Likely to Succeed on the Merits.</u>

A.    **The TPS Statute and Section 1252(a)(2)(B)(ii) Bar Review.**

The Government is likely to succeed on its jurisdictional arguments.  First, the TPS statute on its face bars review of all claims. Second, 8 U.S.C. § 1252(a)(2)(B)(ii) bars review.

---

[1]    Citations to pages in a filing on the docket refer to the page numbers assigned by CM/ECF.

1.    **Section 1254a Bars Review.**

The Government is likely to succeed that § 1254a(a)(B)(5)(A) divests judicial review over Plaintiffs' claims.  *See* Mem. Op. at 20-26.  The Court's misconception of the jurisdiction-stripping provision is confirmed by the Supreme Court's two orders staying the effect of similar district court orders issued related to Venezuela.  *See Noem v. Nat'l TPS All.*, 145 S. Ct. 2728 (mem.) (2025); *Noem v. Nat'l TPS All.*, --- S. Ct. ---, 2025 WL 2812732 (Mem.) (Oct. 3, 2025); *see also Nat'l TPS All. v. Noem*, No. 25-4901 (9th Cir.), Order Granting Stay Pending Appeal dated Aug. 20, 2025.

By foreclosing "judicial review," § 1254a(b)(5)(A) bars all of Plaintiffs' APA and constitutional challenges to Secretary Noem's vacatur and termination determinations.  *See* H.R. Rep. No. 101-245, at 14 (1989) ("Moreover, none of the [Secretary's] decisions with regard to granting, extending, or terminating TPS will be subject to judicial review.").  This specific language reflects Congress's clear intent in limiting Article III jurisdiction.  *See Sheldon v. Sill*, 49 U.S. (8 How.) 441, 449 (1850) ("Courts created by statute can have no jurisdiction but such as the statute confers."); *see, e.g.*, *Egbert v. Boule*, 596 U.S. 482, 491 (2022) (recognizing that "Congress," not the courts, has the authority and ability to weigh the pros and cons of remedial schemes, including "economic and governmental concerns," "administrative costs," and the "impact on governmental operations systemwide").

Moreover, the Court erred in reviewing the sufficiency of consultation, which Congress left undefined and therefore within the discretion of the Executive branch.  First, such review goes to the "substance" of the Secretary's decision and is therefore covered by § 1254a(b)(5)(A).  But in setting that reviewing the sufficiency of consultation, the Court intruded on the well-established principle that "judicial deference and restraint" is required when "internal Executive Branch communications" are involved.  *United States DOGE Serv. v. Citizens for Resp. & Ethics in Wash.*,

145 S. Ct. 1981, 1982 (2025) (citing *Cheney v. United States Dist. Court for D.C.*, 542 U.S. 367, 385 (2004)); *see also In re United States DOGE Serv.*, No. 25-5130, 2025 U.S. App. LEXIS 17400, at *3 (D.C. Cir. July 14, 2025).

At minimum, the Court erred in reviewing Plaintiffs' arbitrary-and-capricious claims, which are plainly barred for the reasons explained in the Government's opposition. *See* Defs' Opp. to § 705 (ECF No. 92) at 26-35. The Court interpreted Plaintiffs' complaint to not challenge the Secretary's substantive determination. *See* Mem. Op. at 20. Yet the Court's arbitrary-and-capricious analysis substantively reviewed the country conditions in Haiti and expressed concerns with the Secretary's decision to *not* consider Haitian TPS holders and economic impacts. *See id.* at 49-63. That is precisely the sort of judicial review that Congress did not want when it barred "judicial review of any determination of the [Secretary] with respect to the designation, or termination or extension of a designation, of a foreign state" for TPS. 8 U.S.C. § 1254a(b)(5)(A). Moreover, the Court reasoned that "most of Plaintiffs' claims also do not assail the Secretary's 'single act' of terminating Haiti's TPS designation at all," Mem. Op. at 22, but Plaintiffs' claims and the Court's opinion focus virtually exclusively on alleged problems with that specific termination, including allegations of failure to follow procedures in making that specific decision, Mem. Op. 41-46 (evaluating consultation prior to Haiti termination); failure to consider various aspects of the problem in making that specific decision, *id.* at 49-63 (evaluating "Conditions in Haiti" and questioning the Secretary's "Failure to Focus on Haitian TPS Holders" and "Failure to Consider Economics" in this specific determination's national interest analysis); preordaining the specific "decision to terminate Haiti's TPS designation," *id.* at 63-64; and being motivated by animus in making that specific decision, *id.* at 64-73.

