# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| **FRITZ EMMANUEL LESLY MIOT;**<br>**RUDOLPH CIVIL; MARLENE GAIL**<br>**NOBLE; MARICA MERLINE LAGUERRE;**<br>**and VILBRUN DORSAINVIL,**<br><br>          *Plaintiffs*,<br><br>     v.<br><br>**DONALD J. TRUMP, President of the United**<br>**States of America; UNITED STATES OF**<br>**AMERICA; THE DEPARTMENT OF**<br>**HOMELAND SECURITY; and KRISTI**<br>**NOEM, Secretary of Homeland Security.**<br><br>          *Defendants*. | Case No. 1:25-cv-02471 |

## PLAINTIFFS' RESPONSE IN OPPOSITION TO DEFENDANTS' MOTION TO STAY COURT'S ORDER GRANTING RELIEF UNDER 5 U.S.C. § 705

The Government seeks a stay of the Court's order staying Secretary Noem's decision to terminate of Haiti's TPS designation under 5 U.S.C. § 705. ECF 126. But for the Court's order, that decision would have gone into effect on February 3 and immediately made more than 350,000 currently lawful Haitian migrants removable to a country that has aptly been described as "a maelstrom of disease, poverty, violence (including sexual violence) and death."[1] Indeed, just last week, the dead bodies of four Haitian women who were recently deported to Haiti from Puerto Rico were found in a river; the women had been beheaded.[2]

Instead of offering concrete evidence supporting its own claims of irreparable harm, explaining why Haitian TPS holders have no reason to fear for their lives while its appeal plays out, or giving the Court a reason to believe it will prevail on appeal, the Government relies on a familiar blend of conjecture, obfuscation, and self-repetition—this time in hopes the Court will volunteer to reverse itself. But an application for a stay pending appeal is not a motion for reconsideration, and even if it was, the Government's application does nothing but regurgitate the arguments that the Court rightly rejected the first time around. The Court should deny the application.

## ARGUMENT

### I.    The Government has offered no concrete evidence that it will suffer irreparable harm absent a stay of the Court's order.

The Government's failure to identify any evidence of irreparable harm renders its motion immediately suspect. According to the Government, the Court's order will inflict irreparable harm

---

[1]    George F. Will, *A federal judge schools chaotic Kristi Noem*, WASHINGTON POST(Feb. 6, 2026), https://www.washingtonpost.com/opinions/2026/02/06/reyes-noem-haitians-trump/.

[2]    Hector Rios Morales, *Four Haitian Women Were Deported From Puerto Rico; They Have Now Been Founded Decapitated*, LATIN TIMES (Feb. 4, 2026), https://www.latintimes.com/four-haitian-women-were-deported-puerto-rico-they-have-now-been-found-decapitated-594261.

absent a stay because it "operates as an improper intrusion … into the workings of a coordinate branch of the Government." ECF 126 at 14 (citation omitted). But, as the Court itself noted the very next day, the Government omits "any concrete example of how the Court does so." 2/6/2026 Minute Order. Instead, the Government simply cites the Supreme Court's summary grants of stay applications in another TPS case to argue that the Supreme Court has "already twice" held that the denial of a stay will cause irreparable harm. ECF 126 at 13 (citing *Noem v. Nat'l TPS Alliance*, 145 S. Ct. 2728 (2025); *Noem v. Nat'l TPS Alliance*, 146 S. Ct. 23 (2025) ("*NTPSA* orders")). It hasn't.

Indeed, courts regularly reject the precedential value of the Supreme Court's emergency docket decisions as "neither binding nor persuasive" because they often "provide[] no reasoning and [are] thus too vague to apply." *Arenado-Borges v. Bondi*, 2025 WL 3687518, at *5 (W.D. Wash. 2025). And rightly so given the Supreme Court's own acknowledged departures from the traditional four-factor test in issuing emergency stays. *See, e.g.*, *Gloucester Cnty. School Bd. v. G.G. ex rel. Grimm*, 579 U.S. 961, 961 (2016) (Breyer, J., concurring) (agreeing to provide fifth vote to grant stay application "as a courtesy"); *Arthur v. Dunn*, 580 U.S. 977, 977 (2016) (Roberts, C.J., concurring) (agreeing to provide fifth vote to grant stay application "as a courtesy" even though "I do not believe that this application meets our ordinary criteria for a stay"). Such unreasoned decisions, even those involving "a similar case," "do[] nothing more than show a possibility of relief."[3] *Dodds v. U.S. Dept. of Educ.*, 845 F.3d 217, 221 (6th Cir. 2016).

---

[3]    This comports with the Supreme Court's longstanding doctrine that its summary decisions "have considerably less precedential value than an opinion on the merits." *Illinois State Bd. of Elections v. Socialist Workers Party*, 440 U.S. 173, 180–81 (1979); *accord Comptroller of Treasury of Md. v. Wynne*, 575 U.S. 542, 559–60 (2015).

