**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| FRITZ EMMANUEL LESLY MIOT, et al., <br><br> *Plaintiffs*, <br><br> v. <br><br> DONALD J. TRUMP, et al., <br><br> *Defendants*. | Case No. 25-cv-02471 (ACR) |

**MEMORANDUM OPINION AND ORDER**

The Government moves to stay, pending judicial review, the Court's Order staying the effective date of the Termination of the Designation of Haiti for Temporary Protected Status, 90 Fed. Reg. 54733 (Nov. 28, 2025) (Termination). *See* Dkt. 123 (Order); Dkt. 126 (Mot.). The Government offers no new merits argument, however. And it now bears the burden of establishing irreparable harm, a burden it cannot meet. *See Nken v. Holder*, 556 U.S. 418, 434 (2009). The Court therefore **DENIES** the Government's Motion to Stay the Court's Order Granting Relief Under 5 U.S.C. § 705.

Taking heed (finally) that "brevity is the soul of wit,"[1] the Court does not regurgitate its Memorandum Opinion, Dkt. 124 (Mem. Op.). The Court does, however, address two new assertions the Government makes and its claim of irreparable harm.

\* \* \*

***Consultation.*** The Government contends that the Court "demanded that the Secretary consult some other (unnamed) 'appropriate' agency in addition to the State Department." *Miot v.*

---

[1] William Shakespeare, *Hamlet* act 2, sc. 2.

*Trump*, No. 26-5050, at 8 (D.C. Cir. Feb. 6, 2026).  Not so.  To start, the Court did not demand

anything, Congress did.  And the Court found that the Secretary did not consult *any* agency,

including that it did not consult with the Department of State.  *See* Mem. Op. at 41–43.  To be

sure, that Congress requires the Secretary to consult "agencies"—plural—confirms its intent that

the consultation to be meaningful.  *See id.* at 41–46.[2]  But the Court did not reach whether

consulting only one other agency would meet the requirement that the Secretary "shall" consult

"appropriate agencies."  8 U.S.C. § 1254a(b)(3)(A).  It did not reach it because, again, the

Secretary did not consult outside DHS at all.

　　　**Pattern or Practice.**  The Government lobs that "[t]he mere existence of multiple

decisions in the same direction does not suggest dysfunction; otherwise, the fact that the Biden

Administration renewed every TPS designation it reviewed,[3] for four years, would be equally

suggestive of failure to objectively follow the legal process."  Mot. at 14.  This "he started it"

grievance is a non-starter.  The Biden administration's TPS decisions were not the subject of this

or, to the Court's knowledge, any other litigation.  If they had been, courts may well have

considered those uniform designations to be a pattern or practice subject to APA scrutiny.  This

Court, all else equal, assuredly would have.

---

[2] On a related note, the Court in its Memorandum Opinion cited definitions of "consultation" and
to "consult" from 2024 and 2015, respectively.  *See* Mem. Op. at 43.  It would have done better
also to consult (no pun intended) dictionaries from the time Congress enacted the TPS statute,
1990.  It has now done so.  "Consultation" was then defined as the "[a]ct of consulting or
conferring; *e.g.* patient with doctor; client with lawyer" and "[d]eliberation of persons on some
subject."  *Consultation*, *Black's Law Dictionary* (6th ed. 1990).  To "consult" was then defined as
"to have regard to" or "to ask the advice of opinion of (~a doctor)."  *Consult, Merriam-Webster's
Collegiate Dictionary* (9th ed. 1990).  These definitions mirror the later ones, *see* Mem. Op. at
43, and so do not change the Court's analysis.

[3] The Court assumes, for now, that the Government's uncited assertion is true.

***Irreparable Harm to the Government and the Public Interest/Balance of Equities.*** At argument, the Government attempted to sidestep the irreparable harm analysis. It stated: "I can make this very simple. If Your Honor's not going to rule for us on the likelihood of success on the merits, then that's the end of the inquiry." Feb. 12 Hr'g Tr. at 14. Fair enough, since the Government has no legitimate interest in enforcing a likely unlawful Termination. But the irreparable harm standard exists and so the Court considers it.

The Order preserves the status quo, which at least suggests that the Government will not face irreparable harm. *See Make the Rd. New York v. Noem*, No. 25-5320, 2025 WL 3563313, at *32 (D.C. Cir. Nov. 22, 2025) (statement of Judges Millett & Childs). Haitian TPS holders will maintain their TPS status pending litigation. They will continue to work and maintain health insurance. They will continue to pay federal, state, and local taxes. They will continue to contribute to their communities. And no additional Haitians will gain TPS. Given this, the Court asked the Government to identify concrete examples of harm if the Termination remains stayed pending litigation. It could not name one. *See* Dkt. 129 (ICE Decl.); Dkt. 132 (Feb. 12 Hr'g Tr.) at 22–23.

The Government cannot name a single concrete harm from maintaining the status quo. And so instead it argues that the Court's decision is "'an improper intrusion by a federal court into the workings of a coordinate branch of the Government'" Mot. at 14 (quoting *INS v. Legalization Assistance Project*, 510 U.S. 1301, 1305–06 (1993)). The argument, taken to its logical conclusion, is that anytime a court stays government action, the Government is irreparably harmed. That is not the standard.

Consider the Supreme Court's recent decision granting the Government's motion for an emergency stay in *Trump v. Wilcox*, 145 S. Ct. 1415, 1415 (2025). The Supreme

Court held that the Government was likely to succeed on the merits, but it did not then just call it a day.  It next explored the comparative irreparable harm as between the two parties: "the Government faces greater risk of harm from an order allowing a removed officer to continue exercising the executive power than a wrongfully removed officer faces from being unable to perform her statutory duty."  *Id.*

Here, Plaintiffs and other Haitian TPS holders face a greater risk of harm from an order allowing the Government to remove them to a "perfect storm of suffering" than the Government faces from maintaining the *status quo*.  *See* Mem. Op. at 72–82 (discussing further the comparative harms).  The Supreme Court went on: "A stay is appropriate to avoid the disruptive effect of the repeated removal and reinstatement of officers during the pendency of this litigation."  *Wilcox*, 145 S. Ct. at 1415.  Here, granting a stay would cause disruption.  Indeed, with almost 353,000 TPS holders having, then losing overnight, and then potentially regaining legal immigration status, it would cause chaos.

* * *

For the reasons stated in its Memorandum Opinion of February 2, 2026, and the reasons above, the Court **DENIES** the Government's Motion to Stay the Court's Order Granting Relief Under 5 U.S.C. § 705, Dkt. 126.

      **SO ORDERED.**

Date: February 23, 2026

                                           _____

                                           ANA C. REYES
                                           United States District Judge