**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **FRITZ EMMANUEL LESLY MIOT**, *et al.*,<br><br>Plaintiffs,<br><br>v.<br><br>**DONALD J. TRUMP** *et al.*,<br><br>Defendants. | Case No. 1:25-cv-2471 (ACR) |

**PLAINTIFFS' MOTION TO COMPEL PRODUCTION OF WITHHELD AND REDACTED DOCUMENTS**

# TABLE OF CONTENTS

**Page**


INTRODUCTION ..... 1

BACKGROUND ..... 3

A. Court ordered discovery ..... 3

1. Defendants' first document production ..... 4

2. Defendants' subsequent document productions ..... 4

B. The privilege dispute ..... 4

1. Early efforts to agree on privilege parameters ..... 4

2. February 25 meet-and-confer ..... 6

3. Continued conferral over privilege ..... 6

4. Attempts to resolve the dispute ..... 7

5. The Court's August 5 order denying Defendants' request to stay discovery, and the parties' subsequent disputes over how to proceed ..... 7

LEGAL STANDARD ..... 8

ARGUMENT ..... 10

I. Defendants cannot sustain their assertion of the deliberative-process privilege. ..... 10

A. The deliberative-process privilege is inapplicable because this action challenges the government's subjective motivation. ..... 10

B. Defendants failed to properly invoke the deliberative-process privilege. ..... 11

C. Defendants' privilege logs are legally insufficient. ..... 12

D. Even if the deliberative-process privilege were available, Defendants have claimed it arbitrarily and overbroadly. ..... 14

E. Even if the deliberative-process privilege applied and were validly invoked, plaintiffs have demonstrated a sufficient showing of need. ..... 16

II. Defendants' assertions of the presidential-communication privilege are unsupported. ..... 17

III. Defendants' attorney-client privilege assertions fail as a matter of law. ..... 21

A. The logs do not establish that the primary purpose of the communications was the provision of legal advice. ..... 21

B. The draft Federal Register notices are not protected. ..... 24

IV. The deliberative-process privilege does not protect factual information. ..... 24

CONCLUSION ..... 25

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Alexander v. Fed. Bureau of Investigation*,
192 F.R.D. 42 (D.D.C. 2000) .......... 9, 21, 22

*Am. Ctr. for L. & Just. v. United States Dep't of State*,
330 F. Supp. 3d 293 (D.D.C. 2018) .......... 19, 20

*Army Times Publishing Co. v. Dep't of Air Force*,
998 F.2d 1067 (D.C. Cir. 1993) .......... 24

*Ascom Hasler Mailing Sys., Inc. v. U.S. Postal Serv.*,
267 F.R.D. 1 (D.D.C. 2010) .......... 11, 12

*United States ex rel. Barko v. Halliburton Co.*,
74 F. Supp. 3d 183 (D.D.C. 2014) .......... 21

*Brick v. Andrus*,
628 F.2d 213 (D.C. Cir. 1980) .......... 9

*Cause of Action Inst. v. Exp.-Imp. Bank*,
521 F. Supp. 3d 64 (D.D.C. 2021) .......... 13, 14

*Cause of Action Inst. v. U.S. Dep't of Just.*,
330 F. Supp. 3d 336 (D.D.C. 2018) .......... 21, 23, 24

*Chesapeake Bay Found., Inc. v. U.S. Army Corps of Eng'rs*,
722 F. Supp. 2d 66 (D.D.C. 2010) .......... 14

*Chevron Corp. v. Weinberg Group*,
286 F.R.D. 95 (D.D.C. 2012) .......... 22

*Citizens for Responsibility & Ethics in Wash. v. Dep't of Homeland Sec.*,
514 F. Supp. 2d 36 (D.D.C. 2007) .......... 18, 19

*Citizens for Responsibility & Ethics in Washington v. U.S. Dep't of Justice*,
538 F. Supp. 3d 124 (D.D.C. 2021) .......... 21

*Coastal States Gas Corp. v. Dep't of Energy*,
617 F.2d 854 (D.C. Cir. 1980) .......... 14

*Cobell v. Norton*,
213 F.R.D. 1 (D.D.C. 2003) .......... 12

*Doe v. District of Columbia*,
230 F.R.D. 47 (D.D.C. 2005) ........................................ 9, 11

*F.T.C. v. GlaxoSmithKline*,
294 F.3d 141 (D.C. Cir. 2002) ........................................ 23

*Freeman v. Giuliani*,
2023 WL 4750552 (D.D.C. 2023) ........................................ 9

*Haitian Evangelical Clergy Ass'n v. Trump*,
789 F. Supp. 3d 255 (E.D.N.Y. 2025) ........................................ 18

*Judicial Watch, Inc. v. U.S. Dep't of Homeland Sec.*,
841 F. Supp. 2d 142 (D.D.C. 2012) ........................................ 9, 12

*Judicial Watch, Inc. v. U.S. Dep't of Homeland Sec.*,
926 F. Supp. 2d 121, 127 (D.D.C. 2013) ........................................ 23

*Judicial Watch, Inc. v. U.S. Dep't of Just.*,
20 F.4th 49 (D.C. Cir. 2021) ........................................ 13, 14

*Landry v. FDIC*,
204 F.3d 1125 (D.C. Cir. 2000) ........................................ 11, 12

*In re Lindsey*,
148 F.3d 1100 (D.C. Cir. 1998) ........................................ 21, 23

*In re Lindsey*,
158 F.3d 1263 (D.C. Cir. 1998) ........................................ 9

*Martinez v. District of Columbia*,
241 F.R.D. 1 (D.D.C. 2006) ........................................ 12

*Mead Data Cent. v. U.S. Dep't of the Air Force*,
566 F.2d 242 (D.C. Cir. 1977) ........................................ 23

*Nat'l Ass'n of Home Builders v. Norton*,
309 F.3d 26 (D.C. Cir. 2003) ........................................ 25

*NLRB v. Jackson Hosp. Corp.*,
257 F.R.D. 302 (D.D.C. 2009) ........................................ 12

*Raynor v. District of Columbia*,
2019 WL 13250317 (D.D.C. 2019) ........................................ 21

*Rudometkin v. United States*,
140 F.4th 480 (D.C. Cir. 2025) ........................................ 16

*Saget v. Trump*,
375 F. Supp. 3d 280, 324 (E.D.N.Y. 2018) ... 5, 20

*In re Sealed Case*,
121 F.3d 729 (D.C. Cir. 1997) ... 10, 16–19, 24

*In re Sealed Case*,
737 F.2d 94 (D.C. Cir. 1984) ... 23

*In re Sealed Case*,
856 F.2d 268 (D.C. Cir. 1988) ... 12

*Segar v. Holder*,
277 F.R.D. 9 (D.D.C. 2011) ... 10

*Senate of the Com. of Puerto Rico v. U.S. Dep't of Just.*,
823 F.2d 574 (D.C. Cir. 1987) ... 9, 13, 14