2.    **Section 1252(a)(2)(B)(ii) Bars Review.**

In limiting the jurisdiction stripping provision to "individual immigration adjudications," Defendants further submit that the Court read this provision too narrowly. Mem. Op. at 35. Congress has provided that "no court shall have jurisdiction to review" certain enumerated immigration decisions, as well as "any other decision or action" by the Secretary of Homeland Security "the authority for which is specified" to be in her discretion by any provision between sections 1151 and 1382 of Title 8 of the U.S. Code.  8 U.S.C. § 1252(a)(2)(B); *accord iTech U.S., Inc. v. Renaud* ("*iTech*"), 5 F.4th 59, 62 (D.C. Cir. 2021).  That the termination of TPS is not a "denial[] of discretionary relief" and is not an "individual immigration adjudication" is of no moment. As the D.C. Circuit has said, § 1252(a)(2)(B)(ii) and its reach cover "all decisions or actions the authority for which is specific under this subchapter to be in the discretion of the Attorney General or the Secretary of Homeland Security, regardless of whether they deny relief." *iTech*, 5 F.4th at 63. Section 1252(a)(2)(B)(ii) certainly covers what constitutes "extraordinary and temporary conditions."  *Cf. Evangelical Lutheran Church in Am. v. I.N.S.*, 288 F. Supp. 2d 32, 44 (D.D.C. 2003) (acknowledging that a court "may not be able to quarrel with an INS determination that there were no extraordinary circumstances . . . commensurate with the delay" when utilizing a regulation).

At the very least, § 1252(a)(2)(B)(ii) precludes judicial review over the Secretary's "national interest" determinations and findings.  *See Zhu v. Gonzales*, 411 F.3d 292, 295 (D.C. Cir. 2005); *see also Flores v. Garland*, 72 F.4th 85, 88 (5th Cir. 2023) (holding § 1252(a)(2)(B)(ii) bars review of the denial of a national-interest waiver); *Poursina v. USCIS*, 936 F.3d 868 (9th Cir. 2019) (same); *Brasil v. Sec'y of DHS*, 28 F.4th 1189 (11th Cir. 2022) (per curiam) (same); *Mousavi v. USCIS*, 828 F. App'x 130 (3d Cir. 2020) (same); *see also Masroor v. Noem*, Civ. A. No. 25-256 (JDB), 2025 WL 2439176, at *2 (D.D.C. Aug. 25, 2025).  These are value judgments that do not

make themselves amenable to judicial standards and empirical evidence. *Cf. Edwards v. Dist. of Columbia*, 755 F.3d 996, 362-63 (D.C. Cir. 2014).

    **B.**    **The Government is Likely to Succeed Because Plaintiffs Do Not Have Plausible APA Claims.**

        **1.**    **Two Jurisdiction-Stripping Provisions Foreclose Review.**

The Government is likely to prevail that either or both of the INA's provisions referenced above preclude judicial review of Plaintiffs' claims. Therefore, there is no APA review available. "If a no-review provision shields particular types of administrative action, a court may not inquire whether a challenged agency decision is arbitrary, capricious, or procedurally defective." *Amgen, Inc. v. Smith*, 357 F.3d 103, 113 (D.C. Cir. 2004).