The Supreme Court's entirely unexplained decisions in the *NTPSA* orders are no exception. Although the Supreme Court did in fact grant the stay applications in both cases, "it is unclear why the Court determined a stay should be granted" in either one. *Nguyen v. Scott*, 796 F. Supp. 3d 703, 732 (W.D. Wash. 2025); *see also Woonasquatucket River Watershed Council v. U.S. Dept. of Agriculture*, 778 F. Supp. 3d 440, 466 n.6 (D.R.I. 2025) (noting the "challenges of pinning down the precedential effects of emergency decisions" given their summary nature). Neither decision so much as mentions, much less analyzes "irreparable harm" before granting the stay application. Nor does the Government hazard an explanation before insisting that "this Court must follow those informative decisions to resolve this substantially similar stay request." ECF 126 at 13.

The Supreme Court's order granting a stay in *Trump v. Boyle*, 145 S. Ct. 2653 (2025), does not raise the profile of the *NTPSA* orders either. Instead, it reinforces the rule that vague and unreasoned interim stay orders are "neither binding nor persuasive." *Arenado-Borges*, 2025 WL 3687518, at *5. To be sure, *Boyle* instructs that the Supreme Court's interim stay orders "inform how a court should exercise its equitable discretion in like cases." 145 S. Ct. at 2654. But the informative interim order there expressly stated the Supreme Court's view "that the Government faces greater risk of harm from an order allowing a removed officer to continue exercising the executive power than a wrongfully removed officer faces from being unable to perform her statutory duty." *Id.* (quoting *Trump v. Wilcox*, 145 S. Ct. 1415, 1415 (2025)). *Wilcox* even provided a reason: "to avoid the disruptive effect of the repeated removal and reinstatement of officers during the pendency of this litigation." 145 S. Ct. at 1415. Not so here.

The *NTPSA* orders include no findings and offer no explanation—just a conclusion that the district court's orders were stayed. Unlike the "short opinion" in *Wilcox* that "squarely controlled" the analysis in *Boyle*, the *NTPSA* orders "provide[] no analysis at all," meaning courts "can only

guess as to the [Supreme] Court's rationale." *National TPS Alliance v. Noem*, 163 F.4th 1152, 1158 (9th Cir. 2025) (distinguishing *Boyle* and denying government's stay application); *cf. Am. Ass'n of Physics Teachers, Inc. v. Nat'l Science Found.*, 805 F. Supp. 3d 45, 64 (D.D.C. 2025) (applying *Boyle* to stay orders where "the reasoning in those decisions is decidedly instructive"). Because the *NTPSA* orders "do[] not identify the dispositive issue or issues" and "could have rested on several possible grounds," this Court "cannot determine how the Supreme Court would have resolved the issue" here. *League of United Latin Am. Citizens v. Exec. Office of the President*, __ F. Supp. 3d __, 2026 WL 252420, at *52 (D.D.C. 2026) (distinguishing *Boyle*).

The Government also misplaces its reliance on the D.C. Circuit's unpublished per curiam decision in *American Foreign Service Association v. Trump ("AFSA")*, 2025 U.S. App. LEXIS 15297 (D.C. Cir. 2025). The court found that the preliminary injunction there "inflicts irreparable harm" by interfering with the President's express statutory authority to exclude USAID from the collective bargaining requirements of the Foreign Service Act, *id.* at *8, which the Act expressly allows him to do if he deems that it is "necessary in the interest of national security because of an emergency." 22 U.S.C. § 4103(b). But that pronouncement says nothing about the harm caused by setting aside Secretary Noem's decision to refuse a TPS designation because she decided doing so would be "contrary to the national interest of the United States." 8 U.S.C. § 1254a(b)(1)(C).

For starters, unlike Secretary Noem's TPS designation decisions, the action complained of in *AFSA* was "that of the President, and the President is not an agency within the meaning of the [Administrative Procedure] Act," which means there was "no agency action that may be reviewed under APA standards." *Franklin v. Massachusetts*, 505 U.S. 788, 796 (1992). Furthermore, although courts cannot reexamine executive decisions regarding the "narrow" concept of "national security," *Cole v. Young*, 351 U.S. 536, 544 (1956), nothing compels this Court "to give unlimited

deference to the broad concept of national *interest*." *Wilmer Cutler Pickering Hale & Dorr LLP v. Exec. Office of President*, 784 F. Supp. 3d 127, 149 (D.D.C. 2025) (emphasis added). In fact, courts have rejected this particular President's "startlingly broad application of 'national security'" (a term which, again, the TPS statute omits) to "encompass[] those activities of Government which contribute to the strength of the Nation only through their impact on the general welfare." *National Treasury Emps. Union v. Trump*, 780 F. Supp. 3d 237, 262 (D.D.C. 2025). This Court should do the same.