*United States ex rel. Shamesh v. CA, Inc.*,
314 F.R.D. 1 (D.D.C. 2016) ... 8

*In re Subpoena Duces Tecum Served on Off. of Comptroller of Currency*,
156 F.3d 1279 (D.C. Cir. 1998) (*OCC II*) ... 10, 11

*In re Subpoena Duces Tecum Served on Office of Comptroller of Currency*,
145 F.3d 1422 (D.C. Cir. 1998) (*OCC I*) ... 10

*Tri-State Hosp. Supply Corp. v. U.S.*,
226 F.R.D. 118 (D.D.C. 2005) ... 17

*U.S. Dep't of the Treasury v. Pension Benefit Guar. Corp.*,
222 F. Supp. 3d 38 (D.D.C. 2016) ... 11

*United States v. Aetna Inc.*,
2016 WL 8738423 (D.D.C. 2016) ... 11

*United States v. Anthem, Inc.*,
2016 WL 11755527 (D.D.C. 2016) ... 12

*United States v. Legal Servs. for New York City*,
249 F.3d 1077 (D.C. Cir. 2001) ... 9, 13, 21

*Vaughn v. Rosen*,
523 F.2d 1136 (D.C. Cir. 1975) ... 14

**Statutes**

6 U.S.C. § 557 ... 18

8 U.S.C. § 1103 .......... 18

8 U.S.C. § 1254a .......... 18

**Other Authorities**

Fifth Amendment .......... 1, 11

Fed. R. Civ. P. 26(b) .......... 8

Fed. R. Civ. P. 37 .......... 3, 8–9

## INTRODUCTION

Plaintiffs ask that the Court issue an order compelling Defendants to (1) produce the many documents that they have withheld entirely and (2) remove the redactions in the few documents that they have produced in part.

This case concerns one of the most consequential immigration decisions of the past decade—the termination of Temporary Protected Status for Haiti. Asserting a claim under the Fifth Amendment's equal-protection guarantee, Plaintiffs allege that termination of Haiti's TPS designation was motivated by racial animus. Plaintiffs' claim places the government's internal deliberations at the very center of this litigation.

Nearly a year ago, in December 2025, Plaintiffs requested the production of documents related to the termination decision. This Court allowed narrowly circumscribed discovery, limiting Plaintiffs' request to just six custodians. Despite that limitation, the government's response has been to withhold or redact nearly everything that could answer the dispositive question in this case: *Why* did the government terminate Haiti's TPS designation?

Defendants' production of documents is deficient in three ways.

*First*, invoking various privileges, Defendants have withheld a high percentage of documents in full rather than producing them with narrowly tailored, document-by-document redactions.

*Second*, what has been produced is remarkably limited, totaling only 368 documents.

*Third*, even among the few documents that have been produced, Defendants redacted every substantive discussion bearing on the government's decision-making process. What remains is merely logistical filler: email headers, forwarding notes, and sign-offs.

Defendants' ongoing failure to comply with their discovery obligations reflects a pattern of delay and obstruction. After Plaintiffs objected to certain redactions in the administrative record

that the government had previously produced, this Court conducted an *in camera* review of two central decision-making documents and found "no basis for the redaction of either" document. ECF 86. But, as the government's scant production, excessive redactions, and deficient privilege log show, Defendants' stonewalling continues.

Defendants invoke the deliberative-process, the presidential-communication, and the attorney-client privileges to justify their failure to comply with Plaintiffs' document request. But Defendants' privilege logs fail to establish that any of these privileges apply, much less apply in a way that would support Defendants' wholesale withholding of vast swaths of relevant information.

The deliberative-process privilege is categorically unavailable because Plaintiffs' equal-protection claim places the government's subjective motivation and decision-making directly at issue. But even if the deliberative-process privilege were theoretically available to Defendants, their invocation of the privilege is procedurally deficient, both because the relevant privilege-log entries are facially inadequate to support its application and because Defendants have not produced the sworn declaration that must be submitted when the privilege is claimed.

Defendants' reliance on the presidential-communications privilege fares no better. The relevant privilege-log entries fail to establish the requisite nexus to the President or the President's immediate advisers.

Defendants' claims of attorney-client privilege likewise lack adequate foundation. Even taken at face value, the privilege-logs do not demonstrate that the predominant purpose of the withheld communications was to seek or provide legal advice.

Moreover, regardless of the privilege invoked, Defendants may not withhold or redact purely factual information absent a specific showing that disclosure would reveal a privileged communication or deliberation. Defendants' privilege log makes no such showing, and many of

the entries appear to withhold factual material that must be segregated and produced whether or not a privilege has been validly asserted.

The Court should order the immediate production of all withheld and redacted documents, and award appropriate relief including fees and costs under Federal Rule of Civil Procedure 37(a)(5).

## BACKGROUND

Plaintiffs, Haitian nationals, challenge the termination of Haiti's Temporary Protected Status designation, an administrative action that deprives them of the right to work and live in the United States. Plaintiffs' central claim is that the termination of Haiti TPS designation was motivated by racial animus against nonwhite immigrants generally and against Haitian immigrants in particular. ECF 90 ¶¶ 65–117, 244–46, 257, 282–84.

### A. Court ordered discovery

On December 15, 2025, in response to a December 1 oral order of the Court, Plaintiffs filed a letter brief in which they both explained why they are entitled to discovery beyond the administrative record and asked that the Court order the government to produce certain documents related to the termination of Haiti's TPS designation. ECF 84 at 6–13; ECF 84-13 at 3–8.

At the hearing held on January 7, 2026, the Court granted in part and denied in part Plaintiffs' discovery request. While explicitly reserving the possibility that additional discovery might be ordered subsequently, the Court held that discovery "should start with limited document and email discovery from some of the key decision-makers." 1/7/26 Tr. 20:13-14. The Court directed the parties to reach an agreement on which individuals' email accounts would be searched and on the search terms that would be used to search those accounts. *Id.* at 21:18-22:14.

On January 13, the parties reached agreement on which custodians' files would be searched first. Ex. A (Email from Amanda Torres (AUSA) to Brooke Ingoglia (BCLP) (Jan. 13, 2026, at

16:13)). On January 29, after a meet-and-confer, a short hearing at which the Court ordered Defendants to respond to Plaintiffs' related queries, and further back-and-forth, the parties reached agreement as to the search terms, the date range, and the scope of responsiveness. ECF 120; Ex. B (Email from Brooke Ingoglia (BCLP) to Amanda Torres (AUSA) (Jan. 29, 2026, at 15:23).