The Court concluded that the Secretary acted contrary to law by failing to consult properly with appropriate agencies. *See* Mem. Op. at 41-45. The Court earlier characterized that as a procedural defect, which is why the Court concluded the jurisdiction-stripping provision did not apply. *See id*. at 20, 21. If that is the case, then *Amgen* controls because the Court accepted Plaintiffs' entire theory as the termination decision being "procedurally defective." 357 F.3d at 113.

        **2.**    **The Government is likely to succeed on Plaintiffs' Policy-and-Practice APA Claim.**

The Government is likely to succeed in its argument that the TPS jurisdictional bar covers policy-and-practice claims. At bottom, the key fact to this inquiry is the relief that Plaintiffs seek relief from the termination decision for a single country, not some freestanding, independent, and genuinely collateral agency policy, action, or practice. Their claims are thus squarely covered by the review bar. *See Fed. Law Enf't Officers Ass'n v. Ahuja*, 62 F.4th 551, 565 (D.C. Cir. 2023) (declining to apply *McNary* based on the relief sought); *see also City of Rialto v. West Coast Loading Corp.*, 581 F.3d 865, 877 (9th Cir. 2009) (*McNary*'s reasoning was inapplicable to a

"pattern and practice" claim that sought the same invalidation of the unreviewable agency decision as successful direct review).

Even if the merits of the policy-and-practice claim were reviewable, the Government is likely to succeed.  The Secretary exercised a "power [] no greater than that delegated to it by Congress." *Lyng v. Payne*, 476 U.S. 926, 937 (1986); *see also Transohio Sav. Bank v. Dir., Office of Thrift Supervision*, 967 F.2d 598, 621 (D.C. Cir. 1992) ("It is central to the real meaning of the rule of law . . . that a federal agency does not have the power to act unless Congress, by statute, has empowered it to do so.").  The Secretary decided to terminate TPS designations for countries that have come up for review, but nothing requires that there be countries designated for TPS at any given moment.   Indeed, Congress went out of its way to require the Secretary to revisit prior designations periodically.  *See* 8 U.S.C. § 1254a(b)(3)(A) (requiring the Secretary to review the original designation decision and determine whether those conditions "continue to be met").  Congress contemplated a world in which a country or multiple countries would lose their TPS designation.  *See, e.g.*, 101 Cong. Rec. 25845 (Floor Statement by Congressman Morrison) (acknowledging that TPS would "actually set a time limit on [beneficiaries'] continued presence in the United States and to have their names, and to know their addresses by the registration provisions, so that as the period expires, we can then take the necessary steps to send these individuals home").  The mere existence of multiple decisions in the same direction does not suggest dysfunction; otherwise, the fact that the Biden Administration renewed every TPS designation it reviewed, for four years, would be equally suggestive of failure to objectively follow the legal process. And "a court may not set aside an agency's policymaking decision solely because it may have been prompted by Administration priorities." *Dep't of Com. v. N.Y.*, 588 U.S. 752, 781 (2019).

Additionally, Congress afforded the Secretary the authority to invoke "national interest" considerations when terminating a country's TPS designation.  *See* 8 U.S.C. § 1254a(b)(1)(C).  In doing so, Congress codified the principle that the country can and must speak with one voice when it comes to immigration.  *See Zadvydas v. Davis*, 533 U.S. 678, 700 (2001).  By finding that the continued presence of Haitian TPS holders, which represents the individuals before this Court, and other TPS holders is contrary to the national interest, the Secretary is ensuring consistency that the nation is indeed speaking with one voice on these matters.  Also, even if the Court is unpersuaded by that argument, the Supreme Court has already upheld Executive action that targets specific countries for immigration consequences when reviewing a constitutional challenge.  *See Trump v. Hawaii*, 585 U.S. 667, 710 (2018) (upholding Proclamation banning aliens from certain countries from entering the United States).

### 3.    The Government is likely to succeed because the decision was not preordained and a preordained decision would not violate the APA.