The "obvious necessity that the Nation speak with one voice" does not mean it never has to explain itself. *See Zadvydas v. Davis*, 533 U.S. 678, 711 (2001). In this instance, it does not exempt the Government from its obligation to demonstrate with evidence how the denial of a stay here would inflict irreparable harm. The Government nevertheless has "provided *zero evidence—or argument—of irreparable injury.*" *National TPS Alliance v. Noem*, __ F.4th __, 2025 WL 2661556, at *6 (9th Cir. 2025) (denying stay pending appeal of order setting aside Secretary Noem's "partial vacatur" of Venezuelan TPS). The only injury the Government identifies is the delay that is "often cause[d]" by an order setting aside administrative action. *Texas v. United States*, 787 F.3d 733, 768 (5th Cir. 2015). "It is well established that the mere existence of the Executive Branch's desire to enact a policy is not sufficient to satisfy the irreparable harm prong." *Immigration Defenders Law Ctr. v. Noem ("IDLC")*, 145 F.4th 972, 985 (9th Cir. 2025). The Government instead "can resume work if it prevails on the merits." *Texas*, 787 F.3d at 768.

Indeed, Tuesday's declaration from ICE Assistant Director Liana Castano (ECF 129) confirms that the Court's order has not inhibited the Government's ability to do its work and, thus, "offers no 'concrete evidence of prejudice'" to the Government, *Pablo Sequen v. Albarran*, __ F. Supp. 3d. __, 2025 WL 3724878, at *19 (N.D. Cal. 2025) (quoting *IDLC* 145 F.4th at 985), much

less any explanation for the Government's threadbare assertion that the Court's order "operates as an improper intrusion … into the workings of a coordinate branch of the Government." ECF 126 at 14. Just the opposite: the declaration confirms that the Court's order has had a negligible impact on ICE operations. Both before and after the order issued, ICE was already and continues to be "engaged in daily enforcement activities across the country, including" those communities that are currently home to Haitian TPS holders. ECF 129 ¶ 3.

## II.    The Government has not made a strong showing that it will likely prevail on appeal.

The Government's motion also fails to make a "strong showing" that it is likely to succeed on the merits of its appeal. *Nken v. Holder*, 556 U.S. 418, 434 (2009); *see also Matter of Forty-Eight Insulations, Inc.*, 115 F.3d 1294, 1301 (7th Cir. 1997) ("[I]n the context of a stay pending appeal, where the applicant's arguments have already been evaluated on the success scale, the applicant must make a stronger threshold showing of likelihood of success to meet his burden."). In fact, the Government "offers little more than a regurgitation of rejected arguments" from its previous briefing. *Shays v. F.E.C.*, 340 F. Supp. 2d 39, 46 (D.D.C. 2004). But "[m]ere repetition" is not a strong showing. *National Ass'n of Mfrs. v. Taylor*, 549 F. Supp. 2d 68, 75 (D.D.C. 2008). "As with a motion for reconsideration, a motion to stay should not be used to relitigate matters, submit new evidence, or raise arguments which could, and should, have been made before the judgment issued." *O'Donnell v. Harris Cnty.*, 260 F. Supp. 3d 810, 815 (S.D. Tex. 2017). The Government "must instead show something more than what it is has argued previously." *In re Wellington*, 631 B.R. 833, 839. (M.D.N.C. Bankr. 2021). It hasn't, so a stay is unwarranted.

### A.    The TPS statute and § 1252(a)(2)(B)(ii) do not bar review.

The Government does not make a strong showing that it is likely to succeed on the merits of its jurisdictional arguments. Its assertion that §§ 1254a and 1252(a)(2)(B)(ii) preclude judicial

review is merely a condensed version of the same arguments it raised in its previous briefing. *Compare* ECF 126 at 2–5, *with* ECF 80 at 6–14, ECF 92 at 5, ECF 99 at 1–3, and ECF 103 at 1–2. But as Plaintiffs have now shown repeatedly, neither statute deprives this Court of jurisdiction because Plaintiffs are not challenging Secretary Noem's decision to terminate Haiti's TPS designation—only the process by which she reached it. ECF 93 at 4–6, 7–15; ECF 100 at 1–3; ECF 108 at 1–2.