**1. Defendants' first document production**

Defendants' first production, made on February 20, comprised 44 heavily redacted documents.[1] Upon receipt of those documents, Plaintiffs inquired—first via email and then during an ensuing meet-and-confer—as to Defendants' basis for the redactions. Ex. D (Email from Katelyn Harrell (BCLP) to Amanda Torres (AUSA) (Feb. 20, 2026, at 22:36)); Ex. E (Meet and Confer Calendar Invitation (Feb. 25, 2026)). Defendants responded to Plaintiffs' inquiry on March 4, 2026. Ex. F (Email and attachment from Jeremy Simon (AUSA) to Brooke Ingoglia (Mar. 4, 2026, at 17:28)).

**2. Defendants' subsequent document productions**

Defendants produced additional tranches of heavily redacted documents on March 3, March 24, April 30, May 19, May 22, June 2, and September 30. In the end, Defendants produced only 398 documents total—that is, just 398 documents for 6 custodians over a 10-month date range.

**B. The privilege dispute**

**1. Early efforts to agree on privilege parameters**

The privilege dispute arose immediately upon Defendants' first production. Made on February 20, the initial production consisted of only 44 documents, many of which were heavily

[1] The redactions are so heavy that in various instances all that remains unredacted are "to" lines, "re" lines, greetings, and sign-offs. *See, e.g.*, Ex. C, MIOT_0047; MIOT_0049; MIOT_0053; MIOT_0086; MIOT_0123.

or completely redacted. The same day as the production was made Plaintiffs asked Defendants to share the number of documents withheld under the deliberative-process privilege and to explain whether all redactions in the first production were pursuant to that privilege. Expressing concern over the dearth of documents produced despite the agreed-upon custodians, search terms, date-range, and scope of responsiveness, Plaintiffs also asked to meet and confer as soon as possible. Ex. D (Email from Katelyn Harrell (BCLP) to Amanda Torres (AUSA) (Feb. 20, 2026, at 22:36)).[2]

Defendants responded on February 23. They stated that they were proceeding "in due course" and were "currently focused on completing the review and production for the two priority custodians," which allegedly prevented them from providing Plaintiffs "with the information about privilege claimed." Ex. G (Email from Amanda Torres (AUSA) to Katelyn Harrell (BCLP) (Feb. 23, 2026, at 10:44)).

That same day, Plaintiffs wrote Defendants again, noting that Defendants had yet to explain the basis for the extensive redactions in the initial production. Ex. H (Email from Katelyn Harrell (BCLP) to Amanda Torres (AUSA) (Feb. 23, 2026, at 12:54). Plaintiffs asked Defendants to: (1) confirm whether Defendants would make an additional rolling production by February 27; (2) identify the basis for the extensive redactions; and (3) provide a categorical count of documents withheld or redacted by privilege type and custodian, pending a full privilege log. *Id.*

Defendants agreed to meet and confer on February 25 but stated in advance that they would "not be in a position" at that time to provide information on the privileges that they were claiming, dismissing Plaintiffs' request for such information as neither "consistent with the court's direction"

---

[2] For context: When the first Trump administration's attempt to terminate Haiti's TPS designation was litigated in *Saget v. Trump*, 375 F. Supp. 3d 280 (E.D.N.Y. 2018), the government produced thousands of documents.

nor "a productive use of [Defendants'] limited resources." Ex. I (Email from Amanda Torres (AUSA) to Katelyn Harrell & Geoff Pipoly (BCLP) (Feb. 23, 2026, at 16:58)).

**2. February 25 meet-and-confer**

Following the meet-and-confer on February 25, Plaintiffs confirmed their understanding that Defendants had agreed to provide: (1) the number of documents in the February 20 production that were redacted based on claims of deliberative-process privilege; and (2) the number of documents withheld from that production entirely based on the deliberative-process privilege. Ex. F (Email from Katelyn Harrell (BCLP) to Amanda Torres (AUSA) (Mar. 2, 2026, at 16:16)). Consistent with that understanding, Defendants subsequently provided an index that both identified the privileges claimed on redacted documents in the February 20 production and addressed the number of documents withheld in full based on the deliberative-process privilege. Referring to the documents that had been redacted, Defendants stated that "with limited exception, [deliberative-process privilege] was claimed in conjunction with [attorney-client privilege] and/or [work-product privilege]." Ex. F (Email and attachment from Jeremy Simon (AUSA) to Brooke Ingoglia (Mar. 4, 2026, at 17:28)).

**3. Continued conferral over privilege**

The parties conferred over privilege and the timing and content of Defendants' document productions throughout the spring. On April 3, Defendants served privilege logs for their first and second productions. Defendants also committed to re-producing certain documents without redactions or with only partial redactions. Ex. J (Email from Amanda Torres (AUSA) to Brooke Ingoglia (BCLP) (Apr. 3, 2026, at 17:46)); Ex. K (Priv. Log for Productions 1 & 2); Ex. L (Withheld in Full Priv. Log for Productions 1 & 2). Defendants served an additional privilege log on May 29, reflecting redactions on their third through sixth productions. Ex. M (Email from Amanda Torres (AUSA) to Katelyn Harrell (BCLP) (May 29, 2026, at 15:37)); Ex. N (Priv. Log

for Productions 3-6)). The logs assert deliberative-process, presidential-communication, and attorney-client privilege over numerous documents bearing directly on the decision to terminate Haiti TPS's designation. Defendants have not provided privilege logs for the seventh and eighth (*i.e.*, June 2 and September 30) productions despite committing to do so in a September 30 email and being required to do so by the federal discovery rules. Ex. O (Email from Amanda Torres (AUSA) to Katelyn Harrell (BCLP) (Sep. 30, 2026, at 11:50)).

#### 4. Attempts to resolve the dispute

Plaintiffs have diligently attempted to resolve the privilege disputes addressed in this motion without court intervention. Early on, Plaintiffs raised concerns with Defendants regarding the scope and application of the privileges asserted in Defendants' privilege logs and proposed that the parties meet and confer so as to reach agreement on the parameters of the applicable privileges before Defendants completed their redaction work. Defendants declined, stating during one meet-and-confer that they wished to complete all productions before engaging on privilege issues.

Defendants say that their document production is now complete. Despite Plaintiffs' best efforts to resolve the dispute without intervention of the Court, the parties remain at an impasse as to scope of the privileges that Defendants have asserted.