The Court concluded that the decision to terminate Haiti's TPS designation was "preordained," and that it thus violated the APA. *See* Mem. Op. at 63-64.  Yet the Federal Register Notice and Certified Administrative Record demonstrate that the Secretary here made a decision based on evidence and information before her, rendering this an independent decision. Additionally, the Supreme Court has confirmed that "[i]t is hardly improper for an agency head to come into office with policy preferences and ideas, discuss them with affected parties, sound out other agencies for support, and work with staff attorneys to substantiate the legal basis for a preferred policy."  *Dep't of Com.*, 588 U.S. at 783.  Because "[a]gencies are bound to follow binding executive orders unless rescinded or overridden through lawful procedures," *N. Am.'s Bldg. Trades Unions v. Dep't of Def.*, 783 F. Supp. 3d 290, 310 (D.D.C. 2025), the Court cannot fault the Secretary for acting consistently with those orders.

**4.      The Government is likely to succeed in arguing that Plaintiffs'
arbitrary-and-capricious claim fails.**

Even setting aside reviewability problems, *see supra* at XXX, the Government is likely to
succeed on appeal because the Court erred in finding the Secretary's termination decision was
arbitrary and capricious. *See* Mem. Op. at 48- 63. "The scope of review under the 'arbitrary and
capricious' standard is narrow and a court is not to substitute its judgment for that of the
agency." *Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29,
43 (1983). That is precisely what the Court did here.

It impermissibly "reweigh[ed] the conflicting evidence." *Ind. Mun. Power Agency v.
FERC*, 56 F.3d 247, 254 (D.C. Cir. 1995). The Court looked at the country conditions in Haiti and
described it as a "country in chaos and crisis," effectively taking on the role as a foreign policy
expert. But in doing so, the Court reached its own conclusion based on its review of the evidence,
and that it cannot do. *Pub. Citizen Health Res. Grp. v. Tyson*, 796 F.2d 1479, 1495 (D.C. Cir.
1986). The Court cannot look to facts and factors, accept Plaintiffs' reading of those points, and
decide that those should outweigh what the Secretary considered. *See Baystate Franklin Med. Ctr.
v. Azar*, 950 F.3d 84, 90 (D.C. Cir. 2020) (rejecting request to consider the appellant's proffered
data because there was no indicated that it was "the most reliable data" available). Nor can the
Court discount the Secretary's consideration of future improvement within Haiti when deciding
that termination of TPS was warranted. *See* 8 U.S.C. § 1254a(b)(3)(B) (requiring that a TPS
termination decision not take effect for 60 days).

Finally, the Court improperly engaged with issues of national interest and how the
Secretary weighed those against foreign policy and immigration policy interests. *See Islamic Am.
Relief Agency v. Gonzales*, 477 F.3d 728, 734 (D.C. Cir. 2007) (confirming that "extreme"
deferential review is required "in an area at the intersection of national security, foreign policy,

and administrative law"); *see also Olenga v. Gacki*, 507 F. Supp. 3d 260, 280 (D.D.C. 2020) (noting that arbitrary-and-capricious review is deferential already, but it is even more deferential "where matters of foreign policy and national security are concerned").

### C.      The Government is Likely to Succeed in its Constitutional Arguments.

#### 1.      <u>The Court Applied the Wrong Standard.</u>

The Government is likely to succeed in arguing on appeal that *Village of Arlington Heights v. Metropolitan Hous. Dev. Corp.*, 429 U.S. 252 (1977), does not apply to this case.  *See* Mem. Op. at 64-66.  That is because the Court overlooked the Supreme Court's observation that "the responsibility for regulating the relationship between the United States and our alien visitors has been committed to the political branches of the Federal Government."  *Mathews v. Diaz*, 426 U.S. 67, 81 (1976).  Therefore, the Court erred in looking at the record in finding that *Arlington Heights* is the standard.  *Compare* Mem. Op. at 66 *with Doc Soc'y v. Blinken*, Civ. A. No. 19-3632 (TJK), 2023 WL 5174304, at \*19 (D.D.C. Aug. 11, 2023) (stating that *Mandel* review "is categorical," "depend[ing] on the type of 'decision[] made by the Congress or the President"), *rev'd in part on other grounds, vacated in part sub nom. Doc Soc'y v. Rubio*, 141 F.4th 1273 (D.C. Cir. 2025).