### 1.     Plaintiffs do not challenge any "determination" by Secretary Noem.

As the Court correctly observed, the Government's invocation of § 1254a's jurisdictional bar ignores the "distinction between decision and process." *Miot v. Trump*, __ F. Supp. 3d __, 2026 WL 266413, at *10 (D.D.C. 2026). That distinction is dispositive here. Section 1254a(b)(5)(A) bars judicial review only of a "determination," which the Supreme Court repeatedly has held "describes a single act rather than a group of decisions or a practice or procedure employed in making decisions." *McNary v. Haitian Refugee Ctr., Inc.*, 498 U.S. 479, 492 (1991); *accord Reno v. Catholic Soc. Servs., Inc.*, 509 U.S. 43, 56 (1993). But Plaintiffs did not seek, and the Court did not provide, a decision *overriding* Secretary Noem's "single act" of terminating Haiti's TPS designation—over which she has "exclusive authority," as this Court acknowledged. *Miot*, 2026 WL 266413, at *10. Plaintiffs' claims instead "challenge purported deficiencies in Secretary Noem's 'group of decisions,' 'practice,' and 'procedure' in reviewing Haiti's TPS designation." *Id.* (citing *McNary*, 498 U.S. at 492). This is made plain by the relief Plaintiffs sought. Far from seeking a "substantive determination" that they are "entitled to a TPS determination in their favor" or to "compel [the Government] to extend Haiti's TPS determination," Plaintiffs asked only that the Court uphold Secretary Noem's obligation to apply "lawful criteria" *before* she makes that determination. *Saget v. Trump*, 375 F. Supp. 3d 280, 332 (E.D.N.Y. 2019).

The Government's own argument that the Court exceeded its jurisdiction confirms that the Court examined "*how* the Secretary went about making her determination," not the determination itself. *Miot*, 2026 WL 266413, at *10. The Government complains that the Court "substantively reviewed the country conditions in Haiti," ECF at 3, yet it fails to explain how the Court could have evaluated whether Secretary Noem met her obligation to "review the conditions in the foreign state" without doing so. 8 U.S.C. § 1254a(b)(3)(A). It complains that the Court "expressed concerns with the Secretary's decision to *not* consider Haitian TPS holders and economic impacts," ECF at 3, yet it fails to explain how the Court could have evaluated Secretary Noem's *pre-determination* compliance with her own definition of national interest to include "economic considerations (*e.g.*, adverse effects on U.S. workers, impact on U.S. communities)" without doing so. 90 Fed. Reg. 54733, 54735 (Nov. 28, 2025). It complains that "the Court's opinion focuses virtually exclusively on the alleged problems with that specific termination [of TPS for Haiti]," ECF 126 at 3, yet it fails to explain how the Court could have evaluated the antecedent process by which Secretary Noem made her determination without focusing on the termination to which that process applied.

Just as a court of appeals does not violate the trial court's factfinding role by examining the trial record, vacating a verdict based on insufficient evidence, and remanding for a new trial, this Court did not violate Secretary Noem's "excusive authority" to decide whether to terminate Haiti's TPS designation by examining what she considered before making that determination, vacating that decision as procedurally deficient, and requiring Secretary Noem to start over. Section 1254a(b)(5)(A)'s jurisdictional bar thus does not apply.

The Government's reliance on the *NTPSA* orders on this point is equally misplaced. ECF 126 at 2. The orders "provide[] no analysis at all," so the Court "can only guess as to the [Supreme]

Court's rationale." *National TPS Alliance*, 163 F.4th at 1158. Because they are "too vague to apply," they are "neither binding nor persuasive." *Arenado-Borges*, 2025 WL 3687518, at *5.

      **2.**      **The TPS termination is not an individual denial of discretionary relief.**

The Court likewise rightly rejected the Government's invocation of the jurisdictional bar in § 1252(a)(2)(B)(ii), whose application is limited both by basic rules of statutory construction and by binding circuit law to "orders denying discretionary relief in individual cases." *Make the Road N.Y. v. Wolf ("Make the Road I")*, 962 F.3d 612, 630 (D.C. Cir. 2020); *accord Nakka v. U.S.C.I.S.*, 111 F.4th 995, 1015 (9th Cir. 2024) (holding § 1252(a)(2)(B) "strips district courts of jurisdiction to hear a plaintiff's APA claim when that claim challenges an agency's individualized denial of an application for adjustment of status"). Section 1252(a)(2)(B)(ii) does not apply, however, to "challenges to the Secretary's regulations, orders, policies, and directives" where, as here, plaintiffs "claim that the challenged policies violate the Equal Protection guarantee of the federal constitution and the Administrative Procedure Act." *Nakka*, 111 F.4th at 999, 1015 (quoting *Make the Road I*, 962 F.3d at 630). The Government conceded that "the termination of TPS is not a 'denial[] of discretionary relief' and is not an 'individual immigration adjudication,'" ECF 126 at 4, so that ends the matter.