#### 5. The Court's August 5 order denying Defendants' request to stay discovery, and the parties' subsequent disputes over how to proceed

On August 5, this Court denied Defendants' request for a stay of discovery and ordered the parties to propose an agreed-upon schedule for further proceedings. ECF 144. In response, Plaintiffs wrote Defendants on August 10 advising them that, as reflected in the July 10 Joint Status Report, Plaintiffs believed that Defendants' production remained inadequate, and that Plaintiffs "intend[ed] in the first instance to litigate issues relating to the discovery already produced, namely the propriety of the documents the government withheld and the propriety of the redactions the

government applied." Ex. P (Email from Geoff Pipoly (BCLP) to Dhruman Sampat (AUSA) (Aug. 10, 2026, at 21:13)). Explicitly inviting a discussion on next steps, Plaintiffs informed Defendants that Plaintiffs could agree to a briefing schedule on a motion to compel (to be heard by the Court, a magistrate judge, or a special master) or to an *in camera* inspection of the withheld and redacted documents (again, by the Court, a magistrate judge, or a special master). *Id.*

On August 17, Defendants represented that they were amenable to a joint motion that would place discovery matters before a magistrate judge, so that any and all disputes that arose could be "litigated accordingly." Ex. P (Email from Dhruman Sampat (AUSA) to Geoff Pipoly (BCLP) (Aug. 30, 2026, at 16:42). Thus, the parties are in agreement that the issues presented in this motion are ripe for review.

## LEGAL STANDARD

"[A] party may request the production of any designated documents or electronically stored information stored in any medium from which information may be obtained within the scope of Rule 26(b)." *United States ex rel. Shamesh v. CA, Inc.*, 314 F.R.D. 1, 8 (D.D.C. 2016) (citation and internal quotation marks omitted); *see also* Fed. R. Civ. P. 26(b) (providing that a party "may obtain discovery regarding any non-privileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit").

A party from whom discovery is sought may decline to produce material that is protected by a recognized privilege, such as, for example, the attorney-client privilege. When discovery material is withheld based on the assertion of a privilege (or otherwise), Federal Rule of Civil

Procedure 37(a) authorizes the party seeking discovery to move for an order compelling production of the withheld material. Fed. R. Civ. P. 37(a)(1), (3)(B)(iv).

"It is settled law that the party claiming the privilege bears the burden of proving that the" withheld "communications are protected." *In re Lindsey*, 158 F.3d 1263, 1270 (D.C. Cir. 1998); *accord, e.g.*, *Freeman v. Giuliani*, 2023 WL 4750552, at *8 (D.D.C. 2023). Because "[t]hat burden requires a showing that the privilege applies to *each* communication for which it asserted," the withholding party must establish each element of the claimed privilege on a document-by-document and redaction-by-redaction basis. *United States v. Legal Servs. for New York City*, 249 F.3d 1077, 1082 (D.C. Cir. 2001) (emphasis added). Conclusory assertions of the privilege are insufficient to invoke its protections. The party resisting discovery "must adduce competent evidence in support of 'each of the essential elements necessary to support a claim of privilege.'" *Judicial Watch, Inc. v. U.S. Dep't of Homeland Sec.*, 841 F. Supp. 2d 142, 153 (D.D.C. 2012) (quoting *Alexander v. Fed. Bureau of Investigation*, 192 F.R.D. 42, 45 (D.D.C. 2000)). Thus, "a recitation of each document's issue date, its author and intended recipient, and the briefest of references to its subject matter [] will not do." *Senate of the Com. of Puerto Rico v. U.S. Dep't of Just.*, 823 F.2d 574, 585 (D.C. Cir. 1987). Moreover, when the privilege asserted is the deliberative-process privilege, the assertion must be supported by "affidavits from the proper governmental authorities." *Doe v. District of Columbia*, 230 F.R.D. 47, 51–52 (D.D.C. 2005). "Where the proponent" of a privilege "fails to adduce sufficient facts to permit the district court to conclude with reasonable certainty that the privilege applies, its burden has not been met." *Judicial Watch*, 841 F. Supp. 2d at153 (citing *Brick v. Andrus*, 628 F.2d 213, 213 (D.C. Cir. 1980)).

Neither the deliberative-process nor the presidential-communications privilege is absolute. Each "is a qualified privilege and can be overcome by a sufficient showing of need." *In re Sealed Case*, 121 F.3d 729, 737, 745 (D.C. Cir. 1997).

## ARGUMENT

### I. Defendants cannot sustain their assertion of the deliberative-process privilege.

#### A. The deliberative-process privilege is inapplicable because this action challenges the government's subjective motivation.

"[T]he deliberative process privilege is unavailable" when, as here, "the cause of action is directed at the agency's subjective motivation." *In re Subpoena Duces Tecum Served on Off. of Comptroller of Currency*, 156 F.3d 1279, 1280 (D.C. Cir. 1998) (*OCC II*), *on partial reh'g of In re Subpoena Duces Tecum Served on Office of Comptroller of Currency*, 145 F.3d 1422, 1425 (D.C. Cir. 1998) (*OCC I*). Under these circumstances, "the [deliberative process] privilege does not enter the picture at all." *OCC I*, 145 F.3d at 1425. As the D.C. Circuit explained, the privilege "was fashioned in cases where the governmental decisionmaking process is collateral to the plaintiff's suit," not where governmental intent is itself the issue to be decided. *Id.*; *accord OCC II*, 156 F.3d at 1280. The reason is simple: "[I]f either the Constitution or a statute makes the nature of governmental officials' deliberations the issue, the privilege is a non sequitur." *OCC I*, 145 F.3d at 1224.

Courts in this district have consistently applied this rule in case alleging unlawful discrimination. In *Segar v. Holder*, 277 F.R.D. 9, 16 (D.D.C. 2011), for example, the court ordered production of documents concerning an agency's decision to abolish a promotion process, explaining that "it is the law of this Circuit that [the privilege] yields when the government's potentially discriminatory intent is at issue."

Asserting an equal-protection claim under the Fifth Amendment, Plaintiffs allege that the decision to terminate Haiti's TPS designation was motivated by racial animus. ECF 90 ¶¶ 65–117, 244–46, 257, 282–84. Thus, the government's subjective motivation for the termination decision is not merely relevant to this case—it is the very basis of Plaintiffs' suit. The deliberative-process privilege therefore is categorically "unavailable." *OCC II*, 156 F.3d at 1280.

**B. Defendants failed to properly invoke the deliberative-process privilege.**

Even if the deliberative-process privilege were theoretically available to Defendants in this case, their assertion of the privilege fails because they have not complied with the procedural requirements governing its invocation.