Moreover, the *Arlington Heights* standard runs contrary to the TPS statute itself, which *requires* discriminatory action based on foreign origin.  And the D.C. Circuit has already recognized that drawing country-based distinctions is permissible. *See Narenji v. Civiletti*, 617 F.2d 745, 747 (D.C. Cir. 1979) ("Distinctions on the basis of nationality may be drawn in the immigration field by the Congress or the Executive. So long as such distinctions are not wholly irrational they must be sustained." (citations omitted)).

**2.    The Government is likely to succeed on appeal regardless of the standard.**

The Court considered the President's statements when finding a likelihood of success on Plaintiffs' constitutional claims.  *See* Mem. Op. at 67-70.  But the Supreme Court declared that statements made "remote in time and [] in unrelated contexts" "do not qualify as 'contemporary statements' probative of the decision at issue."  *DHS v. Regents of the Univ. of Cal.*, 591 U.S. 1, 35 (2020) (quoting *Arlington Heights*, 429 U.S. at 268); *Hawaii*, 585 U.S. at 708 ("The Executive's evaluation of the underlying facts is entitled to appropriate weight, particularly in the context of litigation involving "sensitive and weighty interests of national security and foreign affairs.").  As for post-inauguration statements, a president maintains "broad powers to speak on matters of public concern" including "a vast array of activities that touch on nearly every aspect of American life."  *Trump v. United States*, 603 U.S. 593, 626-29 (2024).

The Court accepted Plaintiffs' "cat's paw" theory and held that the President influenced the Secretary's decision. *See* Mem. Op. at 69-72.  That is not a viable legal theory, especially in the TPS context. *See Ramos v. Wolf*, 975 F.3d 872, 897 (9th Cir. 2020) ("We doubt that the 'cat's paw' doctrine of employer liability in discrimination cases can be transposed to th[e] particular context" of TPS terminations), *reh'g en banc granted, opinion vacated*, 59 F.4th 1010 (9th Cir. 2023); *see also Staub v. Proctor Hosp.*, 562 U.S. 411, 418 (2011).  Such a theory opens the door to impermissible intrusion on privileged Executive Branch deliberations, *see United States v. Nixon*, 418 U.S. 683, 708 (1974), and potential litigation-driven discovery that would disrupt a president's execution of the laws, *see Nixon v. Fitzgerald*, 457 U.S. 731, 749-750 (1982).

**D.    The Court's Order is Overbroad.**

The Court erred in granting universal relief when only five plaintiffs are currently before it.  The Supreme Court has made clear that unlimited preliminary injunctive relief, untethered to

the plaintiffs in a litigation, is unlawful.   Specifically, the Supreme Court has ruled that a "universal injunction . . . falls outside the bounds of a federal court's equitable authority under the Judiciary Act." *Trump v. CASA, Inc.*, 606 U.S. 831, 847 (2025).  At most, a court "may administer complete relief between the parties" and should not go beyond that to enjoin action or implementation more broadly.  *Id.* at 851 (quoting *Kinney-Coastal Oil Co. v. Kieffer*, 277 U.S. 488, 507 (1928)).

Relief under § 705 is no different from a traditional form of equitable relief.  And when a court grants interim relief under that provision, it must adhere to the traditional equitable principle that equitable remedies "should be no more burdensome to the defendant than necessary to provide complete relief to the plaintiffs."  *CASA*, 606 U.S. at 852 (citation and emphasis omitted).  The Ninth Circuit recently concluded as much, and "limit[ed a] district court's § 705 Stay order" to a plaintiff's clients on the basis that CASA's "complete-relief principle provides some useful guidance for crafting interim equitable relief" in § 705 cases, which use the same traditional equitable principles that govern the preliminary injunctions at issue in *CASA*.  *Immigrant Defs. L. Ctr. v. Noem*, 145 F.4th 972, 995-96 (9th Cir. 2025).