The Government's attempt to "[a]t the very least" insulate Secretary Noem's "'national interest' determinations and findings" from judicial review falls flat. ECF 123 at 4. Not one of the cases cited by the Government held that § 1252(a)(2)(B)(ii) applied merely because a challenged decision involved a "national interest" finding. Rather, the court in each case held that the denial of a national-interest waiver for *individual* work visa applications was a decision committed by statute to USCIS's "discretion" and, thus, subject to § 1252(a)(2)(B)(ii). *See Zhu v. Gonzales*, 411 F.3d 292, 295 (D.C. Cir. 2005) (individual challenges to USCIS denial of labor certification waiver

for work visa applications); *Flores v. Garland*, 72 F.4th 85, 89–90 (5th Cir. 2023) (same); *Brasil v. Sec'y of DHS*, 28 F.4th 1189, 1193–94 (11th Cir. 2022) (per curiam) (same); *Poursina v. USCIS*, 936 F.3d 868, 871 (9th Cir. 2019) (same); *Mousavi v. USCIS*, 828 F. App'x 130, 132–33 (3d Cir. 2020) (same); *Masroor v. Noem*, 2025 WL 2439176, at *2 (D.D.C. 2025) (same). And even then, § 1252(a)(2)(B)(ii) "did not preclude judicial review" of claims that the agency "failed to follow its own procedures," *Brasil*, 28 F.4th at 1194, or caused a "deprivation of due process," *Poursina*, 936 F.3d at 876. Thus, even the Government's overbroad interpretation of § 1252(a)(2)(B)(ii) does not categorically shield Secretary Noem's national interest analysis from scrutiny here.

Although the Court "has no role in second-guessing" that analysis, it could and did assess whether Secretary Noem applied her own definition of "national interest" to "the relevant population: Haitian TPS holders." *Miot*, 2026 WL 266413, at *27. As with Secretary Noem's determination on Haiti's TPS status, the Court was not free to substitute its own national interest assessment for that of Secretary Noem. Nor did it. The Court simply found that Secretary Noem could not "lawfully fail to consider the very factors … that she herself has determined are relevant" to that assessment while choosing instead to rely on "*verifiably* inapposite or false assertion after inapposite or false assertion." *Id.* at *29. The Court accordingly did not exceed its jurisdiction by setting aside Secretary Noem's termination of Haiti's TPS designation on that basis.

All told, Plaintiffs are not challenging Secretary Noem's determination to terminate Haiti's TPS designation or an individual denial of discretionary relief, so neither jurisdictional bar applies. It follows that the Government has not made a strong showing that it is likely to prevail on its jurisdictional arguments on appeal.

**B.      Plaintiffs have plausibly alleged and are likely to prevail on their APA claims.**

The Government's arguments attacking Plaintiffs' APA claims likewise have already been

raised and rejected and, thus, fall far short of the strong showing required to support a stay.

**1.      Plaintiffs have already shown they will likely succeed on their policy-and-practice claim.**

The Government's challenges to the merits of Plaintiffs' policy-and-practice claim remain

the same. *Compare* ECF 126 at 5–7, *with* ECF 103 at 7–10. The Government continues to press

the temporary nature of TPS by reiterating its previous argument that "nothing requires that there

be countries designated for TPS at any given moment." ECF 126 at 6. But as Plaintiffs explained

before, that is irrelevant. ECF 108 at 6. The operative inquiry here is whether Secretary Noem

satisfied the prerequisites under § 1254a(b)(3)(A) before making the determination to terminate

Haiti's TPS designation. The Court agreed. Although the TPS statute does not compel the

designation of any country for TPS, "neither does the statute authorize, let alone mandate, the end

of a country's designation merely because the Secretary believes it has gone on for some time."

*Miot*, 2026 WL 266413, at *36. The Government's argument accordingly fails (again).

The same goes for the argument that Secretary Noem's ability to invoke "national interest"

considerations defeats Plaintiffs' policy-and-practice claim. ECF 126 at 7. As Plaintiffs explained,

what is in the national interest is not part of the periodic review required by § 1254a(b)(3)(A). ECF

108 at 6, 8. And even if it was, Secretary Noem was not free sidestep the periodic review process

by defining "national interest" to enact an across-the-board termination of all TPS designations.

*Id.* at 6, 10. Nor does the commission of crimes by some TPS holders, which the statute already

addresses by withdrawing TPS status for individuals convicted of a felony or two misdemeanors,

§ 1254a(c)(3), allow her to deem a TPS designation contrary to the national interest. *Id.* at 10.

The Court rightly rejected these arguments the first time around in finding that Plaintiffs would likely prevail on their policy-and-practice claims. Secretary Noem's "unprecedented" decision to terminate every TPS designation that has come up for consideration without first consulting with the appropriate agencies as required by the TPS statute suggested a "pattern and practice" of ignoring the law in service of the President's priorities in violation of the APA. *Miot*, 2026 WL 266413, at *23–24. The "Nation's need to 'speak with one voice' in immigration matters" does not change that. ECF 126 at 7 (quoting *Zadvydas*, 533 U.S. at 700). The Court "can take appropriate account" of Executive Branch authority over immigration "without abdicating [its] responsibility to review the lawfulness" of Secretary Noem's actions. *Zadvydas*, 533 U.S. at 700.