Assertion of the privilege "requires: (1) a formal claim of privilege by the 'head of the department' having control over the requested information; (2) assertion of the privilege based on actual personal consideration by that official; and (3) a detailed specification of the information for which the privilege is claimed, with an explanation why it properly falls within the scope of the privilege." *Landry v. FDIC*, 204 F.3d 1125, 1135 (D.C. Cir. 2000); *accord, e.g.*, *U.S. Dep't of the Treasury v. Pension Benefit Guar. Corp.*, 222 F. Supp. 3d 38, 43 (D.D.C. 2016). Thus, "[t]o properly invoke the deliberative process privilege, the agency which claims its protections must," among other things, submit a supporting "declaration" from the appropriate official. *United States v. Aetna Inc.*, 2016 WL 8738423, at *3 (D.D.C. 2016) (cleaned up). "[T]he defendant agency must 'make a detailed argument, including affidavits from the proper governmental authorities, in support of the privilege' because, 'without a specific articulation of the rationale supporting the privilege,' a court cannot rule on whether the privilege applies." *Ascom Hasler Mailing Sys., Inc. v. U.S. Postal Serv.*, 267 F.R.D. 1, 4 (D.D.C. 2010) (quoting *Doe*, 230 F.R.D. 51–52). The D.C. Circuit has explained that these procedures are "designed to ensure that the privilege [is] presented

in a deliberate, considered, and reasonably specific manner." *Landry*, 204 F.3d at 1135 (quoting *In re Sealed Case*, 856 F.2d 268, 271 (D.C. Cir. 1988)) (cleaned up).

Agencies invoking the deliberative-process privilege "commonly do so through a combination of privilege logs that identify specific documents, and declarations from agency officials explaining what the documents are and how they relate to the decisions." *NLRB v. Jackson Hosp. Corp.*, 257 F.R.D. 302, 309 (D.D.C. 2009). Here, Defendants have offered privilege logs (that are, as explained below, themselves deficient) but no declaration from a department head or other qualifying official.

That omission is fatal. Defendants' repeated invocations of the deliberative-process privilege rest entirely on unsupported assertions by counsel in Defendants' privilege logs. But a "mere conclusory statement … by Defendants' counsel[] that 'Defendants assert the deliberative process privilege as to the [document at issue]' does not meet the three-step procedural requirement set forth in *Landry*." *Martinez v. District of Columbia*, 241 F.R.D. 1, 4 (D.D.C. 2006); *accord, e.g.*, *Ascom Hasler*, 267 F.R.D. at 5–6; *United States v. Anthem, Inc.*, 2016 WL 11755527, at *3 n.1 (D.D.C. 2016), *report and recommendation adopted by* 2016 WL 11755535 (D.D.C. 2016).

The consequence is clear: "Failure to submit a declaration that conforms with these requirements will be deemed to constitute a waiver of defendants' objection to disclosure." *Cobell v. Norton*, 213 F.R.D. 1, 8 (D.D.C. 2003).

### C. Defendants' privilege logs are legally insufficient.

Lack of declaration aside, Defendants' assertions of the deliberative-process privilege also fail because Defendants' privilege logs are deficient.

Because a party resisting discovery "must adduce competent evidence in support of each of the essential elements necessary to support a claim of privilege" (*Judicial Watch*, 841 F. Supp. 2d at 153 (quotation marks omitted)), a naked "recitation of each document's issue date, its author

and intended recipient, and the briefest of references to its subject matter [] will not do." *Senate*, 823 F.2d at 585. At minimum, a privilege log asserting the deliberative-process privilege must establish:

> the "who," *i.e.*, the roles of the document drafters and recipients and their places in the chain of command; the "what," *i.e.*, the nature of the withheld content; the "where," *i.e.*, the stage within the broader deliberative process in which the withheld material operates; and the "how," *i.e.*, the way in which the withheld material facilitated agency deliberation.

*Judicial Watch, Inc. v. U.S. Dep't of Just.*, 20 F.4th 49, 56 (D.C. Cir. 2021); *accord Senate*, 823 F.2d at 586. Defendants' logs fail each requirement.

***Who*:** The logs identify names and titles but say nothing about hierarchical relationships, decision-making authority, or the direction of communications within the chain of command. Without knowing whether communications traveled from subordinate to superior (more likely deliberative) or from superior to subordinate (less likely deliberative), neither the Court nor Plaintiffs can assess whether any withheld document is genuinely deliberative.

***What*:** The descriptions of the purportedly privileged communications are conclusory legal labels, not descriptions of content. Vague characterizations such as "pre-decisional, deliberative communications about preparation of the Haiti TPS decision memo" do not explain "the documents' role in any such agency decisional process." *Cause of Action Inst. v. Exp.-Imp. Bank*, 521 F. Supp. 3d 64, 81 (D.D.C. 2021). In their privilege logs, Defendants repeatedly describe different documents authored by different individuals in verbatim identical terms (*see, e.g.*, Ex. L (Withheld in Full Priv. Log for Productions 1 & 2) at 5–7 (same boilerplate description applied to five separate emails authored by five different individuals); Ex. K (Priv. Log for Productions 1 & 2) at 3–4 (same description applied to documents authored by three different individuals))—precisely the generic boilerplate that the D.C. Circuit has rejected as insufficient. *See Legal Servs.*, 249 F.3d at 1081–82 (D.C. Cir. 2001). As Judge Boasberg has held: "It will not do … to simply

lump" different documents "together without differentiation." *Cause of Action Inst.*, 521 F. Supp. 3d at 81.

***Where*:** The logs do not identify "the stage within the broader deliberative process in which the withheld material operates." *Judicial Watch*, 20 F.4th at 56.

***How*:** The logs do not explain how any withheld document facilitated agency deliberation—whether it presented facts, analyzed precedent, identified options, or recommended a particular action. Pre-decisional communications "are not exempt merely because they are predecisional; they must also be a part of the agency give-and-take … by which the decision itself is made." *Senate*, 823 F.2d at 585 (quoting *Vaughn v. Rosen*, 523 F.2d 1136, 1144 (D.C. Cir. 1975)). Accordingly, "the agency has the burden of establishing … the role played by the documents in issue in the course of that process." *Coastal States Gas Corp. v. Dep't of Energy*, 617 F.2d 854, 868 (D.C. Cir. 1980). Here, Defendants' privilege logs "fail[] to situate" the withheld and redacted documents "in the 'give-and-take' of the decisionmaking process." *Chesapeake Bay Found., Inc. v. U.S. Army Corps of Eng'rs*, 722 F. Supp. 2d 66, 76–78 (D.D.C. 2010).

### D. Even if the deliberative-process privilege were available, Defendants have claimed it arbitrarily and overbroadly.

Even if the if the deliberative-process privilege were available to Defendants in this case and even if Defendants had satisfied the procedural requirements for its invocation, two versions of the same document produced by Defendants—Miot_0002 and Miot_0004—are evidence that Defendants are invoking the privilege both arbitrarily and overbroadly. Miot_0002 is (appropriately) unredacted:

**Decision Document**

**USCIS Notice: Termination of the Designation of Haiti for Temporary Protected Status**

_________________ (1) Approve the notice for publication in the *Federal Register* and (2) Direct ESEC to use the *Federal Register* Signature Card to electronically sign the notice.