The Court expressly declined to rule on Plaintiffs' motion for class certification. *See* Min. Order, Feb. 3, 2026.  Therefore, the Government is likely to succeed in maintaining that relief under § 705 should be and is limited *only* to the five named plaintiffs.

**E.    The District Court's Stay Order Violates 8 U.S.C. § 1252(f)(1).**

This Court granted relief that enjoins or at the very least restrains the Government's ability to enforce the Secretary's decision to terminate Haiti's TPS designation.  That relief squarely falls within the limitation imposed by § 1252(f)(1), and this Court respectfully lacked the authority to grant such relief.

Section 1252(f)(1) strips courts "(other than the Supreme Court)" of "jurisdiction or authority" to "enjoin or restrain the operation of" INA provisions, "other than with respect to the application of such provisions to an individual alien against whom proceedings . . . have been initiated." The TPS statute is such a provision, and this Court erred in holding otherwise. The TPS statute is a covered provision because Congress placed it in Chapter 4 of Title II of the INA—the chapter that § 1252(f)(1) shields. IIRIRA, div. C, Pub. L. No. 104-208, §§ 306, 308, 110 Stat. 3009-546 (1996). In holding that the TPS statue is not a covered provision, the Court ignored the Ninth Circuit's recognition otherwise. *See Nat'l TPS All. v. Noem*, 150 F.4th 1000, 1018 & n.8 (9th Cir. 2025).

Second, respectfully, the Court erred in holding that the TPS statute cannot fall under § 1252(f)(1)'s ambit because it does not "concern an order of removal." Mem. Op. at 29. The D.C. Circuit has not read § 1252(f)(1) as covering only orders of removal and indeed has applied it to the act of detention. *See N.S. v. Dixon*, 141 F.4th 279, 289 (D.C. Cir. 2025) ("As a result, we conclude the injunction in this case implicates provisions to which § 1252(f)(1) applies: It prevents the Marshals from arresting and detaining any criminal defendant in the D.C. Superior Court for a suspected civil immigration violation, including arrests made pursuant either to an ICE detainer and I-200 form or pursuant to an ICE detainer alone."). That is also why the Court erred in reading § 1252(f)(1) as applying "only to individualized immigration adjudications." Mem. Op. at 27.

The Government is also likely to succeed on appeal because the Court erred in finding that § 1252(f)(1) does not affect the "operation of" the TPS statue. Mem. Op. at 30-31. Whether it be the relief afforded under § 705 or the "set aside" relief requested in the complaint, the Court's orders would tell the Secretary that the TPS termination decision cannot go into effect. Put another

way, it would impact "the Government's efforts to enforce or implement" the TPS decision as provided for by the TPS statute. *Garland v. Aleman-Gonzalez*, 596 U.S. 543, 550 (2022).

The Court's § 705 Order by itself "enjoins" or at the very least "restrains" the Government's operation of the TPS statute. But even the request to set aside the TPS decision would be covered. In staying the termination decision, this Court has issued a coercive order that tells someone what to do or not to do," "direct[ing] the conduct of a party . . . with the backing of its full coercive powers." *Nken*, 556 U.S. at 428. It is an order that operates "'*in personam*.'" *Id.* (quoting Black's Law Dictionary 800 (6th ed.1990)). In holding that relief under the APA, whether it be vacatur or a stay under § 705, is different from traditional equitable principles, the Court ignored that APA relief stems from traditional equitable powers and is therefore covered by § 1252(f)(1). *See* Defs.' Opp'n to Pls' Mot. for § 705 Relief (ECF No.92) at 19-21.

## II. The Government Is Entitled to a Stay Because It Will Suffer Irreparable Harm Absent a Stay and the Equitable Factors Favor It.