### 2. The preordained termination of TPS for Haiti violated the APA.

The Government's internally contradictory argument that Secretary Noem's termination of TPS for Haiti was both "an independent decision" and one she was "bound" by executive order to make still rings hollow. ECF 126 at 7. Either way, and as Plaintiffs have explained repeatedly, Secretary Noem's demonstrated failure to conduct a good-faith, evidence-based, country-specific review before terminating Haiti's TPS designation bespeaks a preordained, politically motivated result that runs afoul of the APA. ECF 81 at 37; ECF 93 at 22–24; ECF 100 at 9–10. The "deference" owed agency decisions does not mean the Court was "required to exhibit a naiveté from which ordinary citizens are free." *Department of Com. v. New York*, 588 U.S. 752, 785 (2019). The Court agreed. The combination of Secretary Noem's decision to follow the President's directive to terminate without conducting the statutorily mandated analysis, her termination of every TPS designation that has come up for review, her refusal to consult the appropriate agencies, and her naked generalizations about Haitian migrants confirm that she "preordained the result." *Miot*, 2026 WL 266413, at *29.

### 3. Plaintiffs have already shown they will likely succeed on their arbitrary-and-capricious claim.

The Government also fails to overcome the Court's finding that Plaintiffs have stated and will likely prevail on their arbitrary-and-capricious claim. The Government's argument that the Court "impermissibly 'reweigh[ed] the conflict evidence,'" ECF 126 at 8, mirrors its prior assertion that the Court cannot "reweigh the conflict evidence" and "substitute its judgment" for Secretary Noem's. ECF 92 at 19. But, as explained both above and in Plaintiffs' briefing, examining and comparing the evidence that was available to Secretary Noem to that which she considered falls squarely within the Court's role under the APA. ECF 93 at 24–25; ECF 100 at 12–13. Indeed, it was required. As the Court explained, although it could not "second-guess the Secretary's decision or reweigh the conflicting evidence," the Court was required by law to assess whether that decision "was reasoned, principled, and based upon the record." *Miot*, 2026 WL 266413, at *24 (quoting *Louisville Gas & Elec. Co. v. FERC*, 149 F.4th 693, 701 (D.C. Cir. 2025). And that's what it did.

Secretary Noem's invocation of the "national interest" did not alter the Court's obligation. The Government offers no support for its vague assertion that the Court "improperly engaged with issues of national interest and how the Secretary weighed those against foreign policy and immigration policy interests." ECF 126 at 8–9. Nor does the Court's decision reveal any such overreach. Instead, as explained above, the Court simply asked whether Secretary Noem applied her own definition of "national interest" to "the relevant population: Haitian TPS holders." *Miot*, 2026 WL 266413, at *27. Regardless of any additional deference owed to Secretary Noem's definition of the "national interest," she still could not "lawfully fail to consider the very factors … that she herself has determined are relevant" while relying on "*verifiably* inapposite or false assertion after inapposite or false assertion." *Id.* at *29. Yet that is precisely what she did, and the

Court neither exceeded its jurisdiction nor improperly reweighed the evidence in concluding that doing so was likely arbitrary and capricious.

### C.    Plaintiffs will likely prevail on their Equal Protection claim.

Finally, the Government falls far short of making a strong showing for its challenge to the Court's conclusion that Plaintiffs likely will succeed on their Equal Protection claim. Its arguments here—that the *Arlington Heights* standard does not apply and that the President's statements pre- and post-inauguration statements are irrelevant—again "offer[] little more than a regurgitation of rejected arguments." *Shays*, 340 F. Supp. 2d at 46. *Compare* ECF 126 at 9–10, *with* ECF 80 at 24–33; ECF 92 at 21–23; ECF 99 at 6–8 (Government's briefing) *and* ECF 81 at 34–39; ECF 93 at 29–45 (Plaintiffs' briefing). But "something more" is required. *In re Wellington*, 631 B.R. at 839.

In any event, the Court rightly concluded that the *Arlington Heights* standard applies here based on the Supreme Court's relatively recent application of the same standard in *Department of Homeland Security v. Regents of the University of California*, 591 U.S. 1, 33–35 (2020), in which a group of foreign nationals living in the United States challenged DHS's rescission of the DACA program. *Miot*, 2026 WL 266413, at *30. As the Court explained, there was no legal basis to apply the more deferential standard in *Trump v. Hawaii*, 585 U.S. 667 (2018), which applied to "foreign nationals seeking admission to the United States," to a case like this one, where the Government "seeks to withdraw lawful status from individuals it has vetted." *Miot*, 2026 WL 266413, at *31.