_________________ Disapprove the notice.

_________________ Needs discussion.

_________________ Date.

By contrast, MIOT_0004, a different version of the same document, is redacted—presumably on the basis of the deliberative process privilege:[3]

**Decision Document**

**USCIS Notice: Termination of the Designation of Haiti for Temporary Protected Status**

_________________ (1) Approve the notice for publication in the *Federal Register* and (2) Direct ESEC to use the *Federal Register* Signature Card to electronically sign the notice.

_________________ [redacted]

_________________

_________________

[3] Indeed, despite containing redactions, MIOT_0004 does not even appear in Defendants' privilege logs. But given the nature of the document and the placement of the redactions, the only conceivable basis for the redactions is the deliberative-process privilege.

Defendants offer no explanation—and can offer no legally sufficient explanation—of why they invoked the deliberative-process privilege with respect to a seemingly blank form, must less why they invoked it in one instance but not another. That they have done so, however, suggests that at least some of their privilege claims are arbitrary and overbroad.

### E. Even if the deliberative-process privilege applied and were validly invoked, plaintiffs have demonstrated a sufficient showing of need.

"The deliberative process privilege is a qualified privilege and can be overcome upon a sufficient showing of need." *Rudometkin v. United States*, 140 F.4th 480, 492 (D.C. Cir. 2025) (quoting *In re Sealed Case*, 121 F.3d at 737). In determining whether a party's need outweighs the privilege, courts conduct a case-specific balancing analysis that considers: (1) the relevance of the evidence sought; (2) the availability of alternative evidence; (3) the seriousness of the litigation and the issues involved; (4) the government's role in the litigation; and (5) the potential chilling effect that disclosure may have on future governmental deliberations. *In re Sealed Case*, 121 F.3d at 737–38. In this case, each of these factor weighs decisively in favor of production.

***Relevance*****:** The withheld materials concern the decision-making that led to the termination of Haiti's TPS designation. Because Plaintiffs allege that the termination decision was motivated by racial animus, those deliberations are directly relevant to a central issue in the case.

***Availability of other evidence*****:** No adequate substitute exists. The subjective motivations of agency decisionmakers cannot be reconstructed through public statements, administrative outcomes, or third-party testimony. The most probative evidence of intent is found in the officials' own contemporaneous communications and deliberations.

***Seriousness of the litigation*****:** This case presents a substantial constitutional challenge to a decision that affects the immigration status of hundreds of thousands of individuals who face

deportation to one of the most places in the world if the termination decision is allowed to stand. The gravity of the issues weighs strongly in favor of disclosure.

***Role of the government*:** The government is not a peripheral actor. Its own decision-making is the subject of the litigation. Where the challenged conduct is governmental conduct, this factor favors disclosure. *See In re Sealed Case*, 121 F.3d at 738.

***Risk of future timidity*:** The chilling effect rationale is at its weakest when the communications at issue are probative of discriminatory intent. Government officials have no legitimate expectation that discriminatory deliberations will be shielded from disclosure. *Tri-State Hosp. Supply Corp. v. U.S.*, 226 F.R.D. 118, 135 (D.D.C. 2005) ("when there is reason to believe that government misconduct has occurred, the deliberative process privilege disappears").

All five factors point in the same direction. The requested materials are highly relevant, unavailable from any other source, central to serious constitutional claims, and concern governmental conduct that is itself under challenge. Even if the deliberative-process privilege were otherwise available, the balance of interests compels disclosure.

***

In short, Defendants have not established a valid basis for withholding documents under the deliberative-process privilege and even if they had, Plaintiffs have made a sufficient showing of need to overcome the privilege.

## II. Defendants' assertions of the presidential-communication privilege are unsupported.

The presidential-communication privilege is narrowly confined to communications involving the President and those advisers who possess "broad and significant responsibility for investigating and formulating the advice to be given the President" concerning the matter at issue. *In re Sealed Case*, 121 F.3d at 752. The privilege exists to protect the confidentiality of ***presidential*** decision-making, not to convert routine agency communications into privileged

material merely because they were transmitted upward through the Executive Branch. "[I]n many instances, presidential powers and responsibilities . . . can be exercised or performed without the President's direct involvement, pursuant to a presidential delegation of power or statutory framework." *Id.*

The "privilege should never serve as a means of shielding information regarding governmental operations that do not call ultimately for ***direct*** decisionmaking by the President." *In re Sealed Case*, 121 F.3d at 752 (emphasis added). The privilege is therefore inapplicable in this case, because the decision to terminate a TPS designation rests solely with the Secretary of Homeland Security. *Cf.* ECF 80 (Defs' Mot. to Dismiss) at 8–9 (referring to "***the Secretary's*** discretion to consider and weigh various conditions in a foreign country in reaching ***her*** TPS determinations"); ECF 37 (Defs' Mot. to Dismiss) at 1, *Haitian Evangelical Clergy Ass'n v. Trump*, No. 1:25-cv-1464 (E.D.N.Y. Apr. 15, 2025) ("The TPS statutes vest ***the Secretary*** with broad discretion over TPS designations.").[4] Because the President has no statutory role in the termination of a TPS designation, documents related to the termination of Haiti's TPS designation cannot be withheld on the basis of the presidential-communication privilege.

Regardless, even if the privilege were theoretically available in this context, the privilege generally "should not extend to staff outside the White House in executive branch agencies." *Id.*; *accord Citizens for Responsibility & Ethics in Wash. v. Dep't of Homeland Sec.*, 514 F. Supp. 2d 36, 47 (D.D.C. 2007) (privilege does not "extend to all documents authored by individuals within the Executive branch, such as staff outside the White House in the various executive agencies.").

[4] Although "[t]he TPS statute is written as vesting power in the Attorney General," Congress subsequently "transferred authority related to TPS from the Attorney General to the Secretary of Homeland Security." *Haitian Evangelical Clergy Ass'n v. Trump*, 789 F. Supp. 3d 255, 265 (E.D.N.Y. 2025) (citing 6 U.S.C. § 557; 8 U.S.C. § 1103; 8 U.S.C. § 1254a).

"[T]he D.C. Circuit has made clear that 'there is, in effect, a hierarchy of presidential advisers such that the demands of the privilege become more attenuated the further away the advisers are from the President operationally.'" *Am. Ctr. for L. & Just. v. United States Dep't of State*, 330 F. Supp. 3d 293, 307 (D.D.C. 2018) (quoting *In re Sealed Case*, 121 F.3d at 1115). Thus, communications among agency personnel are not protected merely because they relate to matters of presidential interest or were ultimately transmitted to the White House.