In evaluating whether to stay its § 705 order, the Court must evaluate whether the Government is likely to suffer irreparable harm absent a stay and whether the balance of equities tips in the Government's favor. The Supreme Court has already twice answered those questions in TPS litigation, and it has twice concluded that the Government is entitled to a stay. *Noem v. Nat'l TPS Alliance*, 145 S. Ct. 2728, 2728-29 (2025) (staying §705 order); *Noem v. Nat'l TPS Alliance*, No. 25A326, 2025 WL 2812732, *1 (Oct. 3, 2025) (staying §706 order). The Supreme Court's stay orders involved substantially similar issues (the reviewability and lawfulness of a TPS termination), and this Court must follow those informative decisions to resolve this substantially similar stay request. *See Trump v. Boyle*, 145 S. Ct. 2653, 2654 (2025); *Nat'l TPS Alliance*, 2025 WL 2812732, at *1 ("Although the posture of the case has changed, the parties' legal arguments

- 13 -

and relative harms generally have not. The same result that we reached in May is appropriate here.").

Those results accord with D.C. Circuit precedent establishing that the Government will be irreparably harmed without a stay. The D.C. Circuit has recognized that orders like the Court's "inflict[] irreparable harm on the [Secretary of Homeland Security] by interfering with the national-security" and national interest "determinations entrusted to [her] by Congress." *Am. Foreign Serv. Ass'n v. Trump*, No. 25-5184, 2025 U.S. App. LEXIS 15297, at *9 (D.C. Cir. June 20, 2025). The Court's order operates as "an improper intrusion by a federal court into the workings of a coordinate branch of the Government." *INS v. Legalization Assistance Project*, 510 U.S. 1301, 1305-1306 (1993). That is especially so when Congress delegated the Secretary "sole and unreviewable" discretion to make this determination. *Make the Road N.Y. v. Wolf*, 962 F.3d 612, 632 (D.C. Cir. 2020). Finally, as the Supreme Court has recognized, "the obvious necessity that the Nation speak with one voice" on such matters. *Zadvydas v. Davis*, 533 U.S. 678, 711 (2001).

The remaining factors, which merge where the Government seeks a stay, likewise weigh decisively in the Government's favor. *MediNatura, Inc. v. FDA*, 998 F.3d 931, 945 (D.C. Cir. 2021); *see also Nken*, 556 U.S. at 435. The government and public share an interest in ensuring adherence to the process established by Congress, under which the Secretary has unreviewable authority over TPS designations. *See Maryland v. King*, 567 U.S. 1301, 1303 (2012) (Roberts, C.J., in chambers) ("Any time a State is enjoined by a court from effectuating statutes enacted by representatives of its people, it suffers a form of irreparable injury."). Here, the Government is being restrained from effectuating the Secretary's termination decision, and that both establishes irreparable harm and shows that the public interest is harmed.

On the other side of the balance are the Plaintiffs' asserted harms. The Court rejected the Government's argument that Plaintiffs' irreparable harms—potential removal and potential loss of employment authorization—are inherent in the statutory scheme *Congress* designed, which provides "temporary" status. *See* Mem. Op. at 77-78. In doing so, the Court contravened Congress' intent. *See* 8 U.S.C. § 1254a(b)(1)(B)(i), (ii), (C), and (g).

Additionally, the Government is likely to succeed in arguing on appeal that Plaintiffs are not going to suffer irreparable harm. For starters, Plaintiffs have demonstrated that there is nothing that stops them from affirmatively seeking relief from removal by way of filing applications with U.S. Citizenship and Immigration Services. *See* Declaration of Daniel Andrade ("Andrade Decl.") (ECF No. 68-1) ¶ 7. None of the Plaintiffs alleged that they have outstanding removal orders. Therefore, the Government is likely to prevail on its argument that Plaintiffs' fear is based on conjecture and nothing else. *See* Mem. Op. at 75.