The Court was also free to "take the President and Secretary at their word" in concluding that the President's articulated racial animus toward Haitians influenced what otherwise *should have been* an independent decision by Secretary Noem. *Id.* at *33. This was not the same "cat's paw" theory rejected by the court in *Ramos v. Wolf*, 975 F.3d 872, 897 (9th Cir. 2020). The district court there "cite[d] no evidence linking the President's animus to the TPS terminations." *Id.* Not

so here. The Court instead cited Secretary Noem's own express acknowledgment of and fealty to the President's statements, as well as examples of her own "expressed animus towards nonwhite foreigners," in concluding that her termination "was motivated, at least in part, by racial animus." *Miot*, 2026 WL 266413, at *33–34.

> **D.    The APA stay granted by the Court is not an injunction whose application must be limited to the named plaintiffs.**

The Government also continues its quest to recast the Court's order setting aside Secretary Noem's termination of Haiti's TPS designation as an injunction. *Compare* ECF 126 at 10–13, *with* ECF 92 at 33–36. As Plaintiffs demonstrated and the Court concluded, controlling case law says the opposite. ECF 100 at 4–7. Despite having some "functional overlap," an APA stay lacks the "coercive" quality of an injunction. *Nken*, 556 U.S. at 428. Indeed, an APA stay "operates quite differently." *Make the Road N.Y. v. Noem* (*"Make the Road II")*, 2025 WL 3563313, at *16 (D.C. Cir. 2025). "Its effect (like that of a vacatur) is merely to return circumstances to the status quo." *Miot*, 2026 WL 266413, at *17. Unlike an injunction, "it does not direct individuals to act or not to act" and, thus, is not barred by § 1252(f)(1). *Make the Road II*, 2025 WL 3563313, at *16.

This settled distinction between APA stays and injunctions in turn defeats the Government's related argument challenging the Court's grant of the former here as overbroad. The Supreme Court expressly refused to extend its recent holding rejecting universal injunctions to prohibit APA stays which, by vacating federal agency action, are inherently universal in effect. *Trump v. CASA, Inc.*, 606 U.S. 831, 847 n.10 (2025); *see also id.* at 869 (Kavanaugh, J., concurring) (noting that "in cases under the Administrative Procedure Act, plaintiffs may ask a court to preliminarily 'set aside' a new agency rule"); *Corner Post, Inc. v. Bd. of Governors of Fed. Reserve Sys.*, 603 U.S. 799, 827 (2024) (Kavanaugh, J., concurring) (rejecting government's "far-reaching argument that the APA does not allow vacatur"). The D.C. Circuit in turn has

15

declined the Government's invitation to do what the Supreme Court in *CASA* would not. *See Make the Road II*, 2025 WL 3563313, at *36 (rejecting DHS argument "that Section 705 stays must be confined to the plaintiffs before the court"). As have courts in this District. *See, e.g.*, *Coalition for Humane Immigrant Rights v. Noem ("CHIR")*, __ F. Supp. 3d. __, 2025 WL 2192986, at *38 (D.D.C. 2025) (refusing to extend *CASA* to APA stays and concluding "the Court has the power to [set aside agency action] under current precedent"); *American Gateways v. U.S. Dep't of Justice*, 2025 WL 2029764, at *11 (D.D.C. 2025) ("That the invalidated agency action was a nationwide policy does not mean Plaintiffs are seeking relief on behalf of legal aid organizations who are not parties to this suit."). Therefore, the Court is "bound by" the "countless Supreme Court and D.C. Circuit opinions that have vacated agency actions rather than merely providing injunctive relief that enjoined the enforcement of the rules against specific plaintiffs." *Refugee & Immigrant Ctr. for Educ. & Legal Servs. v. Noem*, 793 F. Supp. 3d 19, 104–05 (D.D.C. 2025) (cleaned up and collecting cases).

## III.    The balance of the equities and public interest disfavor a stay of the Court's order.

The remaining stay factors only further favor denying the Government's stay application. "It is well established that a noncitizen's removal to a country where they face persecution, torture, or death constitutes irreparable harm." *CHIR*, 2025 WL 2192986, at *35. The same goes for the more than 350,000 Haitian TPS holders who will face immediate removability to the previously mentioned "maelstrom of disease, poverty, violence (including sexual violence) and death" that awaits them back home if a stay is granted.[4] The Government's stated desire to begin "effectuating the Secretary's termination decision," ECF 126 at 14, only *increases* that risk while failing to identify anything more than a "slight inconvenience" to the Government if the Court's order

---

[4]    *See supra* note 1.

remains in effect on appeal. *Kahn v. Elwood*, 232 F. Supp. 2d 344, 353 (M.D. Pa. 2002) ("possible torture" of migrant if removed outweighed government's and public's "interest in removing persons who are aggravated felons under the immigration laws").