Consistent with this limitation, courts require a specific showing that the withheld communication was "***actually shared*** with the President, or his White House advisers or their staff." *Citizens for Responsibility & Ethics*, 514 F. Supp. 2d at 49 (rejecting claim of presidential-communication privilege with respect to documents "intended" for but not shown to have in fact been received by the White House) (emphasis added). Here, Defendants' privilege logs make no such showing. The documents withheld or redacted under the presidential-communication privilege involve DHS and USCIS personnel and are described as submissions, drafts, and communications concerning the Haiti TPS decision. The privilege logs do not identify any communication from or to the President or an immediate White House adviser, or the staff of such an advisor. Nor do they explain how any particular document was incorporated into the President's own decision-making process. Instead, the descriptions generally assert only that the communications were generated within DHS and involve discussions among DHS staff about future submissions to the White House. *See, e.g.*, Ex. L (Withheld in Full Priv. Log for Productions 1 & 2) at 6 (describing several documents withheld in full on the basis that they involve

"[d]iscussions regarding DHS submission to the White House" but in which all persons listed in the "To", "From," and "CC" columns contain "dhs.gov" email addresses)).[5]

That is insufficient. Courts in this district have repeatedly rejected privilege assertions supported only by conclusory references to presidential decision-making. *See Am. Ctr. for Law & Just. v. U.S. Dep't of State*, 330 F. Supp. 3d 293, 309–10 (D.D.C. 2018) (rejecting a privilege claim where the agency failed to provide sufficient information for the court to determine whether the communication "call[ed] ultimately for direct decisionmaking by the President"). A bare assertion of the presidential-communication privilege does not satisfy Defendants' burden. Without a concrete showing connecting the documents to presidential decision-making, the privilege cannot apply.

[5] There are even instances in which the privilege log description suggests that the withheld document is the same type of document that the government produced during prior TPS litigation. For example, one document withheld in full is described as "[m]eeting minutes/summary of topics discussed amongst National Security Council, DHS, State Department, HHS, ICE, CBP, DOD, and USCIS during meeting in WH Situation Room." Ex. L (Withheld in Full Priv. Log for Productions 1 & 2) at 5. In prior TPS litigation, *Saget v. Trump*, the government produced a meeting agenda from a White House meeting to "coordinate the conditions and process for terminating" TPS for "aliens from El Salvador, Honduras, Nicaragua, and Haiti." 375 F. Supp. 3d 280, 324 (E.D.N.Y. 2018). Present at that meeting were the Secretary of Homeland Security, White House Advisor Stephen Miller, and the Attorney General. *Id*. The government not only produced the agenda for that meeting but also produced the Secretary of Homeland Security's handwritten notes from that meeting—and did not invoke the Presidential Communications Privilege. *See id.* at 325 (summarizing the Secretary' handwritten notes). Defendants' greatly expanded assertion of the presidential-communication privilege aside, the privilege log entry for the Situation Room meeting notes demonstrates that Defendants know how to identify documents that actually reached or were generated in the White House. Their failure to identify any other document as falling in that category undermines their assertions of the presidential-communication privilege with respect to those other documents.

## III. Defendants' attorney-client privilege assertions fail as a matter of law.

### A. The logs do not establish that the primary purpose of the communications was the provision of legal advice.

The attorney-client privilege requires that the primary purpose of the communication be the provision or receipt of legal advice. "The fact that an attorney is either copied on or is one of multiple recipients of an email does not on its own support a claim of attorney-client privilege, without further context for the communication's purposes." *Raynor v. District of Columbia*, 2019 WL 13250317, at *1 (D.D.C. 2019) (quoting *United States ex rel. Barko v. Halliburton Co.*, 74 F. Supp. 3d 183, 188–89 (D.D.C. 2014)); *see also In re Lindsey*, 148 F.3d 1100, 1103–04 (D.C. Cir. 1998); *Cause of Action Inst. v. U.S. Dep't of Just.*, 330 F. Supp. 3d 336, 346–51 (D.D.C. 2018); *Citizens for Responsibility & Ethics in Washington v. U.S. Dep't of Justice*, 538 F. Supp. 3d 124, 135 (D.D.C. 2021), aff'd sub nom. *Citizens for Responsibility & Ethics in Washington v. United States Dep't of Justice*, 45 F.4th 963 (D.C. Cir. 2022).

Within a privilege log, "the essential elements a party must provide to sustain a claim of attorney-client privilege are:

> (a) the attorney and client involved, (b) the nature of the document, (c) all persons or entities shown on the document to have received or sent the document, (d) all persons or entities known to have been furnished the document or informed of its substance, and (e) the date the document was generated, prepared or dated.

*Alexander v. F.B.I.*, 192 F.R.D. 42, 45 (D.D.C. 2000) (citation omitted). These elements cannot be established through boilerplate assertions or conclusory privilege log descriptions. Categorical or identical descriptions applied across multiple entries without document-specific justification are legally insufficient. *Legal Servs. for N.Y.C.*, 249 F.3d at 1082.

Contrary to what Defendants' privilege logs suggest, the participation of agency counsel in a communication does not, standing alone, establish attorney-client privilege. *See Raynor*, 2019 WL 13250317, at *1. Nor does the privilege extend to communications whose primary purpose is

policy formulation, strategic coordination, or decision-making rather than the provision or solicitation of legal advice. *Lindsey*, 148 F.3d at 1106. Defendants bear the burden of establishing every element of the privilege on a document-by-document basis. *Alexander*, 192 F.R.D. at 45. Conclusory assertions that agency counsel participated in a discussion, that "legal issues" were involved, or that attorneys exchanged drafts do not satisfy that burden. *Chevron Corp. v. Weinberg Group*, 286 F.R.D. 95, 98 (D.D.C. 2012).

Defendants' privilege logs disregard these settled limitations. For example, MIOT_0007 is described as a "Discussion of DHS counsel and clients discussing the effect of ongoing litigation on Haiti TPS termination." That description indicates a discussion concerning how litigation may affect an ongoing policy decision; it does not identify any request for or provision of legal advice. Likewise, MIOT_0239–0243 is described as a "Discussion among DHS counsel and clients regarding legal issues relating to Haiti TPS decision memorandum, including clients seeking legal advice from DHS counsel, and how to address litigation-related issues." But the document appears to consist of attorneys from various agency offices trading drafts of the Haiti TPS decision memorandum iteratively. The exchange of draft policy memoranda among agency lawyers does not become privileged simply because attorneys are both the senders and recipients. The relevant question is whether the communication's primary purpose was obtaining or rendering legal advice. Neither the log entry nor the unredacted portion of the document identifies a particular request for legal advice or any legal analysis provided in response to such a request. The document instead appears to reflect iterative review and revision of an agency decision memorandum, which is the type of policy deliberation that falls outside the attorney-client privilege.