Moreover, none of the Plaintiffs alleges that they could not obtain review of their fear of return to Haiti in removal proceedings if such proceedings were to be commenced. If so, then Plaintiffs can present fear claims before an immigration judge, appeal an adverse ruling to the Board of Immigration Appeals, and file a petition for review with the appropriate court of appeals. 8 U.S.C. § 1252(a)(5), (b)(9); *see also Verde-Rodriguez v. Att'y Gen.*, 734 F.3d 198, 201 (3d Cir. 2013); *see also J.E.F.M. v. Lynch*, 837 F.3d 1026, 1031 (9th Cir. 2016) ("Taken together, § 1252(a)(5) and § 1252(b)(9) mean that any issue – whether legal or factual – arising from any removal-related activity can be reviewed only through the [petition-for-review] process."). Because an alternative scheme remains available to obtain review, Plaintiffs did not properly establish irreparable harm. *See Chaplaincy of Full Gospel Churches v. England*, 454 F.3d 290, 298 (D.C. Cir. 2006). The Court also erred in finding that loss of employment is also irreparable

harm. *See Davis v. Pension Ben. Guar. Corp.*, 571 F.3d 1288, 1295 (D.C. Cir. 2009); *see also Zeng v. Mayorkas*, Civ. A. No. 21-446 (DLF), 2021 U.S. Dist. LEXIS 111323, at *4 (D.D.C. Apr. 16, 2021); *Muvvala v. Wolf*, Civ. A. No. 20-2423 (CJN), 2020 U.S. Dist. LEXIS 177082, at *6 (D.D.C. Sept. 25, 2020); *Verma v. U.S. Citizenship & Immigr. Servs.*, Civ. A. No. 20-3419 (RDM), 2020 U.S. Dist. LEXIS 239157, at *6-7 (D.D.C. Dec. 18, 2020).

By relying on stale declarations, the Court effectively found that Plaintiffs harm from months ago are the same harm that they suffer today. *See Corp. for Pub. Broad. v. FEMA*, 792 F. Supp. 3d 67, 77 (D.D.C. 2025) (declining to consider "stale" declarations when assessing irreparable harm); *cf. Open Top Sightseeing USA Mr. Sightseeing, LLC*, 48 F. Supp. 3d 87, 90 (D.D.C. 2014); *Mylan Pharms., Inc. v. Shalala*, 81 F. Supp. 2d 30, 44 (D.D.C. 2000) (delay of two months in bringing action "militates against a finding of irreparable harm"); *Biovail Corp. v. FDA*, 448 F. Supp. 2d 154, 165 (D.D.C. 2006) ("The delay in filing this suit further undermines any showing of irreparable injury").

\*　　\*　　\*

Declining to issue a stay would result in "an improper intrusion by a federal court into the workings of a coordinate branch of the Government." *Legalization Assistance Project*, 510 U.S. at 1305-1306.  The Court's Order overrides the Secretary's considered judgment and instead permits Haiti's TPS designation to continue when the Secretary has determined that there are no "extraordinary and temporary conditions in [Haiti]" preventing Haitian nationals from safely returning *and* that permitting the aliens to remain temporarily in the United States is "contrary to the national interest of the United States." 8 U.S.C. § 1254a(b)(1)(C), (b)(3)(B).

**CONCLUSION**

For the foregoing reasons, the Court should stay for the pendency of the appeal of its order granting Plaintiffs extraordinary relief.

Dated: February 5, 2026

Respectfully submitted,

JEANINE FERRIS PIRRO
United States Attorney

By: _____ */s/ Dhruman Y. Sampat* _____
    DHRUMAN Y. SAMPAT
    AMANDA L. TORRES
    Assistant United States Attorneys
    601 D Street, NW
    Washington, DC 20530
    (202) 252-2525 (Sampat)
    (202) 252-2507 (Torres)
    dhruman.sampat@usdoj.gov
    amanda.torres@usdoj.gov

    *Attorneys for the United States of America*