Again, Assistant Director Castano's declaration (ECF 129) "offers no 'concrete evidence of prejudice" to the Government. *Pablo Sequen v. Albarran*, __ F. Supp. 3d. __, 2025 WL 3724878, at *19 (N.D. Cal. 2025) (quoting *IDLC* 145 F.4th at 985). All it does establish is that, for now, fewer people in Haitian communities "are removable from the country." *Id.* But the declaration's assertions that "ICE operations are targeted at those who are removable from the country" and that "DHS would have acted to enforce the immigration laws" against Haitian TPS holders "if the termination had not been stayed" only underscore the threat of irreparable harm to Plaintiffs if the termination is allowed to take effect pending appeal. *Id.* ¶¶ 3–4. The Court thus should disregard the Government's disingenuous characterization of those threats as remote and theoretical.

Finally, the Government is again mistaken in its assertion that this Court "must follow" the "informative" *NTPSA* orders "to resolve this substantially similar stay request." ECF 126 at 13. As explained repeatedly above, those orders bear no resemblance to those in *Boyle* and *Wilcox*— in fact, they "provide[] no analysis at all," which means the Court "can only guess as to the [Supreme] Court's rationale." *National TPS Alliance*, 163 F.4th at 1158. These "vague" decisions therefore are "neither binding nor persuasive." *Arenado-Borges*, 2025 WL 3687518, at *5.

*      *      *

For all that the Government gets wrong in its stay application, it is right about one thing: "The government and public share an interest in ensuring adherence to the process established by Congress." ECF 123 at 14. Plaintiffs, too, share that interest. Indeed, all stakeholders here have an interest in ensuring that Secretary Noem follows the duly enacted will of Congress by complying

with the express prerequisites of § 1254a(B)(3)(A) *before* she decides to terminate Haiti's TPS designation. The Court said it best: "Whatever the Administration's priorities, the Secretary has no authority to contravene an act of Congress." *Miot*, 2026 WL 266413, at *24 (citation omitted). Yet, as Plaintiffs have now shown repeatedly, that is precisely what Secretary Noem did here. And if the effects of her lawless decision are allowed to continue unabated while the Government appeals the Court's decision, she will likely get away with it.

## CONCLUSION

The Court should deny the Government's application for a stay pending appeal (ECF 126).


Dated: February 11, 2026

Ira J. Kurzban
Kevin Gregg
KURZBAN, KURZBAN, TETZELI & PRATT, P.A.
131 Madeira Ave.
Coral Gables, FL 33134
Phone: (305) 444-0060
ira@kktplaw.com
kgregg@kktplaw.com

Sejal Zota
JUST FUTURES LAW
1629 K Street N.W., Suite 300
Washington, DC 20006
Phone: (617) 812-2822
sejal@justfutureslaw.org

Raymond Audain
GISKAN SOLOTAROFF & ANDERSON LLP
1 Rockefeller Plaza, 8th Floor
New York, NY 10020
Phone: (646) 290-6249
raudain@gslawny.com

Daniel Paul Mach
BRYAN CAVE LEIGHTON PAISNER, LLP
1290 Avenue of the Americas

Respectfully submitted,
/s/ *Geoffrey M. Pipoly*
Geoffrey M. Pipoly

Andrew Tauber (D.C. Bar No. 495980)
BRYAN CAVE LEIGHTON PAISNER, LLP
1155 F. Street NW, Ste. 700
Washington, D.C. 20004
Phone: (202)-508-6200
andrew.tauber@bclplaw.com
sarah.hartley@bclplaw.com

Geoffrey M. Pipoly
Alexa Thein
Madisen Hursey
BRYAN CAVE LEIGHTON PAISNER, LLP
161 N. Clark Street, Ste. 4300
Chicago, IL 60601
Phone: (312) 602-5000
geoff.pipoly@bclplaw.com
alexa.thein@bclplaw.com
madisen.hursey@bclplaw.com

Matthew Stanford
BRYAN CAVE LEIGHTON PAISNER, LLP
2 N. Central Ave., Ste. 2100
Phoenix, AZ 85004
Phone: (602) 364-7000
matt.stanford@bclplaw.com

New York, NY 10104
Phone: (212) 541-1146                    *Attorneys for Plaintiffs*
daniel.mach@bclplaw.com

**CERTIFICATE OF SERVICE**

I hereby certify that on this 11th day of February, 2026, a copy of the foregoing was filed

through the CM/ECF system which sent notice of the filing to all appearing parties of record.

*/s/ Geoffrey M. Pipoly*
Geoffrey M. Pipoly
*Counsel for Plaintiffs*