In Defendants' privilege logs, MIOT_0081 is described as described as containing discussions of three types: a "discussion of DHS counsel and clients" on "the effect of ongoing

litigation on [the] Haiti TPS termination"; "discussions between DHS and State client regarding the same"; and "discussions regarding the plan for decisionmaking." Ex. K (Priv. Log for Productions 1 & 2) at 5. Again, the log identifies no specific request for legal advice.[6] Moreover, the log does not assert that the discussions reflected in MIOT _0081 were limited to DHS counsel and DHS staffers. That alone defeats Defendants' claim of privilege. For documents to be covered by the attorney-client privilege, "two prerequisites" must be satisfied: The documents must "contain confidential information" and "have been kept confidential." *F.T.C. v. GlaxoSmithKline*, 294 F.3d 141, 146 (D.C. Cir. 2002); *accord Cause of Action Inst.*, 330 F. Supp. 3d at 347. Yet Defendants' privilege log establishes that MIOT_0081 was not a confidential discussion limited to DHS counsel and their internal clients; to the contrary, the privilege log explicitly concedes that the document involved discussions "between DHS ***and State***." Ex. K (Priv. Log for Productions 1 & 2) at 5 (emphasis added). Because distribution of the document was not limited to DHS counsel and staffers, it is not protected by the attorney-client privilege.

Throughout the logs, Defendants appear to equate the participation of agency counsel with the existence of attorney-client privilege. But the privilege protects legal advice, not policy deliberations that happen to include lawyers. The recurring themes in the logged communications are interagency coordination, development of the Haiti TPS decision memorandum, and the

---

[6] When discussing "the effect of ongoing litigation" on the termination of Haiti's TPS designation, the participants may well have been discussing the negative press and political fallout following the decisions in *HECA* and *NTPSA I.* The communications of an agency lawyer "will be protected only to the extent that they involve her professional, legal capacity." *Cause of Action Inst.*, 330 F. Supp. 3d at 347 (citing *In re Sealed Case*, 737 F.2d 94, 99 (D.C. Cir. 1984)). Thus, "[t]he mere fact that the correspondence involved a member of the bar is insufficient." *Id.* (citing *Mead Data Cent. v. U.S. Dep't of the Air Force*, 566 F.2d 242, 253 (D.C. Cir. 1977)). "For instance, the privilege does not extend to a 'government attorney's "advice on political, strategic, or policy issues, valuable as it may [be]."'" *Id.* (quoting *Judicial Watch*, *Inc. v. Dep't of Homeland Sec.*, 926 F. Supp.2d 121, 144–45, in turn quoting *In re Lindsey*, 148 F.3d at 1106).

agency's decision-making process. Those subjects are indicative of policy formulation and strategic coordination, not confidential attorney-client communications. Because Defendants have not demonstrated that the primary purpose of these communications was to obtain or provide legal advice, they have failed to carry their burden of establishing attorney-client privilege.

### B. The draft Federal Register notices are not protected.

Asserting attorney-client privilege and work product protections over both, Defendants have withheld two documents labeled "Draft FRN notice for Haiti TPS not yet published in Federal Register." Ex. L (Withheld in Full Priv. Log for Productions 1 & 2) at 2, 4. A draft Federal Register notice is not itself legal advice, and its preparation is not protected work product merely because attorneys reviewed it. Defendants' privilege logs do not identify the subject of any legal advice either sought or given in the draft notices; nor do the logs explain what mental impressions, if any, the documents reflect or why attorney involvement in editing a regulatory publication transforms it into protected communication. *Cause of Action*, 330 F. Supp. 3d at 346–351.

## IV. The deliberative-process privilege does not protect factual information.

Even if the Court were to find that Defendants had properly asserted the deliberative-process privilege as to some documents, that privilege does not shield factual information from discovery. "The deliberative process privilege does not … protect material that is purely factual, unless the material is so inextricably intertwined with the deliberative sections of documents that its disclosure would inevitably reveal the government's deliberations." *In re Sealed Case*, 121 F.3d at 737.

Where the government can segregate and disclose non-privileged factual information within a document, it must do so. *Army Times Publishing Co. v. Dep't of Air Force*, 998 F.2d 1067, 1071 (D.C. Cir. 1993). The government bears the burden of demonstrating that no reasonably segregable information exists within any withheld document.

The withheld documents would seem to include factual materials—country-conditions data, program analyst findings, data metrics, and consultation notes—none of which constitute opinion or recommendation in the deliberative sense. Documents such as the "Improvements in Haiti Country Conditions" attachment and the data metrics discussed in connection with MIOT_1149 surely contain factual compilations that must be produced regardless of any privilege determination. *Nat'l Ass'n of Home Builders v. Norton*, 309 F.3d 26, 39 (D.C. Cir. 2003).

**CONCLUSION**

The Court should order immediate production of all withheld and redacted documents.

Dated: October 16, 2026 Respectfully submitted,

*/s/ Geoffrey M. Pipoly*
Geoffrey M. Pipoly
**BRYAN CAVE LEIGHTON PAISNER, LLP**
161 N. Clark Street, Ste. 4300
Chicago, IL 60601
Phone: (312) 602-5000
geoff.pipoly@bclplaw.com

Andrew E. Tauber
1155 F St., NW, Ste. 700
Washington, DC 20004
Phone: (202) 508-6000
andrew.taube@bclplaw.com

Katelyn Harrell
One Atlantic Center, 14th Floor
1201 W. Peachtree St., N.W.
Atlanta, GA 30309-3471
Phone: (404)572-6600
katelyn.harrell@bclplaw.com

Ira J. Kurzban (D.C. Bar No. 1031506)
Kevin Gregg
**KURZBAN, KURZBAN, TETZELI & PRATT, P.A**.
131 Madeira Ave.
Coral Gables, FL 33134
Phone: (305) 444-0060
ira@kktplaw.com
kgregg@kktplaw.com

Sejal Zota (D.C. Bar No. NC020)
**JUST FUTURES LAW**
1629 K Street N.W., Suite 300
Washington, DC 20006
Phone: (617) 812-2822
sejal@justfutureslaw.org

Raymond Audain
**GISKAN SOLOTAROFF & ANDERSON LLP**
1 Rockefeller Plaza, 8th Floor
New York, NY 10020
Phone: (646) 290-6249
raudain@gslawny.com

Matthew J. Stanford
**OSBORN MALEDON, P.A.**
2929 N. Central Ave., Ste. 2000
Phoenix, AZ 85012
Phone: (602) 640-9000
mstanford@omlaw.com

*Attorneys for Plaintiffs*

## **CERTIFICATE OF SERVICE**

I hereby certify that on this 16th day of October, 2026, the foregoing document was filed through the CM/ECF system which sent notice of the filing to all appearing parties of record.

*/s/ Geoffrey M. Pipoly*
Geoffrey M. Pipoly

*Counsel for Plaintiffs*